**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEF VAN DUPPEN, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>    vs.<br><br>MYLAN N.V., MYLAN INC., HEATHER BRESCH, AND JOHN D. SHEEHAN,<br><br>                Defendants. | 1: 16-cv-07926-JPO |
| LANDON W. PERDUE, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>    vs.<br><br>MYLAN N.V., MYLAN INC., HEATHER BRESCH, ROBERT J. COURY, PAUL B. CAMPBELL, KENNETH S. PARKS, and JOHN D. SHEEHAN,<br><br>                Defendants. | 1: 16-cv-08000-JPO |

**MEMORANDUM OF LAW IN SUPPORT OF VLADIMIR
TCHENTSOV'S MOTION FOR CONSOLIDATION OF RELATED
<u>CASES, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

SUMMARY OF THE COMPLAINTS ..................................................................................... 2

ARGUMENT ............................................................................................................................ 4

I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED ....................................... 4

II.  THE COURT SHOULD APPOINT TCHENTSOV AS LEAD PLAINTIFF .................. 5

    A.   The Procedure Required by the PSLRA ................................................................. 5

    B.   Tchentsov is the Most Adequate Plaintiff .............................................................. 6

        1.   Tchentsov Has Complied with the PSLRA and Is Willing to Serve as a Class Representative ............................................................................. 6

        2.   Tchentsov Has the Largest Financial Interest in the Relief Sought by the Class ................................................................................................ 7

        3.   Tchentsov Meets the Requirements of Fed. R. Civ. P. 23 .......................... 7

            (a)   Tchentsov's Claims Are Typical of Those of the Class ................. 7

            (b)   Tchentsov Will Fairly and Adequately Protect the Interests of the Class .................................................................................... 8

III. THE COURT SHOULD APPROVE TCHENTSOV'S CHOICE OF COUNSEL ............ 9

CONCLUSION ....................................................................................................................... 11

## TABLE OF AUTHORITIES

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
    No. 16-CV-03495(AT)(BCM), 2016 WL 5867497 (S.D.N.Y. Oct. 4, 2016) ..........................7

*In re Gen. Elec. Sec. Litig.*,
    No. 09 CIV. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ...................................4

*In re Gentiva Sec. Litig.*,
    281 F.R.D. 108 (E.D.N.Y. 2012) ...........................................................................................1

*Khunt v. Alibaba Grp. Holding Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015)....................................................................................8

*Kukkadapu v. Embraer S.A.*,
    No. 16 CIV. 6277 (RMB), 2016 WL 6820734 (S.D.N.Y. Oct. 20, 2016).............................7, 8

*Miller v. Dyadic Int'l, Inc.*,
    No. 07-80948-CIV, 2008 WL 2465286 (S.D. Fla. Apr. 18, 2008)............................................1

*Shreves v. Xunlei Ltd.*,
    No. CV-15-04288-MWF(ASx), 2015 WL 5446935 (C.D. Cal. Sept. 15, 2015).......................5

### Statutes

15 U.S.C. § 78u-4(a)(1) .......................................................................................................5

15 U.S.C. § 78u-4(a)(3)(A)(i) ...............................................................................................5

15 U.S.C. § 78u-4(a)(3)(A)(i)(II)..........................................................................................5

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................................1, 5

15 U.S.C. § 78u-4(a)(3)(B)(i) .............................................................................................5, 6

15 U.S.C. § 78u-4(a)(3)(B)(ii) ............................................................................................4, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .......................................................................................6, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)........................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) .................................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(v) ..............................................................................................9

### Rules

Fed. R. Civ. P. 23 ...........................................................................................................1, 6, 7

Fed. R. Civ. P. 23(a)(3)......................................................................................................................1

Fed. R. Civ. P. 23(a)(4)......................................................................................................................1

Fed. R. Civ. P. 42(a) ......................................................................................................................4, 5

**Docketed Cases**

*In re Beacon Associates Litigation*,
    No. 09 CIV 0777 (LBS) (AJP) (S.D.N.Y. 2013).....................................................................10

