# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEF VAN DUPPEN, Individually and on Behalf of All Others Similarly Situated,<br><br>                           Plaintiff,<br><br>         v.<br><br>MYLAN N.V., MYLAN INC., HEATHER BRESCH, and JOHN D. SHEEHAN,<br><br>                  Defendants. | No.: 1:16-cv-07926-JPO<br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF MYLAN INSTITUTIONAL INVESTOR GROUP FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL** |
| LANDON W. PERDUE, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff(s),<br><br>  v.<br><br>MYLAN N.V., MYLAN INC., HEATHER BRESCH, ROBERT J. COURY, PAUL B. CAMPBELL, KENNETH S. PARKS, and JOHN D. SHEEHAN,<br><br>                  Defendants. | No.: 1:16-cv-08000-JPO |

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

ARGUMENT ............................................................................................................................4

    A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL
          PURPOSES ............................................................................................................4

    B.    THE MYLAN INSTITUTIONAL INVESTOR GROUP SHOULD BE
          APPOINTED LEAD PLAINTIFF ...........................................................................6

          1.    The Mylan Institutional Investor Group is Willing to Serve as a
                 Class Representative ...................................................................................7

          2.    The Mylan Institutional Investor Group Has the "Largest Financial
                 Interest" ....................................................................................................7

          3.    The Mylan Institutional Investor Group Otherwise Satisfies the
                 Requirements of Rule 23 of the Federal Rules of Civil Procedure .............8

          4.    The Mylan Institutional Investor Group Will Fairly and
                 Adequately Represent the Interests of the Class and is Not Subject
                 to Unique Defenses ...................................................................................15

    C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
          APPROVED ..........................................................................................................16

CONCLUSION .......................................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) .................................................................................................10

*Baby Neal v. Casey,*
    43 F.3d 48 (3d Cir. 1994) ..........................................................................................9

*Barnet v. Elan Corp., PLC,*
    236 F.R.D. 158 (S.D.N.Y. 2005) .............................................................................12

*Bassin v. Decode Genetics, Inc.,*
    230 F.R.D. 313 (S.D.N.Y. 2005) ...............................................................................5

*Beck v. Maximus, Inc.,*
    457 F.3d 291 (3d Cir. 2006) ................................................................................9, 10

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.,*
    252 F.R.D. 188 (S.D.N.Y. 2008) ...............................................................................5

*Danis v. USN Communs., Inc.,*
    189 F.R.D. 391 (N.D. Ill. 1999) .................................................................................9

*Dollens v. Zionts,*
    2001 U.S. Dist. LEXIS 19966 (N.D. Ill. Dec. 4, 2001) ..........................................12

*Fischler v. Amsouth Bancorporation,*
    176 F.R.D. 583 (M.D. Fla. 1997) ...............................................................................9

*Gluck v. Cellstar Corp.,*
    976 F. Supp. 542 (N.D. Tex. 1997) ............................................................................9

*Goldstein v. Puda Coal, Inc.,*
    827 F. Supp. 2d 348 (S.D.N.Y. 2011) ......................................................................13

*Greebel v. FTP Software,*
    939 F. Supp. 57 (D. Mass. 1996) ...............................................................................9

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.,*
    258 F.R.D. 260 (S.D.N.Y. 2009) .............................................................................15

*In re Cendant Corp. Sec. Litig.,*
    404 F.3d 173 (3d Cir. 2005) .....................................................................................14

*In re Comverse Tech., Inc., Sec. Litig.*,
  2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ...................................................8

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
  2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ...........................................5

*In re Gentiva Sec. Litig.*,
  281 F.R.D. 108 (E.D.N.Y. 2012) .........................................................................14

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp.2d 286 (E.D.N.Y. 1998) ......................................................................8, 9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) .........................................................................9, 13

*In re Tronox, Inc. Sec. Litig.*,
  262 F.R.D. 338 (S.D.N.Y. 2009) ..........................................................................5

*In re Veeco Instruments, Inc.*,
  233 F.R.D. 330 (S.D.N.Y. 2005) ........................................................................14

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990) ..............................................................................5

*La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289,
  2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012) ...........................................14

*Lax v. First Merch. Acceptance Corp.*,
  1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ...........................................7

*Malcolm v. Nat'l Gypsum Co.*,
  995 F.2d 346 (2d Cir. 1993) ..............................................................................5

