

**Jeremy A. Lieberman**
Managing Partner

September 8, 2017

VIA ECF

Hon. J. Paul Oetken, U.S.D.J.
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 706
New York, NY 10007

Re: *In re Mylan N.V. Securities Litigation,* 16-cv-07926 (JPO)

Dear Judge Oetken:

We are counsel for Lead Plaintiffs ("Plaintiffs") Menorah Mivtachim Insurance Ltd., Menorah Mivtachim Pensions and Gemel Ltd., Phoenix Insurance Company Ltd., and Meitav DS Provident Funds and Pension Ltd. (the "Israeli Investor Group")[1] in the above-referenced class action (the "Action").[2] We write in response to the letter, dated August 14, 2017, from Israel Wolnerman and Ohad Rosen ("Wolnerman and Rosen") to the Court (the "Wolnerman/Rosen Letter" or "Ltr."), and in response to the Court's August 16, 2017 order (Dkt. 52) permitting each party to submit a letter "stating its position as to what action, if any, should be taken by the Court at this time in response to the [Wolnerman/Rosen Letter]." In their Letter, Wolnerman and Rosen request that the Court decline to exercise jurisdiction over the TASE Investor Class' Israeli law claims and not permit Lead Plaintiffs and Lead Counsel to represent the TASE Investor Class. For the reasons set forth below, Lead Plaintiffs respectfully request that the Court deny the relief sought in the Wolnerman/Rosen Letter.

## I. SUPPLEMENTAL JURISDICTION OVER THE ISRAELI CLAIMS IS APPROPRIATE

As explained in Plaintiffs' Opposition ("Opposition" or "Opp.") to Defendants' Motion to Dismiss the Amended Compliant ("Amended Complaint" or "Am. Compl."), the Court can and should exercise supplemental jurisdiction over Plaintiffs' Israeli law claims. (Opp. 23-25.) Under 28 U.S.C. § 1367(a), the Court "shall," subject to limited exceptions, "have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." As the Israeli law and

[1] Lead Plaintiff Dan Kleinerman does not join this letter as he has not asserted any claims related to purchases made on the TASE.

[2] Capitalized terms not defined in this letter shall have the definitions given to them in the Amended Complaint or the Opposition.

jalieberman@pomlaw.com
600 Third Avenue, New York, New York 10016 tel: 212.661.1100 www.pomerantzlaw.com
NEW YORK CHICAGO LOS ANGELES PARIS



Exchange Act claims are substantially the same and focus on the same factual nexus, and no applicable exception has been identified by any party (*see* Opp. 23-24), Section 1367 mandates that the Court exercise supplemental jurisdiction over the Israeli law claims in the Action.

Wolnerman and Rosen offer no rationale for denial of supplemental jurisdiction. As an initial matter, rather than address the mandate of the supplemental jurisdiction statute, or proceed under the structure of any other potentially applicable law or legal doctrine, the Wolnerman/Rosen Letter offers arguments in the form of general considerations that they claim somehow would make the Court's exercise of jurisdiction over the Israeli law claims improper. Yet these general considerations are all based on inaccurate factual predicates and are flatly contradicted by both the record and settled law.

A. Lead Plaintiffs Purchased Numerous Mylan Shares on the TASE, and Are Thereby Adequate To Represent Both NASDAQ and TASE Investors.

Wolnerman and Rosen argue that Lead Plaintiffs did not purchase shares in Mylan on the TASE. (Ltr. §§ (5)(b), (6)(a).) The record easily belies this assertion. As alleged in the Amended Complaint (¶ 25), each member of the Israeli Investor Group purchased Mylan shares on the TASE *in addition* to the NASDAQ transactions listed on their certifications. Indeed, Lead Plaintiffs purchased *millions* of shares of Mylan stock on the TASE during the Class Period. (*See* Am. Compl. ¶¶ 25, 367.) While the PSLRA has no application to foreign securities claims, and so did not require the Israeli Investor Group to identify their transactions on their certifications, for the Court's benefit, the Israeli Investor Group proffers that it completed the following transactions on the TASE:

- Menorah Mivtachim Insurance Ltd. and Menorah Mivtachim Pensions and Gemel Ltd. purchased 3,142,821 shares on the TASE during the Class Period, sold 24,963 shares, and held 3,117,858 shares at the end of the Class Period;

- Phoenix Insurance Company Ltd. purchased 50,353 shares on the TASE during the Class Period, sold 19,313 shares, and held 31,040 shares at the end of the Class Period;

- Meitav DS Provident Funds and Pension Ltd. purchased 2,640,333 shares on the TASE during the Class Period, sold 536,566 shares, and held 2,255,237 shares at the end of the Class Period.[3]

[3] Meitav DS Provident Funds and Pension Ltd. held more shares in Mylan at the end of the Class Period than the difference between its purchases and sales of Mylan shares during the Class Period because it held Mylan shares prior to the Class Period.



With such significant purchases and retained shares on the TASE, there can be little doubt regarding Lead Plaintiffs' adequacy to protect the interests of other TASE investors by maximizing their recovery from the pursuit of these claims.

B. No Conflict Exists Between the Classes.

Wolnerman and Rosen next argue that the NASDAQ and TASE Investor Classes are conflicted because the class periods for their claims differ (though they substantially overlap), and because there are differences between the details of transactions on the TASE and NASDAQ exchanges, such as time zone differences, trading days and currency (Ltr. § B(6)(b).)

Wolnerman and Rosen's argument that these putative classes are conflicted is wholly meritless. It is settled law that differences between class members that relate only to differences in the time or manner in which they purchased a security do not amount to a conflict that would undermine class certification, as these differences can be accounted for in calculating damages. *See, e.g.*, *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 92 (S.D.N.Y. 1998) ("factual differences in the amount of damages, date, size or manner of purchase, the type of purchaser, the presence of both purchasers and sellers, and other such concerns will not defeat class action certification when plaintiffs allege the same unlawful course of conduct affected all members of the proposed class"); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 277 (S.D.N.Y. 2008) ("Courts have . . . repeatedly recognized that putative intra-class conflicts relating to the time at which particular class members purchased their securities, and which could potentially motivate different class members to argue that the securities were relatively more or less inflated at different time periods, relate to damages and do not warrant denial of class certification"); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 265 F.R.D. 157, 170 (S.D.N.Y. 2010) (same).

Indeed, even where (unlike here) purchases of two *wholly different types* of securities are at issue in a class action, courts have found no conflict of interest between the class representatives and purchasers of one or the other type of security. *See In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 274 (S.D.N.Y. 2003) (certifying a class of purchasers of either debt or equity securities of WorldCom, Inc., where the class representatives included purchasers of both debt and equity securities). Even where class representatives have purchased only one type of a security from a company that issues other types of securities, courts have allowed those with valid securities claims to represent the interests of the purchasers of other types of securities in class action suits. *See In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 775-76 (S.D.N.Y. 2012) (holding that purchasers of one type of debt security had standing to bring claims on behalf of purchasers of a different debt security when both were issued in the same offering pursuant to the same offering documents); *Fort Worth Emples. Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 340 (S.D.N.Y. 2012) (same); *In re*



*Petrobras Sec. Litig.*, 312 F.R.D. 354, 360 (S.D.N.Y. 2016) (vacated on other grounds in *In re Petrobas Sec. Litig.*, 862 F.3d 250, 256 (2d Cir. 2017)) (certifying a class of purchasers of both debt and equity securities because "such variations are not relevant when the same alleged misconduct drives the claims based on debt and equity alike"); *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 714 (S.D. Tex. 2006) (granting class certification even though the complaint alleged "many separate fraudulent schemes under § 10(b), in at least seven distinct time periods, involving different subsets of Defendants," including equity and debt purchasers).

Likewise, a lead plaintiff that has a claim under one cause of action may bring claims on behalf of plaintiffs that have claims under a different cause of action where the facts underlying those causes of action are sufficiently related. *See, e.g.*, *In re WorldCom*, 219 F.R.D. at 283 (permitting lead plaintiff with only a Section 11 claim to represent others with a Section 12(a)(2) claim because the Section 12 claim "ar[ose] from the same course of conduct" and "involve[d] the same defendants, legal theories and factual allegations that g[a]ve rise to and inform[ed] the Section 11 claims"); *In re Enron*, 529 F. Supp. 2d at 714 (similar).