*In re Fannie Mae Securities Litigation*,
    No. 04-1639 (FJL) (D.D.C. 2013) ..........................................................................................10

*In re Freeport-McMoRan Copper & Gold, Inc. Derivative Litigation*,
    No. 8145-VCN (Del. Ch. 2015)..............................................................................................10

*In re Initial Public Offering Securities Litigation*,
    No. 21 MC 92 (SAS) (S.D.N.Y. 2009)...................................................................................10

*In re Marsh & McLennan Companies Securities Litigation*,
    No. 04-CV-8144 (CM) (S.D.N.Y. 2009)................................................................................10

*In re Royal Dutch/Shell Transport Securities Litigation*,
    No. 04-374 (JAP) (D.N.J. 2008).............................................................................................10

*In re Tremont Securities Law, State Law and Insurance Litigation*,
    No. 08-CV-11117 (S.D.N.Y. 2011)........................................................................................10

Vladimir Tchentsov ("Tchentsov") respectfully submits this memorandum of law in support of his motion for: (a) consolidation of related cases; (b) appointment as lead plaintiff, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (c) approval of his selection of Bernstein Liebhard LLP ("Bernstein Liebhard") as lead counsel for the proposed class.

## PRELIMINARY STATEMENT

Presently pending in this District are two class action lawsuits (the "Actions") alleging violations of the Exchange Act brought on behalf of all persons or entities (the "Class") who purchased the securities of Mylan[1] from February 21, 2012 through October 7, 2016, both dates inclusive (the "Class Period").[2] Pursuant to the PSLRA, class action complaints alleging violations of the Exchange Act trigger the statutory lead plaintiff requirements for selecting the most adequate plaintiff to lead the action. The presumptive lead plaintiff is the movant that has both the largest financial interest in the litigation and has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure.

Tchentsov satisfies these requirements. First, Tchentsov has a large financial interest in this Action. Tchentsov lost $302,665. Thus, Tchentsov has a substantial financial interest that will ensure his vigorous prosecution of the Class's claims. Second, Tchentsov satisfies Rules

---

[1] "Mylan" or the "Company" refers to Mylan, Inc. and Mylan, N.V. Mylan, Inc. was the predecessor of Mylan N.V.

[2] The complaints filed in the captioned actions each allege substantially the same wrongdoing during different, overlapping periods; namely, February 28, 2013 through October 7, 2016 and February 21, 2012 through October 5, 2016. On motions for lead plaintiff, courts generally utilize the longest class period when determining the financial interest of the various movants. *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113-14 (E.D.N.Y. 2012) (citing cases); *Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV, 2008 WL 2465286, at *3-4 (S.D. Fla. Apr. 18, 2008).

23(a)(3) and (a)(4) of the Federal Rules of Civil Procedure; his claims are typical of the claims of the Class; and he will fairly and adequately represent the interests of the Class.

Accordingly, for the reasons discussed below, Tchentsov respectfully requests that the Court grant his motion to consolidate related actions, appoint him as lead plaintiff, and approve his choice of counsel.

## SUMMARY OF THE COMPLAINTS

Mylan N.V., along with its subsidiaries is a global pharmaceutical company, which develops, licenses, manufactures, markets, and distributes generic, branded generic, and specialty pharmaceuticals.  Mylan Inc. is an indirect wholly owned subsidiary of Mylan N.V.  Prior to February 27, 2015, Mylan Inc. preceded Mylan N.V. as the SEC registrant.

Since acquiring EpiPen® Auto-Injector and EpiPen Jr® Auto-Injector (collectively, "EpiPen") in 2007, Mylan N.V. and Mylan Inc. have classified it as a "noninnovator" drug for purposes of the Medicaid Drug Rebate Program.  A "non-innovator" drug is a generic drug product that has a great deal of competition in the marketplace.  An "innovator" drug is a brand drug product with little or no competition in the marketplace.