*Osher v. Guess ?, Inc.*,
  2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ..........................................16

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ....................................................................12, 13

*Randall v. Fifth St. Fin. Corp.*, 15-cv-7759 (LAK),
  2016 U.S. Dist. LEXIS 15719 (S.D.N.Y. Feb. 1, 2016) ..........................................14

*Riordan v. Smith Barney*,
  113 F.R.D. 60 (N.D. Ill. 1986) ..........................................................................10

*Takara Trust v. Molex Inc.*,
  229 F.R.D. 577 (N.D. Ill. 2005) ........................................................................12

*W. Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731,
   2014 U.S. Dist. LEXIS 49595 (E.D. Pa. Apr. 10, 2014) .......................................................13

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ..........................................................................................12

## **Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii) .......................................................................................... *passim*

PSLRA ...............................................................................................................................12, 14, 15

PSLRA Section 21D(a)(3)(B) .........................................................................................1, 6, 7, 8

## **Rules**

Federal Rules of Civil Procedure Rule 23 ........................................................................ *passim*

Federal Rules of Civil Procedure Rule 42 ...................................................................1, 4, 5, 9

Movants Menorah Mivtachim Insurance Ltd. ("Menorah Insurance"), Menorah Mivtachim Pensions and Gemel Ltd. ("Menorah Pensions," and collectively with Menorah Insurance, "Menorah"), Phoenix Insurance Company Ltd. ("Phoenix"), and Meitav DS Provident Funds and Pension Ltd. ("Meitav," and collectively with Menorah and Phoenix, the "Mylan Institutional Investor Group") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 42 of the Federal Rules of Civil Procedure, for the entry of an Order:  (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing the Mylan Institutional Investor Group as Lead Plaintiff on behalf of all persons and entities that purchased or otherwise acquired the securities of Mylan N.V. and/or Mylan N.V.'s predecessor, Mylan Inc. (collectively, "Mylan" or the "Company") between February 21, 2012 and October 5, 2016, both dates inclusive (the "Class Period"); (3) approving Lead Plaintiff' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The Related Actions are on behalf of all persons and entities that purchased or otherwise acquired Mylan securities during the Class Period.  Each of the Related Actions raises substantially similar allegations: defendants violated federal securities laws by issuing false and misleading statements.  Accordingly, consolidation of the Related Actions is appropriate.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The Mylan

Institutional Investor Group, with losses of approximately *$52.7 million*, has the largest financial interest in the relief sought in this action. The Mylan Institutional Investor Group further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as it is an adequate representative with claims typical of the other Class members. Accordingly, the Mylan Institutional Investor Group respectfully submits that it should be appointed Lead Plaintiff.

## STATEMENT OF FACTS

Mylan N.V., together with its subsidiaries, develops, licenses, manufactures, markets, and distributes generic, branded generic, and specialty pharmaceuticals worldwide. The Company provides generic or branded generic pharmaceutical products in tablet, capsule, injectable, transdermal patch, gel, cream, or ointment forms, as well as active pharmaceutical ingredients. Among other products, Mylan N.V. manufactures and sells the EpiPen Auto-Injector (the "EpiPen"), a branded device for injecting a measured dose of epinephrine by means of auto-injector technology to treat severe allergic reactions. Mylan N.V. is based in Hertfordshire, the United Kingdom.

Mylan Inc. is an indirect wholly owned subsidiary of Mylan N.V. Prior to February 27, 2015, Mylan Inc. preceded Mylan N.V. as the SEC registrant. In early 2015, Mylan Inc.'s business was reorganized under Mylan N.V. and led by the former officers and directors of Mylan Inc. On February 27, 2015, Mylan N.V. succeeded Mylan Inc. as the SEC registrant. On March 2, 2015, Mylan N.V.'s common stock began trading on the Nasdaq Global Select Market under the ticker symbol "MYL."