Accordingly, no conflict exists between the claims of the NASDAQ and TASE investor classes that would make the Court's exercise of supplemental jurisdiction inappropriate.

C. Under Israeli Law, U.S. Securities Law Is Applied to the Claims of the TASE Investor Class

As explained in Plaintiffs' Opposition, as well as the declaration of Plaintiff's Israeli law expert, Professor Amir Licht (the "Licht Declaration") cited therein, Israeli law subordinates itself to, and adopts, U.S. securities law in actions involving securities that are dual-listed on the NASDAQ and TASE. (*See* Opp. 22-25; Licht Decl. ¶¶ 6-10, 51-65.) Accordingly, Israeli law dictates that U.S. securities law should apply to the TASE Investor Class' claims, and so the law to be applied to those claims is familiar to the Court and poses no problem for the Court's exercise of supplemental jurisdiction.

Wolnerman and Rosen do not directly contest that the Court should apply U.S. securities law to the claims of the TASE Investor Class. Instead, they argue that "the question whether Israeli or U.S. law applies to dual listed companies ha[s] not been decided yet." (Ltr. § C(8).) For this proposition, Wolnerman and Rosen rely on an *obiter dictum* from a decision by the Tel Aviv District Court in *Damti v. MannKind* Class Action 28811-02-16 (Nov. 13, 2016).[4]

[4] Wolnerman and Rosen also cite a professional journal article in support of the claim that Israeli law applies to the claims of the TASE Investor Class. This article is entitled to minimal weight. The authors, Livneh-Zemer and Volovelsky are legal practitioners rather than legal academics, and the substantive argument they present in the

However, that *dictum* is accurate only in the sense that as of now, the Israeli Supreme Court has yet to rule directly on the question. The only court to have addressed whether Israeli or U.S. law applies to dual listed companies, namely the Israeli District Court in *Verifone Holdings, Inc. v. David Stern*, Class Action 3912-01-08 (Sept. 11, 2008) ("*Verifone I*"), determined that U.S. law does apply, and that decision remains the most authoritative statement of Israeli law on this question to date. Moreover, as noted in the Licht Declaration (¶ 60), in *Stern v. Verifone Holdings, Inc.*, L.C.A. 3973/10, at ¶ 36 (Apr. 2, 2015) ("*Verifone III*"), President (Ret.) Grunis of the Israeli Supreme Court noted in agreement and without qualification that the referring U.S. District Court had considered the Israeli District Court's decision in *Verifone I* and rejected the claim that the U.S. Supreme Court's decision in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010) had changed the law in a way that would make application of U.S. law to claims relating to dual-listed securities inappropriate. In addition, in *Hatzlacha HaTnu'a HaTzarchanit LeKidum Hevra Kalkalit Hogenet v. Perrigo Co.*, Class Action 43065-03-13 (Oct. 2, 2014), Judge Kaboub stated, "The cause of action . . . in the U.S. is the same cause of action that stockholders in Israel have." Although this statement was an *obiter dictum* as well, the statement accepts that the applicable law with respect to civil liability for dual listed securities is U.S. law.

As U.S. law applies to the claims of the TASE Investor Class, there should be little difficulty in the Court's rendering decisions with respect to those claims. Moreover, to the extent that this Court would find that Israeli Securities Law, 1968 should be the substantive law with respect to the claims of the TASE Investor Class (in contravention of relevant case law), this Court should nevertheless exercise supplemental jurisdiction over such claims, because they arise under the same operative facts as the Section 10(b) and 20(a) claims being pursued by Lead Plaintiffs. *See Alameda Cnty. Employees' Ret. Assn. v. BP p.l.c. (In re BP p.l.c.)*, No. MDL No. 10-md-2185, 2013 U.S. Dist. LEXIS 171459, at *100 (S.D. Tex. Dec. 2, 2013) (applying English law to claims arising out of the same factual nexus as the federal securities claims over which the court had original jurisdiction).