Under the Medicaid Drug Rebate Program, states receive a rebate of 13% of the average manufacturer price ("AMP") for non-innovator multiple source drugs and a higher rebate of 23.1% of the AMP or the difference between the AMP and the best price per unit adjusted by the Consumer Price Index for All Urban Consumers for innovator multiple source drugs.  Since 2007 Mylan N.V. and Mylan Inc. have only paid the lower rebate for "noninnovator" drugs—13% of the AMP—for EpiPen.

On September 2, 2016, an article was published by Inside Health Policy stating that the Centers for Medicare & Medicaid Services ("CMS") "informed Mylan that it incorrectly classified EpiPen as a generic under the Medicaid rebate program, which caused financial

2

consequences for federal and state governments by reducing the amount of quarterly rebates Mylan owed for its product." On this news, shares of Mylan N.V. fell $1.95 per share or over 4% from its previous closing price to close at $39.97 per share on September 2, 2016.

Then, on October 5, 2016, during aftermarket hours, Bloomberg published an article citing a letter, dated October 5, 2016, issued by the Acting Administrator of CMS to Senator Ron Wyden of Oregon which stated:

> [CMS] has expressly told Mylan that the product [EpiPen] is incorrectly classified. This incorrect classification has financial consequences for the amount that federal and state governments spend because it reduces the amount of quarterly rebates Mylan owes for EpiPen. . . . At this time, CMS cannot comment on the total amount of rebates owed by Mylan related to this incorrect classification."[3]

After this disclosure, Mylan N.V. shares fell from an October 5, 2016 closing price of $38.03 to close at $36.84 per share on October 6, 2016.

On October 6, 2016, *The Fiscal Times* published an article entitled "Lawmakers Say EpiPen Maker Bilked Medicare for More than $100 Million", stating that "[t]he incorrect classification appears to have cost the federal government more than $100 million in the last five years alone." Mylan stock fell again as a result of this news.

Over October 5 and 6, 2016, shares of Mylan N.V. fell $2.09 per share, or approximately 5%.

According to the lawsuits, throughout the Class Period defendants made false and/or misleading statements and/or failed to disclose that: (1) Mylan incorrectly classified EpiPen as a generic under the Medicaid Drug Rebate Program, which was financially consequential for federal and state governments as it reduced the amount of quarterly rebates Mylan owed for

---

[3] http://www.finance.senate.gov/imo/media/doc/Wyden%20EpiPen%20Medicaid%20Letter%20from%20CMS%2010.5.16.pdf.

EpiPen; (2) between 2011 through 2015, Mylan paid a lower rebate of 13% when it should have been paying a higher rebate of 23.1% or more; (3) the incorrect classification appears to have cost the federal government more than $100 million in the last five years alone; (4) in turn, Mylan lacked effective internal controls over financial reporting; and (5) as a result, Mylan's public statements were materially false and misleading at all relevant times. The lawsuits claim that investors suffered damages when these details entered the market.

## ARGUMENT

### I.  THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that prior to ruling on any motion for lead plaintiff the Court must first determine whether to consolidate any pending actions. 15 U.S.C. § 78u-4(a)(3)(B)(ii) ("[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-] chapter has been filed," the court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered."). *Id.* Once the Court makes that ruling, it is required to "appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *Id.*

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation of related actions is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). Consolidation is particularly appropriate in securities class action litigation because the unification of cases expedites proceedings, reduces duplication, and minimizes the expenditure of time and money by all concerned. *See*, *e.g.*, *In re Gen. Elec. Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *2-3 (S.D.N.Y. July 29, 2009) ("[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest

4

of judicial economy served by consolidation"); *Shreves v. Xunlei Ltd.*, No. CV-15-04288-MWF (ASx), 2015 WL 5446935, at *2 (C.D. Cal. Sept. 15, 2015).

Here, there are two related securities fraud class Actions filed against Mylan on behalf of investors who purchased or otherwise acquired Mylan securities. The Actions are well-suited for consolidation. The complaints filed in each action are substantially similar as they allege similar violations of law and arise from a common nucleus of facts and circumstances relating to Mylan. Moreover, each complaint alleges similar and overlapping class periods and is brought against overlapping defendants. Further, consolidation will avoid duplicative discovery, motion practice, and other proceedings that will result if the Actions are not consolidated. Therefore, Defendants will not be prejudiced by consolidation.