Medicaid is a U.S. government insurance program for persons whose income and resources are insufficient to pay for health care. Jointly funded by the state and federal governments, Medicaid is the largest source of funding for medical and health-related services

2

for Americans with low income.  Between 2011 and 2015, Medicaid spent approximately $797 million on purchases of EpiPens from Mylan.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Mylan paid Medicaid significantly lower EpiPen rebates than legally required; (ii) Medicaid had previously advised Mylan of the Company's obligation to pay higher rebates; (iii) Mylan therefore knowingly and systemically overcharged Medicaid for EpiPens in violation of federal law; (iv) millions of dollars of Mylan's revenue from EpiPen sales were the result of the foregoing illegal conduct by the Company; and (v) as a result of the foregoing, Mylan's public statements were materially false and misleading at all relevant times.

On September 2, 2016, *Inside Health Policy* published an article stating that the Centers for Medicare & Medicaid Services ("CMS"), a federal agency whose responsibilities include, *inter alia*, working in partnership with state governments to administer Medicaid, had "informed Mylan that [the Company] incorrectly classified EpiPen as a generic under the Medicaid rebate program, which caused financial consequences for federal and state governments by reducing the amount of quarterly rebates Mylan owed for its product."

On this news, Mylan's share price fell $1.95, or 4.65%, to close at $39.97 on September 2, 2016.

On October 5, 2016, *Bloomberg* reported that the CMS had issued a letter stating that Mylan had for years overcharged Medicaid to buy the Company's EpiPen shot, despite being told that the Company needed to provide bigger discounts under the law.  The CMS letter stated that from 2011 to 2015, the U.S. Medicaid health program spent approximately $797 million on

EpiPens, including rebates of roughly *13%*, rather than the discount of *23.1%* that the U.S. *should* have received.  The letter stated that the government had previously "expressly told Mylan that the [EpiPen] product is incorrectly classified."

On this news, Mylan's share price fell $1.19, or 3.13%, to close at $36.84 on October 6, 2016.

On October 7, 2016, Mylan announced that it had reached a $465 million settlement with the U.S. Department of Justice and other agencies to resolve questions raised about the classification of EpiPen for Medicaid rebate purposes.  On October 7, 2016, Mylan also announced that the Company had "received a document request from the Division of Enforcement at the [SEC] seeking communications with the CMS and documents concerning Mylan products sold and related to the Medicaid Drug Rebate Program, and any related complaints."

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the Mylan Institutional Investor Group and other Class members have suffered significant losses and damages.

<u>**ARGUMENT**</u>

**A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES**

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).  See also Manual for Complex Litigation (Third), § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation.  *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4–8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact.  Each action was brought against the Company, as well as certain officers of the Company, in connection with violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of Mylan's securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 U.S. Dist. LEXIS 69133), at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

### B. THE MYLAN INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Mylan Institutional Investor Group should be appointed Lead Plaintiff because it has the largest financial interest in the Action and otherwise meets the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Mylan Institutional Investor Group satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.      The Mylan Institutional Investor Group is Willing to Serve as a Class Representative

On October 11, 2016, counsel for plaintiff in the first of the above-captioned actions to be filed caused a notice to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the defendants herein, and advised investors of Mylan securities that they had until December 12, 2016 to file a motion to be appointed as Lead Plaintiff.  (*See* Declaration of Jeremy A. Lieberman in Support of Motion of the Mylan Institutional Investor Group for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Counsel ("Lieberman Decl."), Ex. A.)

The Mylan Institutional Investor Group has filed the instant motion pursuant to the Notice, and its members have attached Certifications attesting that they are willing to serve as representatives for the Class, and provide testimony at deposition and trial, if necessary.  (*See* Lieberman Decl., Ex. B.)  Accordingly, the Mylan Institutional Investor Group satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.      The Mylan Institutional Investor Group Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

As of the time of the filing of this motion, the Mylan Institutional Investor Group believes that it has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during

the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered).[1]

During the Class Period, the Mylan Institutional Investor Group (1) purchased 4,785,062 shares of Mylan securities; (2) expended $238,474,399 on its purchases of Mylan securities; (3) retained 4,047,895 of its Mylan shares; and (4) as a result of the disclosures of the fraud, suffered a loss of *$52,710,653* in connection with its Class Period purchases.  (*See* Lieberman Decl., Ex. C.)  Because the Mylan Institutional Investor Group possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3.   The Mylan Institutional Investor Group Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification;

---

[1] *See also In re Olsten Corp. Sec. Litig.,* 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998).  *Accord In re Converse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996).  Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."  *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999).  In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class."  *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.")).