## II. LEAD PLAINTIFFS AND THEIR CHOSEN COUNSEL ARE BEST SUITED TO REPRESENT THE TASE INVESTOR CLASS

In the alternative, Wolnerman and Rosen request that the Court appoint their clients as lead plaintiffs for the TASE Investor Class' Israeli law claims and allow those clients to select their counsel as lead counsel for those claims. (Ltr. § D.) The Court should reject this request as

article misses the mark. Writing after *Verifone II*, these authors argue that due to *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010) and in light of subsequent U.S. case law, non-U.S. traders cannot obtain a remedy based on the Securities and Exchange Act of 1934. As explained in the Licht Declaration (¶¶ 51-62), this argument is mistaken. TASE traders have a Section 10(b) cause of action thanks to Israeli law's adoption of Section 10(b), and these causes of action are not dependent on the extraterritorial application of U.S. securities law.



well. The PSLRA contains no provisions governing the appointment of lead plaintiffs or lead counsel for foreign claims raised under supplemental jurisdiction apart from the provisions governing appointment of lead plaintiffs for the claims over which the Court has original jurisdiction. Lead Plaintiffs are aware of no procedural law or rule that would permit the Court to add additional, separate lead plaintiffs for class action claims over which the Court exercises supplemental jurisdiction.

In any event, Lead Plaintiffs and their chosen counsel are appropriate representatives of the TASE Investor Class. As explained above, the Israeli Investor Group purchased *millions* of shares in Mylan on the TASE during the Class Period, likely suffering far more damages than those suffered by the clients Wolnerman and Rosen represent. Likewise, Wolnerman and Rosen have failed to identify any conflict between the Israeli Investor Group and the TASE Investor Class, nor can they, because none exists. Finally, as U.S. securities law applies to the TASE Investor Class' claims, Lead Counsel is better positioned to represent the interests of the TASE Investor Class than current counsel in the Israeli class actions, Wolnerman and Rosen, because Lead Counsel has extensive expertise in prosecuting U.S. securities class actions (*see* Firm Resume, Ex. E to Decl. of J. Lieberman, Dkt. 20), while Wolnerman and Rosen have proffered no evidence regarding their experience in pursuing claims under U.S. law.[5]

Finally, while Wolnerman and Rosen fail to identify any credible conflict with respect to Lead Plaintiffs' pursuit of the TASE claims, this issue need not be adjudicated at this stage. Any potential conflict of interest or related concern can be analyzed and addressed by this Court at the class certification stage. In the interim, Lead Plaintiffs simply seek to have their claims based on TASE transactions heard in the same forum as their claims based on NASDAQ transactions. Given that precisely the same substantive law applies to these transactions, and that they relate to a virtually identical factual nexus, judicial economy strongly militates in favor of this approach.

[5] Notably, in the complaint in the second-filed Israeli class action at issue (*Advance Learning Fund of the Employees of Israel Electric Corp. Ltd. V. Mylan*, Class Action 50981-04017 (the "*Advance Learning Fund* Complaint")), counsel (including Kalai Rosen) criticized the complaint in the first-filed Israeli class action at issue (*Friedman v. Mylan*, Class Action 182170-10-16)) (drafted by the firm of Israel Wolnerman) by stating: "[T]he *Friedman* Petition [sic] an inadequate and deficient action. Its factual basis consists of only eight sections and only one passage from an ostensibly deceptive financial statement is cited in it." (Ex. 10 to Decl. of S. Atkinson, Dkt. 47). In contrast, the *Advance Learning Fund* Complaint praises itself as "a full and complete petition" "written in a detailed and well-ordered manner," and Israeli counsel appear merely to have copied, in substantial part, the Amended Complaint in the Action in drafting the *Advance Learning Fund* Complaint. (*Id.*)

For these reasons, Lead Plaintiffs request that the Court deny the relief sought in the Wolnerman/Rosen Letter.

Respectfully Submitted,

By: */s/ Jeremy A. Lieberman*

Jeremy A. Lieberman
Austin P. Van
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
avan@pomlaw.com

*Attorneys for Lead Plaintiffs*

cc: All counsel of record (via ECF)