Accordingly, the Court should consolidate the Actions, and any other subsequently-filed related actions pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(ii) and Fed. R. Civ. P. 42(a).

## II. THE COURT SHOULD APPOINT TCHENTSOV AS LEAD PLAINTIFF

### A. The Procedure Required by the PSLRA

The PSLRA establishes a straightforward, sequential procedure for selecting a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Sections 21D(a)(1) and (a)(3)(B), 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B).

First, the plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Second, the Court is to consider within 90 days all motions made by any person who is a member of the proposed class to be appointed lead plaintiff that are filed within 60 days after publication of that notice. 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i). Finally, in considering any motion to serve as the lead

plaintiff, the Court is required to appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating the lead plaintiff motion, the Court should adopt the presumption that the "most adequate plaintiff" is the person that:

i) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

ii) in the determination of the court, has the largest financial interest in the relief sought by the class; and

iii) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Tchentsov satisfies the foregoing criteria.

### B. Tchentsov is the Most Adequate Plaintiff

Tchentsov respectfully submits that he is presumptively the "most adequate plaintiff" because he has complied with the PSLRA's procedural requirements, possesses the largest financial interest of any qualified movant, and satisfies Rule 23's typicality and adequacy requirements.

#### 1. Tchentsov Has Complied with the PSLRA and Is Willing to Serve as a Class Representative

On October 11, 2016, counsel caused a notice (the "Notice") to be published that announced that a securities class action had been filed against, among others, Mylan, and which advised putative class members that they had 60 days from the date of the notice to file a motion to seek appointment as a lead plaintiff in the action. *See* Seidman Decl. Ex. 1. Tchentsov has

6

reviewed one of the complaints filed in the Actions and has timely filed his motion pursuant to the Notice.  In doing so, Tchentsov has attached his certification attesting to his willingness to serve as a representative of the Class and provide testimony at deposition and trial, if necessary. *See* Seidman Decl. Ex. 2.  Accordingly, Tchentsov satisfies the procedural requirements of the PSLRA.

### 2. Tchentsov Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" is the movant with "the largest financial interest in the relief sought by the class," so long as the movant "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Tchentsov has a substantial financial interest in these Actions.  Tchentsov lost $302,665. *See* Seidman Decl. Ex. 3.  Tchentsov believes that given these losses he is the presumptive "most adequate plaintiff" and should be appointed as lead plaintiff in the Actions.

### 3. Tchentsov Meets the Requirements of Fed. R. Civ. P. 23

Tchentsov satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure, which are the provisions of Rule 23 relevant to the appointment of lead plaintiff under the PSLRA.  *See*, *e.g.*, *Kukkadapu v. Embraer S.A.*, No. 16 CIV. 6277 (RMB), 2016 WL 6820734, at *2 (S.D.N.Y. Oct. 20, 2016); *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16-CV-03495 (AT) (BCM), 2016 WL 5867497, at *4 (S.D.N.Y. Oct. 4, 2016).

#### (a) Tchentsov's Claims Are Typical of Those of the Class

A lead plaintiff movant is typical of other proposed class members under Rule 23 if his "claims . . . arise from purchases made in reliance on the same alleged misstatements and omissions that the complainants and other movants base their claims on, and they also seek the

7

same relief, based on the same legal theories." *Kukkadapu*, 2016 WL 6820734, at *2. Tchentsov's claims are typical of the Class in that he: (i) suffered the same injuries as a result of the same, or substantially the same, course of conduct by the named defendants; and (ii) bases his claims on the same, or substantially the same, legal theories as the Class. *Id*.; Seidman Decl. Ex. 1.

Here, the questions of law and fact common to the members of the Class and which may affect individual Class members include whether:

- Defendants violated the federal securities laws; and
- the members of the Class sustained damages and, if so, what is the proper measure of damages.

These questions apply equally to Tchentsov as to all members of the Class. Because Tchentsov's claims have the same essential characteristics as those of the other class members, the typicality requirement is satisfied.