The claims of the Mylan Institutional Investor Group are typical of those of the Class.  The Mylan Institutional Investor Group alleges, as do all class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Mylan, or omitted to state material facts necessary to make the statements they did make not misleading.  The Mylan Institutional Investor Group, as did all members of the Class, purchased Mylan securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of

9

those misrepresentations and/or omissions.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986); *Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent.'") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

The Mylan Institutional Investor Group is an adequate representative for the Class.  Its members are sophisticated, like-minded institutional investors with the experience and resources necessary to maximize the recovery on behalf of the Class.  Menorah Insurance is one of the largest insurance companies in Israel, with operations in the general insurance, life insurance, and health insurance sectors, with approximately $9 billion in assets under management.  (*See* Lieberman Decl., Ex. D, ¶ 2.)  Menorah Pensions is the largest private pension fund in Israel, with over one million members and assets under management of $25 billion.  (*Id.*)  Menorah Pensions operates as a subsidiary of Menorah Insurance, a subsidiary of Menorah Mivtachim Holdings Ltd. ("Menorah Holdings"). (*Id.*).   The assets of Menorah Insurance and Menorah Pensions are both managed by the same Investment Committee.   Shay Kompel, the Chief Financial Officer of Menorah Holdings, and Yony Tal, the Executive Vice Chief Executive Officer ("CEO"), Chief Investment Officer, of Menorah Insurance, each with authority to bind the Menorah entities and enter into litigation on their behalf, signed a shareholder certification on their behalves, attesting

to the Menorah entities' purchases of Mylan securities during the Class Period and to their willingness to serve as Class Representatives.  (*See* Lieberman Decl., Ex. B.).

Meitav is an affiliate of Meitav Dash, a leading investment management firm in Israel, with over $36.3 billion in assets under management for private, business, and institutional investors. (*See* Lieberman Decl., Ex. D at ¶ 4.)  Teddy Lin, CEO of Meitav Dash, with authority to bind Meitav and enter into litigation on its behalf, signed a shareholder certification on its behalf, attesting to Meitav's purchases of Mylan securities during the Class Period and to its willingness to serve as a Class Representative.  (*See* Lieberman Decl., Ex. B.)

Phoenix, the principal branch of Phoenix Holdings Ltd., is a leading Israeli insurance company, and provides insurance products and services, including life insurance, long-term savings, pension and provident funds, general insurance, and healthcare insurance.  (*See* Lieberman Decl., Ex. D, ¶ 3.)  Phoenix has over $10 billion in assets under management.  (*Id.*) Roy Yakir, Executive Vice President and Chief Investments Manager of Phoenix, and Menachem Neeman, Senior Vice President, Chief Legal Counsel, and Corporate Secretary of Phoenix, each with authority to bind Phoenix and enter into litigation on its behalf, signed a shareholder certification on its behalf, attesting to Phoenix's purchases of Mylan securities during the Class Period and to its willingness to serve as a Class Representative.  (*See* Lieberman Decl., Ex. B.)

In addition, several members of the Mylan Institutional Investor Group have valuable experience from serving as Lead Plaintiff or Co-Lead Plaintiff in previous securities class actions. Menorah served as Lead Plaintiff in *In re Comverse Technology, Inc. Securities Litigation*, 06-cv-01825 (E.D.N.Y.), where it secured a historic $225 million settlement on behalf of the Class; the second to largest class action settlement involving the stock option backdating scandal.  (*See* Lieberman Decl., Ex. D. at ¶ 6.)  Meitav previously served as Lead Plaintiff in *In re Sanofi*

*Securities Litigation*, 14-cv-09624 (S.D.N.Y.).  (*Id.*)  Through their participation in these actions, Menorah and Meitav have developed considerable experience and appreciation for a Lead Plaintiff's responsibilities under the PSLRA.

The Mylan Institutional Investor Group is an appropriate Lead Plaintiff group.  The appointment of a group of class members as Lead Plaintiff is expressly permitted by the PSLRA, as courts in this District and the majority of courts throughout the country have recognized.  *See, e.g.*, *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiff); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 421 (S.D.N.Y. 2004) (appointing two institutional investors with greatest financial interest in the litigation as co-lead plaintiffs); *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) (holding that the PSLRA permits appointment of a "person or group of persons" and appointing a group with the largest financial interest as lead plaintiff); *Dollens v. Zionts*, 2001 U.S. Dist. LEXIS 19966, at \*18 n.7 (N.D. Ill. Dec. 4, 2001) (explaining that appointment of a lead plaintiff group is appropriate under the PSLRA provided that the group will "fairly and adequately protect the interests of the class.").