### (b) Tchentsov Will Fairly and Adequately Protect the Interests of the Class

The adequacy requirement, in turn, is satisfied where: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the plaintiff has sufficient interest in the outcome of the case to ensure vigorous advocacy." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015).

Tchentsov is an adequate lead plaintiff. Tchentsov and members of the Class have the same interest: to maximize the recovery from Defendants. Because of Tchentsov's substantial financial stake in the litigation, Class members can be assured that Tchentsov has the incentive to vigorously prosecute the claims.

Additionally, Tchentsov has demonstrated his adequacy through his selection of Bernstein Liebhard as lead counsel for the Class. As discussed more fully below, Bernstein Liebhard is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to prosecute complex securities class action lawsuits.

### III.  THE COURT SHOULD APPROVE TCHENTSOV'S CHOICE OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Bernstein Liebhard has extensive experience prosecuting complex securities class actions, such as this one, and is well qualified to represent the Class. *See* Seidman Decl. Ex. 4 for the firm resume of Bernstein Liebhard. As a result, the Court may be assured that by approving Bernstein Liebhard as lead counsel, the Class is receiving high-caliber legal representation.

Bernstein Liebhard has frequently been appointed as lead counsel or co-lead counsel since the passage of the PSLRA, and has frequently appeared in major actions before this and other courts throughout the country. *The National Law Journal* has recognized Bernstein Liebhard for thirteen years as one of the top plaintiffs' firms in the country. Bernstein Liebhard has also been listed in *The Legal 500*, a guide to the best commercial law firms in the United States, for the past ten years, as well as in *Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms & Attorneys* for the past four years. Bernstein Liebhard was also selected for the third consecutive year to the *National Law Journal's* annual "America's Elite Trial Lawyers" list.

Some of Bernstein Liebhard's outstanding successes include:

- *In re Beacon Associates Litigation*, No. 09 CIV 0777 (LBS) (AJP) (S.D.N.Y. 2013) ($219 million settlement);

- *In re Fannie Mae Securities Litigation*, No. 04-1639 (FJL) (D.D.C. 2013) ($153 million settlement);

- *In re Tremont Securities Law, State Law and Insurance Litigation*, No. 08-CV-11117 (TPG) (S.D.N.Y. 2011) (settlement in excess of $100 million);

- *In re Marsh & McLennan Companies Securities Litigation*, No. 04-CV-8144 (CM) (S.D.N.Y. 2009) ($400 million settlement);

- *In re Royal Dutch/Shell Transport Securities Litigation*, No. 04-374 (JAP) (D.N.J. 2008) (U.S.-based settlement amounting to $166.6 million); and

- *In re Freeport-McMoRan Copper & Gold, Inc. Derivative Litigation*, C.A. No. 8145-VCN (Del. Ch. 2015) ($153.5 million settlement in a shareholder derivative action).

Further, Bernstein Liebhard partner Stanley Bernstein served as Chairman of the Executive Committee in *In re Initial Public Offering Securities Litigation*, No. 21 MC 92 (SAS) (S.D.N.Y. 2009) in this District. The *IPO* litigation was one of the largest consolidated securities class actions ever prosecuted, resulting in a $586 million recovery for shareholders.

**CONCLUSION**

For the foregoing reasons, Tchentsov respectfully requests that this Court: (1) consolidate the related actions; (2) appoint Tchentsov as lead plaintiff in the Actions, and all subsequently-filed, related actions; and (3) approve Tchentsov's selection of Bernstein Liebhard as lead counsel for the proposed class.

Dated: December 12, 2016

Respectfully submitted,

/s/ Joseph R. Seidman, Jr.

BERNSTEIN LIEBHARD LLP
Michael S. Bigin (bigin@bernlieb.com)
Joseph R. Seidman, Jr. (seidman@bernlieb.com)
10 East 40th Street
New York, NY 10016
Tel:  (212) 779-1414
Fax:  (212) 779-3218

*Counsel for Tchentsov and Proposed Lead Counsel for the Proposed Class*