Here, the Mylan Institutional Investor Group is an appropriate group: the group is small and cohesive, consisting of only three companies—Menorah, Meitav, and Phoenix—that suffered significant losses from their purchases of Mylan securities during the Class Period.  In addition, as described *supra* at pp. 11-12, several members of the Mylan Institutional Investor Group have

experience serving as Lead Plaintiff or Co-Lead Plaintiff in prior securities class actions.  (*See* Lieberman Decl., Ex. D at ¶¶ 2, 4, 6.)  This informed the decision of the Mylan Institutional Investor Group's members to jointly seek appointment as Lead Plaintiff, as the group believes that such partnerships can benefit investors.  (*Id.* at ¶ 6.); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) ("The use of multiple lead plaintiffs will best serve the interests of the proposed class in this case because such a structure will allow for pooling . . . of [their] knowledge and experience"); *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 420 (noting benefits of co-lead plaintiff structure with respect to "ensur[ing] that adequate resources and experience are available to the prospective class in the prosecution of this action").

As set forth in their Joint Declaration, the Mylan Institutional Investor Group has demonstrated its commitment to working cohesively as a group in the prosecution of this action. (*See* Lieberman Decl., Ex. D.); *see also Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 356 (S.D.N.Y. 2011) (appointing group that submitted joint declaration describing: "why the individual members chose to work as a group; how the group intends to function collectively, including how they plan to communicate; the protocol the group will use to address disagreements; background information regarding individual members of the group; and the members' willingness to accept the role and responsibilities of lead plaintiff"); *W. Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731, 2014 U.S. Dist. LEXIS 49595, at *21 (E.D. Pa. Apr. 10, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members). Indeed, the Mylan Institutional Investor Group is comprised of a small, cohesive partnership of sophisticated institutional investors that determined on their own to jointly seek appointment as Lead Plaintiff.  (*See* Lieberman Decl., Ex. D); s*ee also DFC Global Corp.*, 2014 U.S. Dist. LEXIS 49595, at *22 (appointing group after concluding that the group was capable of "fairly and

13

adequately protect[ing] the interests of the class"); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289, 2012 U.S. Dist. LEXIS 89192, at *11 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation"). Moreover, demonstrating their commitment to serving as Lead Plaintiff and their ability to work and communicate with one another for the benefit of the Class, representatives of Menorah, Meitav and Phoenix participated in a joint conference call, prior to filing this Motion, to discuss "the strength of the claims against Defendants; a strategy for prosecuting these actions; the benefits that the class would receive from the leadership of a coordinated group of institutional investors with prior experience serving as Lead Plaintiff under the PSLRA". (*See* Lieberman Decl., Ex. D at ¶ 7.)

Indeed, the Mylan Institutional Investor Group is a paradigmatic Lead Plaintiff under the PSLRA because it is a small group of sophisticated institutional investors with a real financial interest in the litigation. "[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one." *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012) ("many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs"); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 180 (3d Cir. 2005); H.R. Conf. Rep. No. 104-369, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690. Indeed, courts have demonstrated a sufficiently strong preference for institutional investors to serve as lead plaintiffs to appoint institutional investors over non-institutional movants alleging greater losses. *See, e.g.*, *Randall v. Fifth St. Fin. Corp.*, 15-cv-7759 (LAK), 2016 U.S. Dist. LEXIS 15719, at *9 (S.D.N.Y. Feb. 1, 2016) ("The Court bases its decision, then, on the Congressional preference for institutional lead plaintiffs in private securities

class actions."). Each member of the Mylan Institutional Investor Group is an institutional investor with a significant stake in the outcome that is capable of actively prosecuting a complex securities class action and directly overseeing the efforts of its counsel—precisely the type of Lead Plaintiff that Congress envisioned when it enacted the PSLRA.

The evidence submitted by the Mylan Institutional Investor Group demonstrating its commitment to vigorously and effectively representing the interests of the Class as members of a Lead Plaintiff group is more than adequate to satisfy the adequacy and typicality requirements. *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (finding that "demonstrated cooperation among plaintiffs [through discussions and declarations memorializing their joint oversight over counsel and the action], particularly plaintiffs that are sophisticated institutional investors, satisfies concerns about designating groups as lead plaintiffs that are in fact dominated by counsel").

> ### 4.    The Mylan Institutional Investor Group Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses

The presumption in favor of appointing the Mylan Institutional Investor Group as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interest of the class; or
>
> (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The ability and desire of the Mylan Institutional Investor Group to fairly and adequately represent the Class has been discussed above. The Mylan Institutional Investor Group is not aware of any unique defenses defendants could raise that would render it inadequate to represent the

Class.  Accordingly, the Mylan Institutional Investor Group should be appointed Lead Plaintiff for the Class.

### C.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, the Mylan Institutional Investor Group has selected the Pomerantz law firm as Lead Counsel.  Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.  (*See* Lieberman Decl., Ex. E.)

Pomerantz is a premiere firm in the area of securities litigation.  For more than 80 years, Pomerantz has represented defrauded investors, recovering well over $1 billion on its clients' behalf.  The firm currently serves as lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), a group of consolidated class actions against the Brazilian energy giant Petrobras concerning a sprawling kickback scheme that resulted in over $19 billion in asset impairment and charges.  As class counsel in *In re Comverse Technology Inc. Securities Litigation*, 06-cv-01825 (E.D.N.Y.), Pomerantz secured a historic $225 million settlement on behalf of the Class (with Menorah serving as Lead Plaintiff), the second-to-largest settlement achieved relating to the stock option backdating scandal.  More recently, Pomerantz, as lead or co-lead counsel, has secured highly favorable settlements in *In re Groupon, Inc. Securities Litigation*, 12-cv-02450 (N.D. Ill.) ($45 million class settlement), and *In re Lumber Liquidators Holdings, Inc. Securities*

*Litigation*, 13-cv-00157 (E.D. Va.) ($42 million class settlement, pending court approval).  Courts throughout the country have recognized Pomerantz's qualifications to serve as class counsel, and Pomerantz has recently been appointed lead counsel in actions including *Kukkadapu v. Embraer S.A. et al.*, 16-cv-06277 (S.D.N.Y.), *Menaldi v. Och-Ziff Capital Management Group, LLC et al.*, 14-cv-03251 (S.D.N.Y.), *In re Lipocine Inc. Sec. Litig.*, 16-cv-04009 (D.N.J.), *Mulvaney v. The GEO Group, Inc. et al.*, 16-cv-81494 (S.D. Fla.), and *In re Juno Therapeutics, Inc.*, 16-cv-01069 (W.D. Wash.).  With 40 attorneys across four offices, Pomerantz possesses the requisite expertise and resources to diligently prosecute this action.

Pomerantz and its attorneys have been awarded numerous honors for outstanding work in class-action litigation:

- The National Law Journal inducted Pomerantz into its Plaintiffs' Hot List Hall of Fame.
- The Legal 500 recognized Pomerantz as a Leading Firm for 2016.
- In 2016, four Pomerantz attorneys were honored as Super Lawyers® "Top-Rated Securities Litigation Attorneys," two were honored as 2016 Rising Stars, one was selected by the *Daily Journal* as one of forty outstanding lawyers
- Lex Machina, a LexisNexis company, ranked Pomerantz as the most active securities litigation firm in the U.S., based on the cases filed by the firm in 2015.

As a result of the firm's extensive experience in litigation involving issues similar to those raised in the Related Actions, the Mylan Institutional Investor Group's counsel have the skill and knowledge which will enable them to prosecute a consolidated action effectively and expeditiously.  Thus, the Court may be assured that by approving the selection of Lead Counsel by the Mylan Institutional Investor Group, the members of the Class will receive the best legal representation available.

## **CONCLUSION**

For the foregoing reasons, the Mylan Institutional Investor Group respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing the Mylan

Institutional Investor Group as Lead Plaintiff for the Class; (3) approving Pomerantz LLP as Lead Counsel for the Class; and (4) granting such other relief as the Court may deem to be just and proper.

Dated:   December 12, 2016

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email:  jalieberman@pomlaw.com
         ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Counsel for Movant and*
*Proposed Lead Counsel for the Class*