**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Mylan N.V. Securities Litigation | No. 16-cv-07926 (JPO) |

**DEFENDANTS' ANSWER AND AFFIRMATIVE AND OTHER DEFENSES**
**TO LEAD PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

Defendants Mylan N.V., Mylan Inc., Heather Bresch, Robert J. Coury, Paul B.
Campbell, Kenneth S. Parks and John D. Sheehan ("Defendants"), upon personal knowledge
and/or information and belief, answer Plaintiffs' Amended Class Action Complaint, dated
March 20, 2017 (the "Complaint"), as follows:

1.      Deny the allegations of paragraph 1 of the Complaint, except admit that
this action purports to be a class action on behalf of persons or entities that acquired the
securities of Mylan N.V. and/or Mylan Inc., between February 21, 2012 and January 29, 2017,
and that Plaintiffs purport to seek remedies for alleged violations of the Securities Exchange Act
of 1934, and further state that Plaintiffs' claims purportedly brought on behalf of persons or
entities that purchased Mylan N.V. ordinary shares on the Tel Aviv Stock Exchange ("TASE")
for alleged violations of the Israel Securities Law of 1968 were dismissed by the Court in its
Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and
Order instructed Defendants to "file an answer to the surviving claims", and thus no response is
required with respect to the allegations of paragraph 1 of the Complaint related thereto.
[Dkt. #69.]

2.      Deny the allegations of paragraph 2 of the Complaint, except admit that subsidiaries of Mylan N.V. develop, license, manufacture, market and distribute generics, branded generics, brand-name and over-the-counter products in a variety of dosage forms and therapeutic categories around the world, and further admit that an indirect subsidiary of Mylan N.V. markets and sells the EpiPen® and EpiPen Jr® (collectively, "EpiPen") Auto-Injectors, which are manufactured and supplied by a wholly owned subsidiary of Pfizer, and further admit that EpiPen products dispense measured doses of epinephrine, which is considered the first line treatment for anaphylaxis, and further admit that anaphylaxis is a severe allergic reaction that is rapid in onset and may cause death, either through swelling that shuts off airways or through a significant drop in blood pressure, and further admit that Mylan N.V., along with its subsidiaries, manufactures and sells certain generic drugs, including (in at least one dosage and product form): albuterol sulfate, benazepril, clomipramine, divalproex, propranolol and doxycycline hyclate delayed release ("Doxy DR"), and Defendants refer to the National Institutes of Health DailyMed website for indications and usage for each of these generic drugs, and further state Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 2 of the Complaint related thereto. [Dkt. #69.]

3.      Deny the allegations of paragraph 3 of the Complaint, except admit that Mylan N.V. and Mylan Inc. have been involved in various disputes, governmental and/or regulatory inquiries, investigations and proceedings, tax proceedings and litigation matters, both

in the U.S. and abroad, that arise from time to time, and refer to those disputes, inquiries, investigations, proceedings and litigations for their contents, and further state that, as this Court found in its Opinion and Order entered on the docket on March 28, 2018, "Mylan was never— and, as of today, never has been—found liable for the misconduct alleged by Plaintiffs". [Dkt. #69.]

4.     Deny the allegations of paragraph 4 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 4 of the Complaint related thereto.  [Dkt. #69.]

5.     Deny the allegations of paragraph 5 of the Complaint, and refer to 42 U.S.C. § 1396r-8 for its contents.

6.     Deny the allegations of paragraph 6 of the Complaint, except admit that the Omnibus Budget Reconciliation Act of 1990 was enacted in 1990, and refer to 42 U.S.C. § 1396r-8 and 42 C.F.R. § 447.500 *et seq.* for their contents.

7.     Deny the allegations of paragraph 7 of the Complaint, and refer to 42 U.S.C. § 1396r-8 and 42 C.F.R. § 447.500 *et seq.* for their contents.

8.     Deny the allegations of paragraph 8 of the Complaint, except admit that Mylan N.V. and Mylan Inc. have retained highly sophisticated and capable attorneys to provide legal advice to ensure compliance with applicable laws.

9.      Deny the allegations of paragraph 9 of the Complaint, except admit that, based on publicly available information, Andrew M. Slavitt sent a letter to Senator Ron Wyden dated October 5, 2016, and refer to that letter for its contents, and further state that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the contents of alleged communications that purportedly occurred in "early 2009", between "the Inspector General of the Department of Health and Human Services" and unspecified persons at "CMS".

10.      Deny the allegations of paragraph 10 of the Complaint, except admit that Mylan N.V. (and, for periods prior to February 27, 2015, Mylan Inc.) periodically submitted filings with the U.S. Securities and Exchange Commission ("SEC"), and refer to those filings for their contents, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "statements about the complexity, ambiguity, and subjectivity of the rebate calculation [which] are statements of opinion", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 10 of the Complaint related thereto.  [Dkt. #69.]

11.      Deny the allegations of paragraph 11 of the Complaint, except admit that in November 2014, Mylan Inc. received a subpoena from the U.S. Department of Justice ("DOJ") that sought information concerning the classification of EpiPen products for purposes of the Medicaid Drug Rebate Program.

12.      State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims

4

relied on allegations related to "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 12 of the Complaint. [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 12 of the Complaint, except admit that Mylan has offered the EpiPen4Schools® program for qualifying schools, and refer to the specific documents signed by participating schools for their contents.

13.     Deny the allegations of paragraph 13 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 13 of the Complaint related thereto.  [Dkt. #69.]

14.     Deny the allegations of paragraph 14 of the Complaint, except admit that the attorneys general of certain states filed a complaint in the U.S. District Court for the District of Connecticut dated December 14, 2016, in a case captioned *Connecticut v. Aurobindo Pharma USA, Inc.*, No. 3:16-cv-02056, against several generic pharmaceutical drug manufacturers, including Mylan Pharmaceuticals, Inc., and refer to that complaint for its contents, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is

required with respect to the allegations of paragraph 14 of the Complaint related thereto.  [Dkt. #69.]

15.     Deny the allegations of paragraph 15 of the Complaint.

16.     Deny the allegations of paragraph 16 of the Complaint, except admit that Mylan N.V. (and, for periods prior to February 27, 2015, Mylan Inc.) periodically submitted filings with the SEC, and refer to those filings for their contents.   Defendants further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 16 of the Complaint related thereto.  [Dkt. #69.]

17.     Deny the allegations of paragraph 17 of the Complaint, and refer to the public record for the per share price of Mylan N.V. ordinary shares on January 30, 2017, except admit that on November 18, 2016, Mylan received a request from the Federal Trade Commission ("FTC") Bureau of Competition seeking documents and information relating to its preliminary investigation into potential anticompetitive practices involving epinephrine auto-injectors, and further state that Mylan is fully cooperating with the FTC's inquiry, and further state that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the contents of the unidentified "news article" or unidentified "U.S. Congresspersons", and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those

6

claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 17 of the Complaint related thereto.  [Dkt. #69.]

18.     Deny the allegations of paragraph 18 of the Complaint, except admit that, based on publicly available information, Inside Health Policy published an article titled "CMS Tells Mylan It Incorrectly Classified EpiPen To Pay Lower Medicaid Rebates, Lawmakers Upset" dated September 2, 2016, and further admit that, based on publicly available information, Bloomberg published an article titled "Mylan Accused by U.S. of Overcharging Medicaid for EpiPen" dated October 5, 2016, and refer to those articles for their contents, and refer to the public record for the per share price of Mylan N.V. ordinary shares on September 2, 2016 and October 6, 2016.

19.     Deny the allegations of paragraph 19 of the Complaint, except admit that, based on publicly available information, Bloomberg News published an article titled "U.S. Charges in Generic-Drug Probe to Be Filed by Year-End" dated November 3, 2016, and admit that, based on publicly available information, Bloomberg published an article titled "U.S. Generic Drug Probe Seen Expanding After Guilty Pleas" dated December 14, 2016, and further state that, based on publicly available information, The Philadelphia Inquirer article titled "Ex-N.J. pharma execs admit to fixing generic drug prices" was originally dated January 9, 2017, not published on January 10, 2017 as alleged in paragraph 19 of the Complaint, and refer to those articles for their contents, and refer to the public record for the per share price of Mylan N.V. ordinary shares on November 3, 2016, December 14, 2016, January 10, 2017, January 11, 2017 and January 12, 2017.

7

20.     Deny the allegations of paragraph 20 of the Complaint.

21.     Deny the allegations of paragraph 21 of the Complaint, except admit that Plaintiffs purport to bring this action pursuant to the statutes and rules cited therein.

22.     State that the allegations of paragraph 22 of the Complaint purport to state characterizations and/or conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of paragraph 22 of the Complaint, except admit that Plaintiffs purport to invoke the jurisdiction of this Court pursuant to the statutes cited therein, and further state that this Court dismissed Count Three of the Complaint, "declin[ing] to exercise supplemental jurisdiction over th[e] Israeli law claim" in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to these claims or the second sentence of paragraph 22 of the Complaint.  [Dkt. #69.]

23.     State that the first sentence of paragraph 23 of the Complaint purports to state characterizations and/or conclusions of law that do not require a response.  Defendants admit that Mylan N.V. ordinary shares are listed on the NASDAQ Global Select Market, and that, based on publicly available information, NASDAQ's principal executive offices are located in New York.

24.     Deny the allegations of paragraph 24 of the Complaint.

25.     Deny the allegations of paragraph 25 of the Complaint.  Defendants further state that Plaintiffs' claims purportedly brought on behalf of purchasers of Mylan N.V. ordinary shares made on the TASE for alleged violations of the Israel Securities Law of 1968 were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving

8

claims", and thus no response is required with respect to the allegations of paragraph 25 of the

Complaint related thereto.  [Dkt. #69.]

       26.      Deny the allegations of paragraph 26 of the Complaint, except admit that

Mylan N.V. is incorporated in the Netherlands, and further admit that Mylan N.V. has executive

offices located at Building 4, Trident Place, Mosquito Way, Hatfield, Hertfordshire, AL10 9UL,

England, but that the Chief Executive Officer and other executive officers of Mylan N.V. carry

out the day-to-day conduct of Mylan N.V.'s worldwide businesses at the company's principal

offices in Canonsburg, Pennsylvania, and further admit that subsidiaries of Mylan N.V. develop,

license, manufacture, market and distribute generics, branded generics, brand name and over-the-

counter products in a variety of dosage forms and therapeutic categories around the world, and

further admit that a subsidiary of Mylan N.V. markets and sells the EpiPen Auto-Injectors, and

further admit that EpiPen products (but not the authorized generics to EpiPen products) are

marketed under brand names, and further admit that EpiPen Auto-Injectors dispense measured

doses of epinephrine, which is considered the first line treatment for anaphylaxis, and further

admit that anaphylaxis is a severe allergic reaction that is rapid in onset and may cause death,

either through swelling that shuts off airways or through a significant drop in blood pressure, and

further admit that on July 13, 2014, Mylan N.V., Mylan Inc., and Moon of PA Inc. entered into a

definitive agreement with Abbott Laboratories ("Abbott") to acquire Abbott's non-U.S.

developed markets specialty and branded generics business (the "EPD Business") in an all-stock

transaction (the "EPD Transaction"), and admit on November 4, 2014, Mylan N.V., Mylan Inc.,

Moon of PA Inc. and Abbott entered into an amended and restated definitive agreement

implementing the transaction, and admit that the EPD Transaction closed on February 27, 2015

(the "EPD Transaction Closing Date"), after receiving approval from Mylan Inc.'s shareholders

on January 29, 2015, and admit that on February 27, 2015, Abbott transferred the EPD Business

to Mylan N.V., in exchange for 110 million ordinary shares of Mylan N.V., and admit that,

immediately after the transfer of the EPD Business, Mylan Inc. merged with Moon of PA Inc., an

indirect wholly owned subsidiary of Mylan N.V., with Mylan Inc. becoming an indirect wholly

owned subsidiary of Mylan N.V., and further admit that, at this time, Mylan Inc.'s outstanding

common stock was exchanged on a one to one basis for Mylan N.V. ordinary shares, and further

admit that Mylan N.V. is the successor registrant to Mylan Inc. for SEC reporting purposes, and

further admit that in connection with the EPD Transaction, officers and directors of Mylan Inc.

were appointed as officers and directors of Mylan N.V., and further admit that on March 2, 2017,

Mylan N.V.'s ordinary shares began trading on the NASDAQ Global Select Stock Market under

ticker symbol "MYL".  Defendants further state that plaintiffs' claims purportedly brought on

behalf of purchasers of Mylan N.V. ordinary shares made on the TASE for alleged violations of

the Israel Securities Law of 1968 were dismissed by the Court in its Opinion and Order entered

on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants

to "file an answer to the surviving claims", and thus no response is required with respect to the

allegations of paragraph 26 of the Complaint related thereto.  [Dkt. #69.]

        27.    Deny the allegations of paragraph 27 of the Complaint, except admit that

Mylan Inc. is incorporated in Pennsylvania.

        28.    Deny the allegations of paragraph 28 of the Complaint, except admit that

Defendant Heather Bresch has served as the Chief Executive Officer of Mylan N.V. (and, prior

to February 27, 2015, Mylan Inc.) since January 2012, and prior to that, held various positions at

Mylan Inc., including Director of Government Relations from March 1, 2002 to February 9,

2004.

29.     Admit the allegations of paragraph 29 of the Complaint.

30.     Admit the allegations of paragraph 30 of the Complaint.

31.     Admit the allegations of paragraph 31 of the Complaint.

32.     Admit the allegations of paragraph 32 of the Complaint.

33.     Deny the allegations of paragraph 33 and footnote 1 of the Complaint,

except admit that in 2007, Mylan Inc. acquired the predecessor to Mylan Specialty L.P., Dey

Pharma, L.P., which had the rights to market EpiPen products, and further admit that on

September 26, 2016, Mylan N.V. filed a Form 8-K with the SEC, and refer to that Form 8-K for

its contents, and admit that Mylan N.V. (and, for periods prior to February 27, 2015, Mylan Inc.)

filed Forms 10-K with the SEC, and refer to those Forms 10-K for their contents, and further

admit that EpiPen Auto-Injectors, like many of its products, are important to Mylan's business.

34.     Deny the allegations of paragraph 34 of the Complaint, except admit that

EpiPen Auto-Injectors, like many of its products, are important to Mylan's business, and further

state that Defendants are without knowledge or information sufficient to form a belief as to the

truth of the allegations concerning the contents of unidentified "analyst reports".

35.     Deny the allegations of paragraph 35 of the Complaint, except admit that,

based on publicly available information, RBC Capital Markets, LLC published an equity

research report titled "Our thoughts on negative EPIPEN pricing 'headline':  Direct read to MYL

but also implications for TEVA and IPXL" dated August 24, 2016, and admit that, based on

publicly available information, J.P. Morgan published a report titled "Mylan NV:  Updating

Estimates for Epipen; Remain Cautious In NT But Valuation Offers Compelling LT Entry Point"

dated October 4, 2016, and admit that, based on publicly available information, Morningstar

published a report titled "Mylan is digesting Meda while facing EpiPen headline risk" dated

September 16, 2016, and admit that, based on publicly available information, Morningstar

published a report titled "Mylan's EpiPen pricing blowback doesn't dramatically alter the

company's significant challenges" dated October 18, 2016, and Defendants refer to those

documents for their contents.

      36.     Deny the allegations of paragraph 36 of the Complaint, except admit that

sales of EpiPen Auto-Injectors, like sales of all Mylan products, impact Mylan's quarterly

earnings, and admit that, based on publicly available information, BTIG published an equity

research report titled "Mylan N.V.:  In Need of Epipen After Weak Q4; New Model w/Meda

Suggests Much Needed Accretion is Possible; Buy" dated February 11, 2016, and admit that,

based on publicly available information, Morgan Stanley published a report titled "Mylan Inc.:

Epipen drove EPS slightly above; guidance unchanged despite early deal closings" dated

August 9, 2016, and admit that, based on publicly available information, Barclays published an

equity research report titled "Mylan Inc.:  Epipen takes the driver's seat" dated August 10, 2016,

and refer to those reports for their contents.

      37.     Deny the allegations of paragraph 37 of the Complaint, and state that

Defendants are without knowledge or information sufficient to form a belief as to the truth of the

allegations concerning what drove unspecified "analysts' ratings and evaluations of Mylan's

financial prospects", except admit that, based on publicly available information, J.P. Morgan

published an equity research report titled "MYL/TEVA:  Positive Epipen News Supports EPS

Upside For MYL" dated March 1, 2016, and admit that, based on publicly available information,

J.P. Morgan published an equity research report titled "Mylan NV:  Solid Qtr Lead by Epipen;

Long-Term Growth Trajectory Remains Intact" dated August 10, 2016, and admit that, based on publicly available information, J.P. Morgan published an equity research report titled "Mylan NV:  Updating Estimates for Epipen; Remain Cautious in NT But Variation Offers Compelling LT Entry Point" dated October 4, 2016, and admit that, based on publicly available information, J.P. Morgan published an equity research report titled "Mylan NV:  Epipen Rebate Settlement and Updated Guidance A Positive" dated October 10, 2016, and admit that, based on publicly available information, Morgan Stanley published a report titled "Mylan:  Epipen 4Q sales hurt by inventory workdown, not price adjustments as we hypothesized" dated February 12, 2016, and admit that, based on publicly available information, Morgan Stanley published a report titled "Mylan Inc.:  Epipen drove EPS slightly above; guidance unchanged despite early deal closings" dated August 9, 2016, and admit that, based on publicly available information, BTIG published an equity research report titled "Mylan N.V.:  Upping Estimates to Reflect Higher Epipen Sales; Buy" dated January 21, 2016, and admit that, based on publicly available information, BTIG published an equity research report titled "Mylan N.V.:  MYL to Launch Authorized Generic Version of Epipen" dated August 29, 2016, and Defendants refer to those reports for their contents.

      38.     Deny the allegations of paragraph 38 and footnote 11 of the Complaint, except admit that EpiPen Auto Injectors have been dispensed to Medicaid participants, and further admit that, based on publicly available information, UBS published a report containing the sub-heading "Mylan Inc.:  We're still constructive on MYL" dated October 10, 2016, and refer to that report for its contents, and further admit that, based on publicly available information, Andrew M. Slavitt sent a letter to Senator Ron Wyden dated October 5, 2016, and refer to that letter for its contents.

39.     Deny the allegations of paragraph 39 of the Complaint, except admit that EpiPen products, like many of its products, are important to Mylan's business, and further admit that EpiPen Auto Injectors have been dispensed to Medicaid participants.

40.     Deny the allegations of paragraph 40 of the Complaint, except admit that Medicaid was enacted by the federal government, is administered by states according to federal requirements, and is funded jointly by states and the federal government, and provides health coverage to eligible persons.

41.     State that the allegations of paragraph 41 of the Complaint purport to state characterizations and/or conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of paragraph 41 of the Complaint, and refer to 42 U.S.C. § 1396r-8 for its contents.

42.     Deny the allegations of paragraph 42 of the Complaint, except admit that CMS is part of the Department of Health and Human Services, and that CMS administers the Medicaid Drug Rebate Program in partnership with state governments.

43.     Deny the allegations of paragraph 43 of the Complaint, except state that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the actions, knowledge or motivations of unidentified "lawmakers".

44.     State that the allegations of paragraph 44 and footnote 13 of the Complaint purport to state characterizations and/or conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of paragraph 44 and footnote 13 of the Complaint, and refer to 42 U.S.C. § 1396r-8 for its contents.

45.     State that the allegations of paragraph 45 of the Complaint purport to state characterizations and/or conclusions of law that do not require a response.  To the extent a

response is required, Defendants deny the allegations of paragraph 45 of the Complaint, and refer to 42 U.S.C. § 1396r-8 for its contents.

46.     State that the allegations of paragraph 46 and footnote 14 of the Complaint purport to state characterizations and/or conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of paragraph 46 and footnote 14 of the Complaint, except admit that the website address "http://www.fda.gov/cder/orange/default.htm" links to a U.S. Department of Health and Human Services website titled "Orange Book:  Approved Drug Products with Therapeutic Equivalence Evaluations", and refer to 42 U.S.C. § 1396r-8 and 42 C.F.R. § 447.500 *et seq.* for their contents.

47.     State that the allegations of paragraph 47 of the Complaint purport to state characterizations and/or conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of paragraph 47 of the Complaint, and refer to the October 1, 2007 version of 42 C.F.R. § 447.500 *et seq.* for its contents, except admit that biologics license applications, product license applications and establishment license applications apply to biological products, and further admit that an antibiotic drug application applies to antibiotic drugs.

48.     Deny the allegations of paragraph 48 of the Complaint, except admit that CMS issued "Release No. 80" dated January 5, 2010, which was titled "Medicaid Drug Rebate Program Bulletin For Participating Drug Manufacturers", and refer to that release for its contents, and further admit that CMS has issued at least two releases relating to the classification of drugs for purposes of the Medicaid Drug Rebate Program since 2007.

49.     Deny the allegations of paragraph 49 of the Complaint, except admit that CMS issued "Manufacturer Release No. 91" dated September 12, 2014, which was titled

"Medicaid Drug Rebate Program Notice For Participating Drug Manufacturers", and refer to that release for its contents.

50.     Deny the allegations of the first sentence of paragraph 50 of the Complaint, and deny footnote 18 of the Complaint, and state that the allegations of the second sentence of paragraph 50 of the Complaint purport to state characterizations and/or conclusions of law that do not require a response.  To the extent a response is required to the second sentence of paragraph 50 of the Complaint, Defendants deny that allegation, and further refer to the October 1, 2007 version of 42 C.F.R. § 447.500 *et seq*. and 42 U.S.C. § 1396r-8 for their contents.

51.     State that the allegations of paragraph 51 and footnotes 21 and 22 of the Complaint purport to state characterizations and/or conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of paragraph 51 and footnotes 21 and 22 of the Complaint, except admit that 81 Fed. Reg. 5170 was published in February 2016, and admit that 42 C.F.R. § 447.509 became effective April 1, 2016, and refer to that final rule and regulation for their contents.

52.     State that the allegations of paragraph 52 of the Complaint purport to state characterizations and/or conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of paragraph 52 of the Complaint.

53.     State that the allegations of paragraph 53 of the Complaint purport to state characterizations and/or conclusions of law that do not require a response.  To the extent a response is required, Defendants deny the allegations of paragraph 53 of the Complaint, and refer to 42 U.S.C. § 1396r-8 and 42 C.F.R. § 447.500 *et seq*. for their contents.

54.     State that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 54 of the Complaint, except admit that, based on publicly available information, U.S. Patent Number 4,031,893 was filed on May 14, 1976, that U.S. Patent Number 4,031,893 lists Sheldon Kaplan as one of four inventors, and that U.S. Patent Number 4,031,893 lists "Survival Technology, Inc. (Bethesda, MD)" as the assignee.  Defendants further admit that NDA N019430 was approved on December 22, 1987.

55.     Deny the allegations of paragraph 55 of the Complaint, except admit that, based on publicly available information, Andrew M. Slavitt sent a letter to Senator Ron Wyden dated October 5, 2016, and refer to that letter for its contents, and further refer to 42 U.S.C. § 1396r-8 for its contents.

56.     Admit the allegations of paragraph 56 and footnote 25 of the Complaint, except state that Pfizer, Inc. completed its acquisition of King Pharmaceuticals in 2011, and further state that prior to June 1998, Dey, Inc. was named Dey Laboratories, Inc., and further state that admissions of allegations concerning facts occurring prior to the acquisition described in paragraph 57 are based on publicly available information.

57.     Deny the allegations of paragraph 57 of the Complaint, except admit that on May 12, 2007, Mylan Laboratories Inc. entered into a Share Purchase Agreement with Merck Generics Holding GmbH, Merck S.A., and Merck Internationale Beteiligung GmbH (such entities, "Sellers"), and Merck KGaA, as Sellers' representative and guarantor, to acquire Merck's generic pharmaceutical business, and further admit that on October 2, 2007, as part of the acquisition of Merck's generic pharmaceutical business, Mylan Inc. also acquired the predecessor to Mylan Specialty, Dey Pharma L.P., which had the rights to market EpiPen

products, and further admit that Meridian Medical Technologies Inc. is the assignee to U.S.

Patents Nos. 7,449,012, 7,794,432, 8,048,035, 8,870,827 and 9,586,010.

58.     Deny the allegations of paragraph 58 of the Complaint.

59.     Deny the allegations of paragraph 59 of the Complaint, except admit that

Mylan N.V. and its subsidiaries conduct business in many jurisdictions around the world, and

admit that Mylan N.V. and Mylan Inc. have retained highly sophisticated and capable attorneys

to provide legal advice to ensure compliance with applicable laws, and admit that Mylan N.V.

currently has a market capitalization of several billion dollars.

60.     Deny the allegations of paragraph 60 and footnote 26 of the Complaint.

61.     State that the allegations of paragraph 61 of the Complaint purport to state

characterizations and/or conclusions of law that do not require a response.  To the extent a

response is required, Defendants deny the allegations of paragraph 61 of the Complaint, and

further refer to the October 1, 2007 version of 42 C.F.R. § 447.500 *et seq.* and 42 U.S.C.

§ 1396r-8 for their contents.

62.     Deny the allegations of paragraph 62 of the Complaint, except admit that

the FDA lists EpiPen Auto-Injectors as having the therapeutic equivalence evaluation code of

"BX", and further admit that on January 16, 2015, Mylan Specialty, L.P. filed a citizen petition

with the FDA, and refer to the petition for its contents, and further admit that, based on publicly

available information, on February 29, 2016, Teva Pharmaceuticals Industries Limited filed a

Form 6-K with the SEC disclosing that on February 23, 2016, "Teva received a complete

response letter on February 23, 2016 relating to its epinephrine ANDA in which the FDA

identified certain major deficiencies.  Teva is evaluating the CRL and intends to submit a

response.  Due to the major nature of the CRL, Teva expects that its epinephrine product will be significantly delayed and that any launch will not take place before 2017".

63.     Deny the allegations of paragraph 63 of the Complaint.

64.     Deny the allegations of paragraph 64 of the Complaint, except admit that Mylan N.V. (and for periods prior to February 27, 2015, Mylan Inc.) filed Forms 10-K with the SEC during the alleged Class Period, and refer to those documents for their contents.

65.     Deny the allegations of paragraph 65 of the Complaint, except admit that, based on publicly available information, the Department of Health and Human Services Office of the Inspector General released a report titled "Accuracy Of Drug Categorizations For Medicaid Rebates" dated July 2009, and refer to that document for its contents, and further admit that, based on publicly available information, Andrew M. Slavitt sent a letter to Senator Ron Wyden dated October 5, 2016, and refer to that letter for its contents, and further state that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning alleged communications between unidentified "CMS staff" and unidentified persons at the "HHS Inspector General".

66.     Deny the allegations of paragraph 66 of the Complaint, except admit that Meridian Medical Technologies, Inc. is the assignee for U.S. Patent Numbers 7,449,012, 7,794,432, 8,048,035 and 8,870,827, and further admit that U.S. Patent Numbers 7,449,012, 7,794,432, 8,048,035 and 8,870,827 each have a patent expiration date of September 11, 2025, and further admit that U.S. Patent Numbers 7,794,432, 8,048,035 and 8,870,827 were "continuations of U.S. patent application Ser. No. 11/095,664, filed Apr. 1, 2005, now U.S. Pat. No. *7,449,012*, which claims the benefit of U.S. Provisional Application No. 60/599,054, filed Aug. 6, 2004", and further admit that, based on publicly available information, Seeking Alpha

19

published an article titled "Mylan:  $5 Billion Potential Liability From EpiPen Underpayment Of CMS Rebates" dated February 6, 2017, which attributed the following quote to Lauren Kashtan: "As anyone who has used the product knows, the epinephrine auto-injector we have in the market today is substantially different than the one we acquired", and otherwise refer to that article for its contents.

67.     Deny the allegations of paragraph 67 of the Complaint.

68.     Deny the allegations of paragraph 68 of the Complaint, except admit that on August 28, 2009, King Pharmaceuticals, Inc. and Meridian Medical Technologies, Inc. filed a Complaint against Teva Parenteral Medicines, Inc. and Teva Pharmaceuticals USA, Inc. in case number 1:09-cv-00652-GMS (D. Del.), and refer to that complaint for its contents.

69.     Deny the allegations of paragraph 69 of the Complaint, except admit that on August 28, 2009, King Pharmaceuticals, Inc. and Meridian Medical Technologies, Inc. filed a Complaint against Teva Parenteral Medicines, Inc. and Teva Pharmaceuticals USA, Inc. in case number 1:09-cv-00652-GMS (D. Del.), and refer to that complaint for its contents.

70.     Deny the allegations of paragraph 70 of the Complaint, except admit that on July 14, 2010, King Pharmaceuticals, Inc. and Meridian Medical Technologies, Inc. filed a Complaint against Sandoz Inc. in case number 3:10-cv-03568-MLC-LHG (D. N.J.), and refer to that complaint for its contents.

71.     Deny the allegations of paragraph 71 of the Complaint, except admit that on January 19, 2011, King Pharmaceuticals, Inc. and Meridian Medical Technologies, Inc. filed a Complaint against Intelliject, Inc. in case number 1:11-cv-00065-GMS (D. Del.), and refer to that complaint for its contents.

72.     Deny the allegations of paragraph 72 of the Complaint, except admit that in November 2014, Mylan Inc. received a subpoena from the DOJ that sought information concerning the classification of EpiPen products for purposes of the Medicaid Drug Rebate Program, and further admit that on November 9, 2016, Mylan N.V. filed a Form 10-Q with the SEC, and refer to that document for its contents.

73.     Deny the allegations of paragraph 73 of the Complaint, except admit that Mylan Specialty markets and sells EpiPen Auto-Injectors, which dispense measured doses of epinephrine, which is considered the first line treatment for anaphylaxis, and further admit that anaphylaxis is a severe allergic reaction that is rapid in onset and may cause death, either through swelling that shuts off airways or through a significant drop in blood pressure, and further admit that, based on publicly available information, Bloomberg Businessweek published an article titled "How EpiPen Became Mylan's Must-Have Drug, With 400% Higher Price" dated September 23, 2015, which attributed the following quote to Heather Bresch:  "You would not see the traditional market loss because of just the brand equity with EpiPen", and otherwise refer to that article for its contents.

74.     Deny the allegations of paragraph 74 of the Complaint, except admit that on or around December 16, 2016, Mylan launched the first authorized generic for EpiPen Auto-Injectors, and further admit that Mylan lists the authorized generic product at a wholesale acquisition cost of $300 per two-pack, which is more than 50% lower than the wholesale acquisition cost of the EpiPen Auto-Injector.

75.     Deny the allegations of paragraph 75 of the Complaint.

76.     Deny the allegations of paragraph 76 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order

Case 1:16-cv-07926-JPO   Document 75   Filed 04/25/18   Page 22 of 102

entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "statements about the complexity, ambiguity, and subjectivity of the rebate calculation [which] are statements of opinion", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 76 of the Complaint related thereto. [Dkt. #69.]

77.     Deny the allegations of paragraph 77 of the Complaint, except admit that Plaintiffs purport to describe what they allege.

78.     Deny the allegations of paragraph 78 of the Complaint.

79.     Deny the allegations of paragraph 79 of the Complaint, except admit that Mylan N.V. (and for periods prior to February 27, 2015, Mylan Inc.) periodically filed annual and quarterly forms with the SEC, and refer to those documents for their contents.

80.     Deny the allegations of paragraph 80 of the Complaint.

81.     Deny the allegations of paragraph 81 of the Complaint, except admit that Mylan N.V. (and for periods prior to February 27, 2015, Mylan Inc.) periodically filed annual and quarterly forms with the SEC, and refer to those documents for their contents.

82.     Deny the allegations of paragraph 82 of the Complaint, except admit that Plaintiffs purport to describe what they allege.

83.     Deny the allegations of paragraph 83 of the Complaint.

84.     Deny the allegations of paragraph 84 of the Complaint, except admit that, based on publicly available information, Senator Richard Blumenthal, Senator Chuck Grassley and Senator Amy Klobuchar sent a letter to Attorney General Loretta E. Lynch dated September 28, 2016, and refer to that letter for its contents.

85.     Deny the allegations of paragraph 85 of the Complaint, except admit that Mylan N.V. issued a press release titled "Mylan Agrees to Settlement on Medicaid Rebate Classification for EpiPen® Auto-Injector" dated October 7, 2016, which stated that "[t]he terms of the settlement do not provide for any finding of wrongdoing on the part of Mylan Inc. or any of its affiliated entities or personnel", and refer to that document for the remainder of its contents.

86.     Deny the allegations of paragraph 86 of the Complaint, except admit that Mylan reclassified EpiPen Auto-Injectors for purposes of the Medicaid Drug Rebate Program and pays the rebate applicable to innovator products effective as of April 1, 2017, and further state that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the contents of unspecified "numerous press reports".

87.     Deny the allegations of paragraph 87 and footnote 30 of the Complaint, except admit that, based on publicly available information, Senator Elizabeth Warren sent a letter to Attorney General Loretta E. Lynch dated October 21, 2016, and further admit that, based on publicly available information, Senator Richard Blumenthal sent a letter to Attorney General Loretta E. Lynch dated October 21, 2016, and refer to those letters for their contents, and further state that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning statements attributed to "Evercore ISI senior analyst Umer Raffat" in footnote 30.

88.     Deny the allegations of paragraph 88 of the Complaint.

89.     Deny the allegations of paragraph 89 of the Complaint, except refer to the Form 8-K filed by Mylan N.V. with the SEC on October 7, 2016, which disclosed that: "Also on October 7, 2016, Mylan received a document request from the Division of Enforcement at the

Securities and Exchange Commission ("SEC") seeking communications with the CMS and documents concerning Mylan products sold and related to the Medicaid Drug Rebate Program, and any related complaints.  Mylan intends to fully cooperate with the SEC's investigation."

90.    Deny the allegations of paragraph 90 of the Complaint, and refer to the Form 8-K filed by Mylan N.V. with the SEC on October 7, 2016, which disclosed that:  "Also on October 7, 2016, Mylan received a document request from the Division of Enforcement at the Securities and Exchange Commission ("SEC") seeking communications with the CMS and documents concerning Mylan products sold and related to the Medicaid Drug Rebate Program, and any related complaints.  Mylan intends to fully cooperate with the SEC's investigation."

91.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 91 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 91 of the Complaint, except admit that Mylan has offered the EpiPen4Schools® program for qualifying schools, and refer to the specific documents signed by participating schools for their contents.

92.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 92 of the

24

Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 92 of the Complaint.

93.   State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 93 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 93 of the Complaint, except admit that on August 28, 2009, King Pharmaceuticals, Inc. and Meridian Medical Technologies, Inc. filed a Complaint against Teva Parenteral Medicines, Inc. and Teva Pharmaceuticals USA, Inc. in case number 1:09-cv-00652-GMS (D. Del.), and refer to that complaint for its contents.

94.   State that plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 94 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 94 of the Complaint, except admit that on August 28, 2009, King Pharmaceuticals, Inc. and Meridian Medical Technologies, Inc. filed a Complaint against Teva Parenteral Medicines, Inc. and Teva Pharmaceuticals USA, Inc. in case number 1:09-cv-00652-GMS (D. Del.), and refer to the record in that proceeding for its contents.

95.     State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 95 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 95 of the Complaint, except state that to the extent paragraph 95 states a legal conclusion, no response is required, and further admit that Mylan Inc. released a press release titled "Mylan and Pfizer Announce Epinephrine Auto-injector Settlement Agreement with Teva" dated April 26, 2012, and refer to that press release for its contents.

96.     State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 96 and footnote 31 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 96 and footnote 31 of the Complaint, except admit that neither Mylan N.V. nor Mylan Inc. were parties to the lawsuit in case number 1:09-cv-00652-GMS (D. Del.), and further admit that on January 16, 2015, Mylan Specialty, L.P. filed a citizen petition with the FDA, and refer to the petition for its contents.

97.     State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen",

and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 97 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 97 of the Complaint, except admit that, based on publicly available information, the Cornell Law Review Online published an article titled "The Untold EpiPen Story:  How Mylan Hiked Prices by Blocking Rivals", and refer to that article for its contents.

98.     State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 98 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 98 of the Complaint, except admit that the FTC was aware of the terms of the referenced settlement agreement, and further refer to Medicare Prescription Drug, Improvement, and Modernization Act of 2003 for its contents.

99.     State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 99 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 99 of the Complaint, except admit that, based on publicly available information, the FTC published a guide titled "Pay-for-Delay:  How Drug Company Pay-Offs Cost Consumers

Billions", dated January 2010, and further admit that, based on publicly available information,

Bloomberg published an article titled "Mylan Faces U.S. Antitrust Investigation on EpiPen"

dated January 30, 2017, and refer to that article for its contents.

      100.    State that Plaintiffs' claims against Defendants were dismissed by the

Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims

relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen",

and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving

claims", and thus no response is required with respect to the allegations of paragraph 100 of the

Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of

paragraph 100 of the Complaint.

      101.    State that Plaintiffs' claims against Defendants were dismissed by the

Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims

relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen",

and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving

claims", and thus no response is required with respect to the allegations of paragraph 101 of the

Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of

paragraph 101 of the Complaint, except admit that Mylan has offered the EpiPen4Schools®

program for qualifying schools, and refer to the specific documents signed by participating

schools for their contents, and further admit that, based on publicly available information, Stat

News published an article titled "Mylan may have violated antitrust law in its EpiPen sales to

schools, legal experts say" dated August 25, 2016, and refer to that article for its contents.

      102.    State that Plaintiffs' claims against Defendants were dismissed by the

Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims

relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 102 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 102 of the Complaint, and further state that the allegations of paragraph 102 of the Complaint contain characterizations and/or conclusions of law that do not require a response.

103.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 103 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 103 of the Complaint.

104.    Deny the allegations of paragraph 104 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", or allegations related to an alleged duty to "disclose *future risk*", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 104 of the Complaint related thereto.  [Dkt. #69.]

105.    Deny the allegations of paragraph 105 of the Complaint, and further state that Defendants are without knowledge or information to form a belief as to the truth of the

29

allegations concerning prices of unspecified generic pharmaceutical drugs, and further state that

Defendants are without knowledge or information to form a belief as to the truth of the

allegations concerning unspecified "data from CMS", except admit that, based on publicly

available information, Fideres Partners LLP released a study titled "US Generics Price

Increases" dated December 22, 2016, and admit that the National Community Pharmacists

Association released a survey dated January 2014, and refer to that study and survey for their

contents.

106.    Deny the allegations of paragraph 106 of the Complaint.

107.    Deny the allegations of paragraph 107 of the Complaint, except admit that

Mylan Inc. held an earnings call on October 25, 2012, and refer to the transcript of that earnings

call for its contents.

108.    Deny the allegations of paragraph 108 of the Complaint, except admit that

Mylan Inc. held an earnings call on May 2, 2013, and refer to the transcript of that earnings call

for its contents.

109.    Deny the allegations of paragraph 109 of the Complaint.

110.    Deny the allegations of paragraph 110 of the Complaint, and further state

that Defendants are without knowledge or information about the Confidential Witness, except

state that, because Kenneth S. Parks joined Mylan as CFO in June 2016, and the Confidential

Witness allegedly left "Mylan in October 2015", the Confidential Witness could not have

"confirmed that Defendant[] . . . Parks . . . knew of and approved all material drug pricing

decisions made by the Company".

111.    Deny the allegations of paragraph 111 of the Complaint, and further state

that Defendants are without knowledge or information about the Confidential Witness, and

further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion

and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations

related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and

Order instructed Defendants to "file an answer to the surviving claims", and thus no response is

required with respect to the allegations of paragraph 111 of the Complaint related thereto.  [Dkt.

#69.]

113. 112.    Deny the allegations of paragraph 112 of the Complaint, and further state

that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order

entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to

an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order

instructed Defendants to "file an answer to the surviving claims", and thus no response is

required with respect to the allegations of paragraph 112 of the Complaint related thereto.  [Dkt.

#69.]

113.    State that Plaintiffs' claims against Defendants were dismissed by the

Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims

relied on allegations related to an alleged "Doxy DR market allocation agreement", and the

Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims",

and thus no response is required with respect to the allegations of paragraph 113 and footnote 38

of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the

allegations of paragraph 113 of the Complaint, except admit that the attorneys general of certain

states filed a complaint in the U.S. District Court for the District of Connecticut dated

December 14, 2016, in a case captioned *Connecticut v. Aurobindo Pharma USA, Inc.*, No. 3:16-

cv-02056, against several generic pharmaceutical drug manufacturers, including Mylan Pharmaceuticals, Inc., and refer to that complaint for its contents.

114.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 114 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 114 of the Complaint, except admit the first sentence of paragraph 114 of the Complaint, and state Defendants are without knowledge or information sufficient to form a belief as to the allegations of the second sentence of paragraph 114 of the Complaint.

115.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 115 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants state they are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 115 of the Complaint.

116.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims",

and thus no response is required with respect to the allegations of paragraph 116 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of the first sentence of paragraph 116 of the Complaint, and state they are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 116 of the Complaint.

117.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 117 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 117 of the Complaint.

118.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 118 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 118 of the Complaint.

119.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims",

and thus no response is required with respect to the allegations of paragraph 119 of the

Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of

paragraph 119 of the Complaint, state they are without knowledge or information sufficient to

form a belief as to the contents of an alleged email between Jason Malek and an unspecified

employee at Mylan, except admit that, based on publicly available information, Heritage

Pharmaceuticals, Inc. announced the immediate availability of doxycycline hyclate delayed

release tablets on July 2, 2013.

        120.    State that Plaintiffs' claims against Defendants were dismissed by the

Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims

relied on allegations related to an alleged "Doxy DR market allocation agreement", and the

Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims",

and thus no response is required with respect to the allegations of paragraph 120 of the

Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants state they are without

knowledge or information sufficient to form a belief as to the truth of the allegations of

paragraph 120 of the Complaint, except admit that, based on publicly available information,

Mayne Pharma Inc.'s application to market doxycycline hyclate delayed release was approved

on July 8, 2013.

        121.    State that Plaintiffs' claims against Defendants were dismissed by the

Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims

relied on allegations related to an alleged "Doxy DR market allocation agreement", and the

Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims",

and thus no response is required with respect to the allegations of paragraph 121 of the

Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants state they are without

knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 121 of the Complaint.

122.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 122 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants state they are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 122 of the Complaint.

123.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 123 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants state they are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 123 of the Complaint.

124.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 124 of the

Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants state they are without

knowledge or information sufficient to form a belief as to the truth of the allegations of

paragraph 124 of the Complaint.

125.    State that Plaintiffs' claims against Defendants were dismissed by the

Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims

relied on allegations related to an alleged "Doxy DR market allocation agreement", and the

Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims",

and thus no response is required with respect to the allegations of paragraph 125 of the

Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the first sentence

of paragraph 125 of the Complaint, and state they are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations of paragraph 125 of the

Complaint.

126.    State that Plaintiffs' claims against Defendants were dismissed by the

Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims

relied on allegations related to an alleged "Doxy DR market allocation agreement", and the

Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims",

and thus no response is required with respect to the allegations of paragraph 126 of the

Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the first sentence

of paragraph 126 of the Complaint, and state they are without knowledge or information

sufficient to form a belief as to the truth of the second sentence of paragraph 126 of the

Complaint.

127.    Deny the allegations of paragraph 127 of the Complaint.

128.    Deny the allegations of paragraph 128 of the Complaint.

36

129.    Deny the allegations of paragraph 129 and footnote 39 of the Complaint, except state that Defendants are without knowledge or information sufficient to form a belief as to whether Figures A-E are based on data obtained from Symphony Health Solutions.

130.    Deny the allegations of paragraph 130 of the Complaint.

131.    Deny the allegations of paragraph 131 of the Complaint.

132.    Deny the allegations of paragraph 132 and footnote 40 of the Complaint, except admit that, based on publicly available information on the data.medicaid.gov website, CMS provides National Average Drug Acquisition Cost ("NADAC") data, and refer to that website for its contents, and further admit that CMS published a document titled "Methodology for Calculating the National Average Drug Acquisition Cost ("NADAC") for Medicaid Covered Outpatient Drugs", dated November 2013, and refer to that document for its contents.

133.    Deny the allegations of paragraph 133 of the Complaint, except admit that, based on publicly available information on the data.medicaid.gov website, CMS provides NADAC data, and refer to that website for its contents.

134.    Deny the allegations of paragraph 134 of the Complaint.

135.    Deny the allegations of paragraph 135 of the Complaint.

136.    Deny the allegations of paragraph 136 of the Complaint.

137.    Deny the allegations of paragraph 137 of the Complaint.

138.    Deny the allegations of paragraph 138 of the Complaint, except admit that, based on publicly available information on the data.medicaid.gov website, CMS provides NADAC data, and refer to that website for its contents.

139.    Deny the allegations of paragraph 139 of the Complaint, except admit that, based on publicly available information on the data.medicaid.gov website, CMS provides NADAC data, and refer to that website for its contents.

140.    Deny the allegations of paragraph 140 of the Complaint.

141.    Deny the allegations of paragraph 141 of the Complaint.

142.    Deny the allegations of paragraph 142 of the Complaint.

143.    Deny the allegations of paragraph 143 of the Complaint.

144.    Deny the allegations of paragraph 144 of the Complaint, except admit that, based on publicly available information on the data.medicaid.gov website, CMS provides NADAC data, and refer to that website for its contents.

145.    Deny the allegations of paragraph 145 of the Complaint, except admit that, based on publicly available information on the data.medicaid.gov website, CMS provides NADAC data, and refer to that website for its contents.

146.    Deny the allegations of paragraph 146 of the Complaint.

147.    Deny the allegations of paragraph 147 of the Complaint.

148.    Deny the allegations of paragraph 148 of the Complaint.

149.    Deny the allegations of paragraph 149 of the Complaint.

150.    Deny the allegations of paragraph 150 of the Complaint, except admit that, based on publicly available information on the data.medicaid.gov website, CMS provides NADAC data, and refer to that website for its contents.

151.    Deny the allegations of paragraph 151 of the Complaint, except admit that, based on publicly available information on the data.medicaid.gov website, CMS provides NADAC data, and refer to that website for its contents.

152.    Deny the allegations of paragraph 152 of the Complaint.

153.    Deny the allegations of paragraph 153 of the Complaint.

154.    Deny the allegations of paragraph 154 of the Complaint.

155.    Deny the allegations of paragraph 155 of the Complaint.

156.    Deny the allegations of paragraph 156 of the Complaint, except admit that, based on publicly available information on the data.medicaid.gov website, CMS provides NADAC data, and refer to that website for its contents.

157.    Deny the allegations of paragraph 157 of the Complaint, except admit that, based on publicly available information on the data.medicaid.gov website, CMS provides NADAC data, and refer to that website for its contents.

158.    Deny the allegations of paragraph 158 of the Complaint, except refer to the Food and Drug Administration Safety and Innovation Act and implementing regulations for their contents, and further state that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of the second, fourth and fifth sentences of paragraph 158 of the Complaint.

159.    Deny the allegations of paragraph 159 of the Complaint.

160.    Deny the allegations of paragraph 160 of the Complaint, except admit that, based on publicly available information, the National Community Pharmacists Association released a news release titled "Generic Drug Price Spikes Demand Congressional Hearing, Pharmacists Say" dated January 8, 2014, and refer to that document for its contents, and further

admit that, based on publicly available information, generic drugs account for at least 80 percent of prescriptions in the United States.

161.    Deny the allegations of paragraph 161 of the Complaint, except admit that Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

162.    Deny the allegations of paragraph 162 of the Complaint, except admit that Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

163.    Deny the allegations of paragraph 163 of the Complaint, except admit that Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

164.    Deny the allegations of paragraph 164 of the Complaint, except admit that the Herfindahl-Hirschman Index is one measure of market concentration, and further state Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the views of antitrust enforcement agencies.

165.    Deny the allegations of paragraph 165 of the Complaint, except admit that Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

166.    Deny the allegations of paragraph 166 of the Complaint, except admit that Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

167.    Deny the allegations of paragraph 167 of the Complaint, except admit that Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

168.    Deny the allegations of paragraph 168 of the Complaint, except admit that Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

169.    Deny the allegations of paragraph 169 of the Complaint, except admit that Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

170.    Deny the allegations of paragraph 170 of the Complaint, except state that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether such drugs "are considered medical necessities" that must be purchased "at whatever cost", where albuterol sulfate, benazepril, clomipramine, divalproex and propranolol are medications that require a prescription after consultation with a healthcare professional, and whether such medications are "critical" to the health of unidentified "patients" will vary on a case-by-case basis, except admit that in the second sentence of paragraph 170, Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

171.    Deny the allegations of paragraph 171 of the Complaint, and further state that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether such drugs "are necessary treatment" for unspecified "millions of patients", where albuterol sulfate, benazepril, clomipramine, divalproex and propranolol are medications that require a prescription after consultation with a healthcare

professional, and whether such medications are "necessary treatment" will vary on a case-by-case basis, except admit that in the second sentence of paragraph 171, Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

172.     State that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 172 of the Complaint.

173.     Deny the allegations of paragraph 173 of the Complaint, except admit that Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

174.     Deny the allegations of paragraph 174 of the Complaint, except admit that the FDA lists the forms of albuterol sulfate, benazepril, clomipramine, divalproex and propranolol marketed by Mylan entities as having "A" therapeutic equivalence evaluation codes, and further admit that in paragraph 174, Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

175.     Deny the allegations of paragraph 175 of the Complaint.

176.     Deny the allegations of paragraph 176 of the Complaint, except admit that Mylan N.V. is a member of the Generic Pharmaceutical Association (now the "Associations for Accessible Medicines"), and admit that at the website address https://www.gphaonline.org/events/past-events/, the Generic Pharmaceutical Association provides information concerning past events, and refer to that website for its contents.

177.     Deny the allegations of paragraph 177 of the Complaint, except admit that on March 1, 2017, various state attorneys general filed an amended complaint in the U.S. District Court for the District of Connecticut, in a case captioned *Connecticut v. Aurobindo Pharma*

*USA, Inc.*, No. 3:16-cv-02056, against several generic pharmaceutical drug manufacturers, including Mylan Pharmaceuticals, Inc., and refer to that complaint for its contents.

178.    Deny the allegations of paragraph 178 of the Complaint, except admit that on March 1, 2017, various state attorneys general filed an amended complaint in the U.S. District Court for the District of Connecticut, in a case captioned *Connecticut v. Aurobindo Pharma USA, Inc.*, No. 3:16-cv-02056, against several generic pharmaceutical drug manufacturers, including Mylan Pharmaceuticals, Inc., and refer to that complaint for its contents.

179.    Deny the allegations of paragraph 179 of the Complaint, except admit that on March 1, 2017, various state attorneys general filed an amended complaint in the U.S. District Court for the District of Connecticut, in a case captioned *Connecticut v. Aurobindo Pharma USA, Inc.*, No. 3:16-cv-02056, against several generic pharmaceutical drug manufacturers, including Mylan Pharmaceuticals, Inc., and refer to that complaint for its contents.

180.    Deny the allegations of paragraph 180 of the Complaint, except admit that Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

181.    Deny the allegations of paragraph 181 of the Complaint, except admit that Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

182.    Deny the allegations of paragraph 182 of the Complaint, except admit that Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

183.    Deny the allegations of paragraph 183 of the Complaint, except admit that Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

184.    Deny the allegations of paragraph 184 of the Complaint, except admit that Plaintiffs purport to describe economic theory which, if relevant to the claims in this case, may be the subject of future expert analysis and testimony.

185.    Deny the allegations of paragraph 185 of the Complaint, except admit that Mylan N.V. (and for periods prior to February 27, 2015, Mylan Inc.) filed various reports with the SEC and made certain public statements, and refer to those documents and statements for their contents, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 185 of the Complaint related thereto.  [Dkt. #69.]

186.    Deny the allegations of paragraph 186 of the Complaint, except admit that Mylan N.V. (and for periods prior to February 27, 2015, Mylan Inc.) filed various reports with the SEC and made certain public statements, and refer to those documents and statements for their contents, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving

claims", and thus no response is required with respect to the allegations of paragraph 186 of the

Complaint related thereto.  [Dkt. #69.]

187.    Deny the allegations of paragraph 187 of the Complaint, except admit that

Plaintiffs purport to describe what they allege.

188.    Deny the allegations of paragraph 188 of the Complaint.

189.    Deny the allegations of paragraph 189 of the Complaint, except admit that,

based on publicly available information, B. Douglas Hoey sent a letter to members of Congress

dated October 21, 2016, and refer to that letter for its contents.

190.    State that Defendants are without knowledge or information sufficient to

form a belief regarding the truth of the allegations of paragraph 190 of the Complaint, except

admit that according to media reports in July 2014, the Connecticut Attorney General was

investigating other companies for potential price fixing of one generic drug.

191.    State that Defendants are without knowledge or information sufficient to

form a belief regarding the truth of the allegations of paragraph 191 of the Complaint, except

admit that on October 2, 2014, Representative Elijah E. Cummings and Senator Bernie Sanders

sent a letter to Heather Bresch, and refer to that letter for its contents.

192.    Deny the allegations of paragraph 192 of the Complaint, except admit that,

based on publicly available information, a hearing titled "Why Are Some Generic Drugs

Skyrocketing In Price?" was held on November 20, 2014, and refer to the transcript of that

hearing for its contents.

193.    State that Defendants are without knowledge or information sufficient to

form a belief regarding the truth of the allegations of paragraph 193 of the Complaint, except

admit that on December 3, 2015, a subsidiary of Mylan N.V. received a subpoena from the

Antitrust Division of the DOJ seeking information relating to the marketing, pricing, and sale of generic Doxycycline products and any communications with competitors about such products, and on September 8, 2016, a subsidiary of Mylan N.V., as well as certain employees and a member of senior management, received subpoenas from the DOJ seeking additional information relating to the marketing, pricing and sale of generic Cidofovir, Glipizide-metformin, Propranolol and Verapamil products and any communications with competitors about such products, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 193 of the Complaint related thereto. [Dkt. #69.]

194.    Deny the allegations of paragraph 194 of the Complaint, except admit that, based on publicly available information, Representative Elijah E. Cummings and Senator Bernie Sanders sent a letter to the Office of the Inspector General of HHS dated February 24, 2015, and refer to that letter for its contents, and that the Office of the Inspector General of HHS sent letters to Representative Elijah E. Cummings and Senator Bernie Sanders dated April 13, 2015, and refer to those letters for their contents.

195.    Deny the allegations of paragraph 195 of the Complaint, and further state that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the contents of unspecified "[r]ecent news reports", except admit that on December 3, 2015, a subsidiary of Mylan N.V. received a subpoena from the Antitrust Division of the DOJ seeking information relating to the marketing, pricing, and sale of generic

Doxycycline products and any communications with competitors about such products, and further admit that on September 8, 2016, a subsidiary of Mylan N.V., as well as certain employees and a member of senior management, received subpoenas from the DOJ seeking additional information relating to the marketing, pricing and sale of generic Cidofovir, Glipizide-metformin, Propranolol and Verapamil products and any communications with competitors about such products, and related search warrants also were executed, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 195 of the Complaint related thereto.  [Dkt. #69.]

196.    Deny the allegations of paragraph 196 of the Complaint, except admit that, based on publicly available information, FiercePharma published an article titled "DOJ's price-fixing investigation could lead to sizable liabilities, analyst says" dated November 10, 2016, and refer to that article for its contents, and state that Mylan is fully cooperating with the DOJ investigation in connection with the December 3, 2015 subpoena and the September 8, 2016 subpoena.

197.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 197 of the

Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 197 of the Complaint, except admit that on December 21, 2015, the Company received a subpoena from the Connecticut Office of the Attorney General seeking information related to the marketing, pricing, and sale of certain generic products, including Doxycycline.

198.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 198 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 198 of the Complaint, except admit that the attorneys general of certain states filed a complaint in the U.S. District Court for the District of Connecticut dated December 14, 2016, in a case captioned *Connecticut v. Aurobindo Pharma USA, Inc.*, No. 3:16-cv-02056, against several generic pharmaceutical drug manufacturers, including Mylan Pharmaceuticals, Inc., and refer to that complaint for its contents.

199.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 199 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 199 of the Complaint, except admit that, based on publicly available information, on December 12, 2016, an information was filed in a case captioned *United States v. Glazer*, No.

2:16-cr-00506, and refer to that document for its contents, and further admit that, based on

publicly available information, on December 13, 2016, an information was filed in a case

captioned *United States v. Malek*, No. 2:16-cr-00508, and refer to that document for its contents.

   200. State that Plaintiffs' claims against Defendants were dismissed by the

Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims

relied on allegations related to an alleged "Doxy DR market allocation agreement", and the

Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims",

and thus no response is required with respect to the allegations of paragraph 200 of the

Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of

paragraph 200 of the Complaint, except admit that, based on publicly available information, on

January 9, 2017, a plea hearing was held in a case captioned *United States v. Glazer*, No. 2:16-

cr-00506, and refer to the transcript of that hearing for its contents, and further admit that based

on publicly available information, on January 9, 2017, a plea hearing was held in a case

captioned *United States v. Malek*, No. 2:16-cr-00508, and refer to the transcript of that hearing

for its contents.

   201. State that Plaintiffs' claims against Defendants were dismissed by the

Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims

relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms

10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer

to the surviving claims", and thus no response is required with respect to the allegations of

paragraph 201 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants

deny the allegations of paragraph 201 of the Complaint, except admit that on February 21, 2012, Mylan Inc. filed a Form 10-K with the SEC, and refer to that document for its contents.

202.     State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", or allegations related to an alleged duty to "disclose *future risk*", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 202 of the Complaint. [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 202 of the Complaint.

203.     Deny the allegations of paragraph 203 and footnote 45 of the Complaint, except admit that on February 21, 2012, Mylan Inc. filed a Form 10-K with the SEC, and further admit that Mylan N.V. (and, for periods prior to February 27, 2015, Mylan Inc.) periodically filed Forms 10-Q with the SEC, and refer to those documents for their contents.

204.     Deny the allegations of paragraph 204 of the Complaint.

205.     Deny the allegations of paragraph 205 of the Complaint, except admit that on February 21, 2012, Mylan Inc. filed a Form 10-K with the SEC, and refer to that document for its contents.

206.     Deny the allegations of paragraph 206 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "statements about the complexity, ambiguity, and subjectivity of the rebate calculation [which] are statements of opinion", and the Court in its Opinion and Order instructed Defendants to "file

an answer to the surviving claims", and thus no response is required with respect to the

allegations in clauses (2) and (4) of paragraph 206 of the Complaint.  [Dkt. #69.]  Defendants

further state that the Court, in its Opinion and Order entered on the docket on March 28, 2018,

ruled that Plaintiffs' allegations in clauses (1) and (3) of paragraph 206 "survive only to the

extent that Mylan misrepresented its knowledge about the EpiPen's misclassification" [Dkt.

#69], and Defendants deny that Mylan misrepresented its knowledge about the classification of

EpiPen products.

       207.    Deny the allegations of paragraph 207 of the Complaint, except admit that

on April 26, 2012, Mylan Inc. filed a Form 8-K attaching a press release with the SEC, and refer

to that document for its contents.

       208.    State that Plaintiffs' claims against Defendants were dismissed by the

Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims

relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms

10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer

to the surviving claims", and thus no response is required with respect to the allegations of

paragraph 208 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants

deny the allegations of paragraph 208 of the Complaint, except admit that on April 27, 2012,

Mylan Inc. filed a Form 10-Q with the SEC, and refer to that document for its contents.

       209.    Deny the allegations of paragraph 209 of the Complaint, and further state

that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order

entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to

"quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", or allegations

related to an alleged duty to "disclose *future risk*", and the Court in its Opinion and Order

instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 209 of the Complaint related thereto.  [Dkt. #69.]

210.    Deny the allegations of paragraph 210 of the Complaint, except admit that on April 27, 2012, Mylan Inc. filed a Form 10-Q with the SEC, and refer to that document for its contents.

211.    Deny the allegations of paragraph 211 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "statements about the complexity, ambiguity, and subjectivity of the rebate calculation [which] are statements of opinion", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations in clauses (2) and (4) of paragraph 211 of the Complaint.  [Dkt. #69.]  Defendants further state that the Court, in its Opinion and Order entered on the docket on March 28, 2018, ruled that Plaintiffs' allegations in clauses (1) and (3) of paragraph 211 "survive only to the extent that Mylan misrepresented its knowledge about the EpiPen's misclassification", and Defendants deny that Mylan misrepresented its knowledge about the classification of EpiPen products.

212.    Deny the allegations of paragraph 212 of the Complaint, except admit that on July 26, 2012, Mylan Inc. filed a Form 8-K attaching a press release with the SEC, and refer to that document for its contents.

213.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims

relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 213 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 213 of the Complaint, except admit that on July 26, 2012, Mylan Inc. filed a Form 10-Q with the SEC, and refer to that document for its contents.

214.    Deny the allegations of paragraph 214 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", or allegations related to an alleged duty to "disclose *future risk*", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 214 of the Complaint related thereto.  [Dkt. #69.]

215.    Deny the allegations of paragraph 215 of the Complaint, except admit that on July 26, 2012, Mylan Inc. filed a Form 10-Q with the SEC, and refer to that document for its contents.

216.    Deny the allegations of paragraph 216 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "statements about the complexity, ambiguity, and subjectivity of the rebate calculation [which] are statements of opinion", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the

allegations in clauses (2) and (4) of paragraph 216 of the Complaint.  [Dkt. #69.]  Defendants

further state that the Court, in its Opinion and Order entered on the docket on March 28, 2018,

ruled that Plaintiffs' allegations in clauses (1) and (3) of paragraph 216 of the Complaint

"survive only to the extent that Mylan misrepresented its knowledge about the EpiPen's

misclassification" [Dkt. #69], and Defendants deny that Mylan misrepresented its knowledge

about the classification of EpiPen products.

      217.    Deny the allegations of paragraph 217 of the Complaint, except admit that

on October 25, 2012, Mylan Inc. filed a Form 8-K attaching a press release with the SEC, and

refer to that document for its contents.

      218.    State that Plaintiffs' claims against Defendants were dismissed by the

Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims

relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms

10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer

to the surviving claims", and thus no response is required with respect to the allegations of

paragraph 218 of the Complaint.  [Dkt. #69.]  Defendants further state that the allegations of

paragraph 218 are incoherent in that a Form 10-Q filed on October 25, 2012, cannot be

"reiterating the financial and operating results previously announced" in a Form 8-K that was not

filed until February 27, 2013.  To the extent a response is required, Defendants deny the

allegations of paragraph 218 of the Complaint, except admit that on October 25, 2012, Mylan

Inc. filed a Form 10-Q with the SEC, and refer to that document for its contents.

      219.    Deny the allegations of paragraph 219 of the Complaint, and further state

that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order

entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to

"quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", or allegations related to an alleged duty to "disclose *future risk*", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 219 of the Complaint related thereto.  [Dkt. #69.]

220.    Deny the allegations of paragraph 220 of the Complaint, except admit that on February 27, 2013, Mylan Inc. filed a Form 8-K attaching a press release with the SEC, and refer to that document for its contents.

221.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to these allegations of paragraph 221 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 221 of the Complaint, except admit that on February 28, 2013, Mylan Inc. filed a Form 10-K with the SEC, and refer to that document for its contents.

222.    Deny the allegations of paragraph 222 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", or allegations related to an alleged duty to "disclose *future risk*", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 222 of the Complaint related thereto.  [Dkt.

#69.]

223.    Deny the allegations of paragraph 223 of the Complaint, except admit that on February 28, 2013, Mylan Inc. filed a Form 10-K with the SEC, and refer to that document for its contents.

224.    Deny the allegations of paragraph 224 of the Complaint.

225.    Deny the allegations of paragraph 225 of the Complaint, except admit that on February 28, 2013, Mylan Inc. filed a Form 10-K with the SEC, and refer to that document for its contents.

226.    Deny the allegations of paragraph 226 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 226 of the Complaint related thereto.  [Dkt. #69.]

227.    Deny the allegations of paragraph 227 of the Complaint, except admit that on February 28, 2013, Mylan Inc. filed a Form 10-K with the SEC, and refer to that document for its contents.

228.    Deny the allegations of paragraph 228 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "statements about the complexity, ambiguity, and subjectivity of the rebate calculation [which]

are statements of opinion", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations in clauses (2) and (4) of paragraph 228 of the Complaint.  [Dkt. #69.]  Defendants further state that the Court, in its Opinion and Order entered on the docket on March 28, 2018, ruled that Plaintiffs' allegations in clauses (1) and (3) of paragraph 228 of the Complaint "survive only to the extent that Mylan misrepresented its knowledge about the EpiPen's misclassification" [Dkt. #69], and Defendants deny that Mylan misrepresented its knowledge about the classification of EpiPen products.

229.    Deny the allegations of paragraph 229 of the Complaint, except admit that on May 2, 2013, Mylan Inc. filed a Form 8-K attaching a press release with the SEC, and refer to that document for its contents.

230.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 230 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 230 of the Complaint, except admit that on May 2, 2013, Mylan Inc. filed a Form 10-Q with the SEC, and refer to that document for its contents.

231.    Deny the allegations of paragraph 231 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", or allegations

related to an alleged duty to "disclose *future risk*", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 231 of the Complaint related thereto.  [Dkt. #69.]

232.    Deny the allegations of paragraph 232 of the Complaint, except admit that on August 1, 2013, Mylan Inc. filed a Form 8-K attaching a press release with the SEC, and refer to that document for its contents.

233.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 233 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 233 of the Complaint, except admit that on August 1, 2013, Mylan Inc. filed a Form 10-Q with the SEC, and refer to that document for its contents.

234.    Deny the allegations of paragraph 234 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", allegations related to an alleged duty to "disclose *future risk*", allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations

58

of paragraph 234 of the Complaint related thereto.  [Dkt. #69.]

235.    Deny the allegations of paragraph 235 of the Complaint, except admit that on October 31, 2013, Mylan Inc. filed a Form 8-K attaching a press release with the SEC, and refer to that document for its contents.

236.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 236 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 236 of the Complaint, except admit that on October 31, 2013, Mylan Inc. filed a Form 10-Q with the SEC, and refer to that document for its contents.

237.    Deny the allegations of paragraph 237 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", allegations related to an alleged duty "to disclose *future risk*", allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 237 of the Complaint related thereto.  [Dkt. #69.]

238.    Deny the allegations of paragraph 238 of the Complaint, except admit that on February 27, 2014, Mylan Inc. filed a Form 8-K attaching a press release with the SEC, and

refer to that document for its contents.

239.    Deny the allegations of paragraph 239 of the Complaint, except admit that on February 27, 2014, Mylan Inc. filed a Form 8-K with the SEC, and refer to that document for its contents.

240.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 240 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 240 of the Complaint, except admit that on February 27, 2014, Mylan Inc. filed a Form 10-K with the SEC, and refer to that document for its contents.

241.    Deny the allegations of paragraph 241 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", allegations related to an alleged duty "to disclose *future risk*", allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 241 of the Complaint related thereto.  [Dkt. #69.]

242.    Deny the allegations of paragraph 242 of the Complaint, except admit that on February 27, 2014, Mylan Inc. filed a Form 10-K with the SEC, and refer to that document

for its contents.

243.    Deny the allegations of paragraph 243 of the Complaint.

244.    Deny the allegations of paragraph 244 of the Complaint, except admit that on February 27, 2014, Mylan Inc. filed a Form 10-K with the SEC, and refer to that document for its contents.

245.    Deny the allegations of paragraph 245 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 245 of the Complaint related thereto.  [Dkt. #69.]

246.    Deny the allegations of paragraph 246 of the Complaint, except admit that on February 27, 2014, Mylan Inc. filed a Form 10-K with the SEC, and refer to that document for its contents.

247.    Deny the allegations of paragraph 247 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "statements about the complexity, ambiguity, and subjectivity of the rebate calculation [which] are statements of opinion", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations in clauses (2) and (4) of paragraph 247 of the Complaint.  [Dkt. #69.]  Defendants

61

further state that the Court, in its Opinion and Order entered on the docket on March 28, 2018,

ruled that Plaintiffs' allegations in clauses (1) and (3) of paragraph 247 of the Complaint

"survive only to the extent that Mylan misrepresented its knowledge about the EpiPen's

misclassification" [Dkt. #69], and Defendants deny that Mylan misrepresented its knowledge

about the classification of EpiPen products.

      248.    Deny the allegations of paragraph 248 of the Complaint, except admit that

on May 1, 2014, Mylan Inc. filed a Form 8-K attaching a press release with the SEC, and refer to

that document for its contents.

      249.    State that Plaintiffs' claims against Defendants were dismissed by the

Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims

relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms

10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer

to the surviving claims", and thus no response is required with respect to the allegations of

paragraph 249 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants

deny the allegations of paragraph 249 of the Complaint, except admit that on May 1, 2014,

Mylan Inc. filed a Form 10-Q with the SEC, and refer to that document for its contents.

      250.    Deny the allegations of paragraph 250 of the Complaint, and further state

that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order

entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to

"quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", allegations

related to an alleged duty "to disclose *future risk*", allegations related to alleged "anticompetitive

agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market

allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an

answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 250 of the Complaint related thereto.  [Dkt. #69.]

251.    Deny the allegations of paragraph 251 of the Complaint, except admit that on August 7, 2014, Mylan Inc. filed a Form 8-K attaching a press release with the SEC, and refer to that document for its contents.

252.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 252 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 252 of the Complaint, except admit that on August 7, 2014, Mylan Inc. filed a Form 10-Q with the SEC, and refer to that document for its contents.

253.    Deny the allegations of paragraph 253 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", allegations related to an alleged duty "to disclose *future risk*", allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 253 of the Complaint related thereto.  [Dkt. #69.]

254.    Deny the allegations of paragraph 254 of the Complaint, except admit that

on October 30, 2014, Mylan Inc. filed a Form 8-K attaching a press release with the SEC, and refer to that document for its contents.

255.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 255 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 255 of the Complaint, except admit that on November 5, 2014, Mylan Inc. filed a Form 10-Q with the SEC, and refer to that document for its contents.

256.    Deny the allegations of paragraph 256 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", allegations related to an alleged duty "to disclose *future risk*", allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 256 of the Complaint related thereto.  [Dkt. #69.]

257.    Deny the allegations of paragraph 257 of the Complaint, except admit that on March 2, 2015, Mylan N.V. and Mylan Inc. filed a Form 8-K attaching a press release with the SEC, and refer to that document for its contents.

258.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 258 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 258 of the Complaint, except admit that on March 2, 2015, Mylan Inc. filed a Form 10-K with the SEC, and refer to that document for its contents.

259.    Deny the allegations of paragraph 259 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", allegations related to an alleged duty "to disclose *future risk*", allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 259 of the Complaint related thereto.  [Dkt. #69.]

260.    Deny the allegations of paragraph 260 of the Complaint, except admit that on March 2, 2015, Mylan Inc. filed a Form 10-K with the SEC, and refer to that document for its contents.

261.    Deny the allegations of paragraph 261 of the Complaint.

262.    Deny the allegations of paragraph 262 of the Complaint, except admit that on March 2, 2015, Mylan Inc. filed a Form 10-K with the SEC, and refer to that document for its

contents.

263.     Deny the allegations of paragraph 263 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 263 of the Complaint related thereto.  [Dkt. #69.]

264.     Deny the allegations of paragraph 264 of the Complaint, except admit that on March 2, 2015, Mylan Inc. filed a Form 10-K with the SEC, and refer to that document for its contents.

265.     Deny the allegations of paragraph 265 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "statements about the complexity, ambiguity, and subjectivity of the rebate calculation [which] are statements of opinion", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations in clauses (2) and (4) of paragraph 265 of the Complaint.  [Dkt. #69.]  Defendants further state that the Court, in its Opinion and Order entered on the docket on March 28, 2018, ruled that Plaintiffs' allegations in clauses (1) and (3) of paragraph 265 of the Complaint "survive only to the extent that Mylan misrepresented its knowledge about the EpiPen's misclassification" [Dkt. #69], and Defendants deny that Mylan misrepresented its knowledge

about the classification of EpiPen products.

266.    Deny the allegations of paragraph 266 of the Complaint, except admit that on May 5, 2015, Mylan N.V. filed a Form 8-K attaching a press release with the SEC, and refer to that document for its contents.

267.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 267 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 267 of the Complaint, except admit that on May 8, 2015, Mylan N.V. filed a Form 10-Q with the SEC, and refer to that document for its contents.

268.    Deny the allegations of paragraph 268 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", allegations related to an alleged duty "to disclose *future risk*", allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 268 of the Complaint related thereto.  [Dkt. #69.]

269.    Deny the allegations of paragraph 269 of the Complaint, except admit that on May 8, 2015, Mylan N.V. filed a Form 10-Q with the SEC, and refer to that document for its

contents.

270.    Deny the allegations of paragraph 270 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "statements about the complexity, ambiguity, and subjectivity of the rebate calculation [which] are statements of opinion", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations in clauses (2) and (4) of paragraph 270 of the Complaint.  [Dkt. #69.]  Defendants further state that the Court, in its Opinion and Order entered on the docket on March 28, 2018, ruled that Plaintiffs' allegations in clauses (1) and (3) of paragraph 270 of the Complaint "survive only to the extent that Mylan misrepresented its knowledge about the EpiPen's misclassification" [Dkt. #69], and Defendants deny that Mylan misrepresented its knowledge about the classification of EpiPen products.

271.    Deny the allegations of paragraph 271 of the Complaint, except admit that on August 6, 2015, Mylan N.V. filed a Form 8-K attaching a press release with the SEC, and refer to that document for its contents.

272.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 272 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 272 of the Complaint, except admit that on August 6, 2015,

Mylan N.V. filed a Form 10-Q with the SEC, and refer to that document for its contents.

273.    Deny the allegations of paragraph 273 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", allegations related to an alleged duty "to disclose *future risk*", allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 273 of the Complaint related thereto.  [Dkt. #69.]

274.    Deny the allegations of paragraph 274 of the Complaint, except admit that Mylan N.V. held an earnings call on August 6, 2015, and refer to the transcript of that earnings call for its contents.

275.    Deny the allegations of paragraph 275 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 275 of the Complaint related thereto.  [Dkt. #69.]

276.    Deny the allegations of paragraph 276 of the Complaint, except admit that on October 30, 2015, Mylan N.V. filed a Form 8-K attaching a press release with the SEC, and

refer to that document for its contents.

277.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 277 of the Complaint.  To the extent a response is required, Defendants deny the allegations of paragraph 277 of the Complaint, except admit that on October 30, 2015, Mylan N.V. filed a Form 10-Q with the SEC, and refer to that document for its contents.  [Dkt. #69.]

278.    Deny the allegations of paragraph 278 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", allegations related to an alleged duty "to disclose *future risk*", allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 278 of the Complaint related thereto.  [Dkt. #69.]

279.    Deny the allegations of paragraph 279 of the Complaint, except admit that on February 10, 2016, Mylan N.V. filed a Form 8-K with the SEC, and refer to that document for its contents.

280.    Deny the allegations of paragraph 280 of the Complaint, except admit that on February 10, 2016, Mylan N.V. filed a Form 8-K with the SEC, and refer to that document for

its contents.

281.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 281 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 281 of the Complaint, except admit that on February 16, 2016, Mylan N.V. filed a Form 10-K with the SEC, and refer to that document for its contents.

282.    Deny the allegations of paragraph 282 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", allegations related to an alleged duty "to disclose *future risk*", allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 282 of the Complaint related thereto.  [Dkt. #69.]

283.    Deny the allegations of paragraph 283 of the Complaint, except admit that on February 16, 2016, Mylan N.V. filed a Form 10-K with the SEC, and refer to that document for its contents.

284.    Deny the allegations of paragraph 284 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order

entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 284 of the Complaint related thereto.  [Dkt. #69.]

285.    Deny the allegations of paragraph 285 of the Complaint, except admit that on February 16, 2016, Mylan N.V. filed a Form 10-K with the SEC, and refer to that document for its contents.

286.    Deny the allegations of paragraph 286 of the Complaint.

287.    Deny the allegations of paragraph 287 of the Complaint, except admit that on February 16, 2016, Mylan N.V. filed a Form 10-K with the SEC, and refer to that document for its contents.

288.    Deny the allegations of paragraph 288 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "statements about the complexity, ambiguity, and subjectivity of the rebate calculation [which] are statements of opinion", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations in clauses (2) and (4) of paragraph 288 of the Complaint.  [Dkt. #69.]  Defendants further state that the Court, in its Opinion and Order entered on the docket on March 28, 2018, ruled that Plaintiffs' allegations in clauses (1) and (3) of paragraph 288 of the Complaint "survive only to the extent that Mylan misrepresented its knowledge about the EpiPen's

misclassification" [Dkt. #69], and Defendants deny that Mylan misrepresented its knowledge about the classification of EpiPen products.

289.    Deny the allegations of paragraph 289 of the Complaint, except admit that on May 3, 2016, Mylan N.V. filed a Form 8-K attaching a press release with the SEC, and refer to that document for its contents.

290.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 290 of the Complaint.  To the extent a response is required, Defendants deny the allegations of paragraph 290 of the Complaint, except admit that on May 3, 2016, Mylan N.V. filed a Form 10-Q with the SEC, and refer to that document for its contents.  [Dkt. #69.]

291.    Deny the allegations of paragraph 291 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", allegations related to an alleged duty "to disclose *future risk*", allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or  allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 291 of the Complaint related thereto.  [Dkt. #69.]

292.    Deny the allegations of paragraph 292 of the Complaint, except admit that

on August 9, 2016, Mylan N.V. filed a Form 8-K attaching a press release with the SEC, and refer to that document for its contents.

293.    Deny the allegations of paragraph 293 of the Complaint, except admit that on August 9, 2016, Mylan N.V. filed a Form 8-K with the SEC, and refer to that document for its contents.

294.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 294 of the Complaint.  To the extent a response is required, Defendants deny the allegations of paragraph 294 of the Complaint, except admit that on August 9, 2016, Mylan N.V. filed a Form 10-Q with the SEC, and refer to that document for its contents.  [Dkt. #69.]

295.    Deny the allegations of paragraph 295 of the Complaint, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to "quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q", allegations related to an alleged duty "to disclose *future risk*", allegations related to alleged "anticompetitive agreements with respect to the EpiPen", or allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 295 of the Complaint related thereto.  [Dkt. #69.]

296.    State that Plaintiffs' claims against Defendants were dismissed by the

Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to statements made in "Mylan's Code of Conduct and Business Ethics", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 296 of the Complaint. [Dkt. #69.] To the extent a response is required, Defendants deny the allegations of paragraph 296 of the Complaint, except admit that Mylan has a Code of Business Conduct and Ethics, and refer to that document for its contents.

297.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to statements made in "Mylan's Code of Conduct and Business Ethics", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 297 of the Complaint. [Dkt. #69.] To the extent a response is required, Defendants deny the allegations of paragraph 297 of the Complaint.

298.    Deny the allegations of paragraph 298 of the Complaint.

299.    Deny the allegations of paragraph 299 of the Complaint.

300.    Deny the allegations of paragraph 300 of the Complaint.

301.    Deny the allegations of paragraph 301 of the Complaint.

302.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 302 of the

Complaint. [Dkt. #69.] To the extent a response is required, Defendants deny the allegations of paragraph 302 of the Complaint, except admit that, based on publicly available information, NBC News published an article titled "EpiPen Price Hike Has Parents of Kids With Allergies Scrambling Ahead of School Year" dated August 16, 2016, and refer to the article for its contents.

303.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 303 of the Complaint related thereto. [Dkt. #69.] To the extent a response is required, Defendants deny the allegations of paragraph 303 of the Complaint, except admit that, based on publicly available information, NBC News published an article titled "Martin Shkreli Weighs in on EpiPen Scandal, Calls Drug Makers 'Vultures'" dated August 19, 2016, and refer to the article for its contents.

304.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 304 of the Complaint. [Dkt. #69.] To the extent a response is required, Defendants deny the allegations of paragraph 304 of the Complaint, except admit that, based on publicly available information, Senator Amy Klobuchar published a statement titled "Klobuchar Calls for Judiciary Hearing and

Investigation Into At Least 400 Percent Increase of EpiPen Packs" dated August 20, 2016, and refer to that statement for its contents.

305.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 305 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 305 of the Complaint, except admit that Senator Charles Grassley published a letter addressed to Heather Bresch and dated August 22, 2016, and that, based on publicly available information, Senator Amy Klobuchar sent a letter to the FTC dated August 22, 2016, and refer to those letters for their contents.

306.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 306 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 306 of the Complaint, except admit that, based on publicly available information, The New York Times published an article titled "Mylan Raised EpiPen's Price Before the Expected Arrival of a Generic" dated on August 24, 2016, and refer to that article for its contents.

307.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims

relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen",

and further state that Plaintiffs' claims purportedly brought on behalf of persons or entities that

purchased Mylan N.V. ordinary shares on the TASE for alleged violations of the Israel Securities

Law of 1968 were also dismissed by the Court in its Opinion and Order entered on the docket on

March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer

to the surviving claims", and thus no response is required with respect to the allegations of

paragraph 307 and footnote 53 of the Complaint.  [Dkt. #69.]  To the extent a response is

required, Defendants deny the allegations of paragraph 307 and footnote 53 of the Complaint,

except refer to the public record for the per share price of Mylan N.V. securities.

308.    Deny the allegations of paragraph 308 of the Complaint, except admit that,

based on publicly available information, Inside Health Policy published an article titled "CMS

Tells Mylan It Incorrectly Classified EpiPen To Pay Lower Medicaid Rebates, Lawmakers

Upset" dated September 2, 2016, and refer to that article for its contents.

309.    Deny the allegations of paragraph 309 of the Complaint, except refer to

the public record for the per share price of Mylan N.V. securities on September 2, 2016.

Defendants further state that they deny the unnumbered paragraph of the Complaint located

between numbered paragraphs 309 and 310 of the Complaint, except admit that, based on

publicly available information, Bloomberg published an article titled "Mylan Accused by U.S. of

Overcharging Medicaid for EpiPen" dated October 5, 2016, and further admit that, based on

publicly available information, Andrew M. Slavitt sent a letter to Senator Ron Wyden dated

October 5, 2016, and refer to that article and that letter for their contents.

310.    Deny the allegations of paragraph 310 of the Complaint, except refer to

the public record for the per share price of Mylan N.V. securities on October 6, 2016.

78

311.    Deny the allegations of paragraph 311 of the Complaint, except admit that, based on publicly available information, CNBC News published an article titled "Underpayments on EpiPen rebates to Medicaid could top $700 million" dated October 7, 2016, and that on October 7, 2016, Mylan N.V. issued a press release titled "Mylan Agrees to Settlement on Medicaid Rebate Classification for EpiPen® Auto-Injector", and refer to that article and that press release for their contents.

312.    Deny the allegations of paragraph 312 of the Complaint, except refer to the public record for the per share price of Mylan N.V. securities on October 7, 2016 and October 10, 2016.

313.    Deny the allegations of paragraph 313 of the Complaint, except admit that, based on publicly available information, CNBC News published an article titled "Mylan's grace period for EpiPen rebates could cost Medicaid up to $120 million" dated October 11, 2016, and refer to that article for its contents.

314.    Deny the allegations of paragraph 314 of the Complaint, except refer to the public record for the per share price of Mylan N.V. securities on October 12, 2016.

315.    Deny the allegations of paragraph 315 of the Complaint, except admit that, based on publicly available information, Bloomberg News published an article titled "U.S. Charges in Generic-Drug Probe to Be Filed by Year-End" dated November 3, 2016, and refer to that article for its contents.

316.    Deny the allegations of paragraph 316 of the Complaint, except refer to the public record for the per share price of Mylan N.V. securities on November 3, 2016.

317.    Deny the allegations of paragraph 317 of the Complaint, and further state that they are without knowledge of information sufficient to form a belief as to the truth of the

allegations concerning the contents of unidentified "reports", except admit that, based on

publicly available information, <u>FiercePharma</u> published an article titled "DOJ's price-fixing

investigation could lead to sizable liabilities, analyst says" dated November 10, 2016, and refer

to that article for its contents.

       318.    Deny the allegations of paragraph 318 of the Complaint, except refer to

the public record for the per share price of Mylan N.V. securities on November 10, 2016.

       319.    Deny the allegations of paragraph 319 of the Complaint, except admit that,

based on publicly available information, <u>Bloomberg News</u> published an article titled "U.S.

Generic Drug Probe Seen Expanding After Guilty Pleas" dated December 14, 2016, and refer to

that article for its contents, and further state that Plaintiffs' claims against Defendants were

dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018,

insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation

agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to

the surviving claims", and thus no response is required with respect to the allegations of

paragraph 319 of the Complaint related thereto.  [Dkt. #69.]

       320.    Deny the allegations of paragraph 320 of the Complaint, except refer to

the public record for the per share price of Mylan N.V. securities on December 14, 2016, and

further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion

and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations

related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and

Order instructed Defendants to "file an answer to the surviving claims", and thus no response is

required with respect to the allegations of paragraph 320 of the Complaint related thereto.  [Dkt.

#69.]

321.    Deny the allegations of paragraph 321 of the Complaint, except admit that, based on publicly available information, The Philadelphia Inquirer published an article titled "Ex-N.J. pharma execs admit to fixing generic drug prices" dated January 10, 2017, and refer to that article for its contents, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 321 of the Complaint related thereto.  [Dkt. #69.]

322.    Deny the allegations of paragraph 322 of the Complaint, except refer to the public record for the per share price of Mylan N.V. securities between January 10, 2017 and January 12, 2017, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as such claims relied on allegations related to an alleged "Doxy DR market allocation agreement", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 322 of the Complaint related thereto.  [Dkt. #69.]

323.    Deny the allegations of paragraph 323 of the Complaint, except admit that, based on publicly available information, Bloomberg News published an article titled "Mylan Faces U.S. Antitrust Investigation on EpiPen" dated January 30, 2017, and refer to that article for its contents, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen",

and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 323 of the Complaint related thereto.  [Dkt. #69.]

324.    Deny the allegations of paragraph 324 of the Complaint, except refer to the public record for the per share price of Mylan N.V. securities on January 30, 2017, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 324 of the Complaint related thereto.  [Dkt. #69.]

325.    Deny the allegations of paragraph 325 of the Complaint.

326.    Deny the allegations of paragraph 326 of the Complaint, except admit that Heather Bresch served as CEO of Mylan during the alleged Class Period, that John Sheehan and Kenneth Parks served successively as CFO of Mylan during the alleged Class Period and that Paul Campbell served as the Chief Accounting Officer of Mylan during the alleged Class Period.

327.    Deny the allegations of paragraph 327 of the Complaint, except admit that EpiPen products, like many of its products, are important to Mylan's business, and admit that on September 26, 2016, Mylan N.V. filed a Form 8-K with the SEC attaching an exhibit titled "U.S. EpiPen Profitability Analysis", and refer to that Form 8-K for its contents, and admit that that Mylan N.V. (and, for periods prior to February 27, 2015, Mylan Inc.) filed Forms 10-K with the SEC, and refer to those Forms 10-K for their contents, and further state that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket

on March 28, 2018, insofar as those claims relied on allegations related to alleged

"anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order

instructed Defendants to "file an answer to the surviving claims", and thus no response is

required with respect to the allegations of paragraph 327 of the Complaint related thereto.

[Dkt. #69.]

        328.    Deny the allegations of paragraph 328 of the Complaint, except admit that

Mylan N.V. (and, for periods prior to February 27, 2015, Mylan Inc.) periodically submitted

filings with the SEC, and refer to those filings for their contents, and further admit that the

individual Defendants listed in paragraph 328 of the Complaint at all times acted consistent with

their obligations under relevant law.

        329.    Deny the allegations of paragraph 329 of the Complaint, except admit that

Mylan N.V. (and, for periods prior to February 27, 2015, Mylan Inc.) periodically submitted

filings with the SEC, and refer to those filings for their contents.

        330.    Deny the allegations of paragraph 330 of the Complaint.

        331.    Deny the allegations of paragraph 331 of the Complaint.

        332.    Deny the allegations of paragraph 332 of the Complaint, except state that

Defendants are without knowledge or information about the Confidential Witness, except state

that, because Kenneth S. Parks joined Mylan as CFO in June 2016, and the Confidential Witness

left "Mylan in October 2015", the Confidential Witness could not have "confirmed that

Defendant[] . . . Parks . . . knew of and approved all material drug pricing decisions made by the

Company".

        333.    Deny the allegations of paragraph 333 of the Complaint, except state that

Defendants are without knowledge or information about the Confidential Witness.

334.    Deny the allegations of paragraph 334 of the Complaint.

335.    Deny the allegations of paragraph 335 of the Complaint.

336.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 336 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 336 of the Complaint.

337.    State that Plaintiffs' claims against Defendants were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, insofar as those claims relied on allegations related to alleged "anticompetitive agreements with respect to the EpiPen", and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 337 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 337 of the Complaint.

338.    Deny the allegations of paragraph 338 of the Complaint.

339.    Deny the allegations of paragraph 339 of the Complaint, except admit that this action purports to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of persons or entities that acquired the securities of Mylan N.V. and/or Mylan Inc. on the NASDAQ, between February 21, 2012 and January 29, 2017, and that Plaintiffs purport to exclude from the alleged class the persons described in paragraph 339 of the Complaint, and further state that Plaintiffs' claims purportedly brought on behalf of purchasers

of Mylan N.V. ordinary shares on the TASE for alleged violations of the Israel Securities Law of 1968 were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, and thus no response is required with respect to the allegations of paragraph 339 of the Complaint related thereto.  [Dkt. #69.]

340.    Deny the allegations of paragraph 340 of the Complaint, except admit that between February 21, 2012 and February 27, 2015, Mylan Inc. common stock was listed on the NASDAQ, and further admit that between March 2, 2015 and January 29, 2017, Mylan N.V. ordinary shares were listed on the NASDAQ, and state that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of the final two sentences of paragraph 340 of the Complaint, and further state that Plaintiffs' claims purportedly brought on behalf of all purchasers of Mylan N.V. ordinary shares made on the TASE for alleged violations of the Israel Securities Law of 1968 were dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, and thus no response is required with respect to the allegations of paragraph 340 of the Complaint related thereto.  [Dkt. #69.]

341.    Deny the allegations of paragraph 341 of the Complaint.

342.    Deny the allegations of paragraph 342 of the Complaint, except state that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 342 concerning Plaintiffs' counsel.

343.    Deny the allegations of paragraphs 343 and 343(a) through 343(e) of the Complaint.

344.    Deny the allegations of paragraph 344 of the Complaint.

345.    State that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 345 of the Complaint concerning

Plaintiffs' forthcoming legal strategy, except state that, to the extent that Plaintiffs are alleging that "the presumption of reliance established by the fraud-on-the-market doctrine" is in fact applicable to their claims, Defendants deny that allegation, and further state that this is a conclusion of law to which no response is required.

346.    Deny the allegations of paragraph 346 of the Complaint, except refer to the public record for the price of Mylan N.V. ordinary shares on October 30, 2015, and further state that to the extent paragraph 346 states a legal conclusion, no response is required.

347.    Deny the allegations of paragraph 347 of the Complaint.

348.    State that the allegations of paragraphs 348 and 348(a) through 348(d) of the Complaint state legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of paragraph 348 and 348(a) through 348(d) of the Complaint, except admit that between February 21, 2012 and February 27, 2015, Mylan Inc. common stock was listed on the NASDAQ, and further admit that between March 2, 2015 and January 29, 2017, Mylan N.V. ordinary shares were listed on the NASDAQ, and further admit that Mylan N.V. (and for periods prior to February 27, 2015, Mylan Inc.) filed periodic public reports with the SEC, and further admit that Mylan N.V. and Mylan Inc. made various disclosures to the public, and further admit that certain outside analysts covered Mylan N.V. and/or Mylan Inc.

349.    Deny the allegations of paragraph 349 of the Complaint.

350.    Deny the allegations of paragraph 350 of the Complaint.

351.    Deny the allegations of paragraph 351 of the Complaint.

352.    Repeat and reallege Defendants' answers to the allegations of paragraphs 1 through 351 of this Answer as if fully set forth herein, and further state that Plaintiffs' First

Claim against Defendants was dismissed in part by the Court in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 352 of the Complaint that were dismissed.  [Dkt. #69.]

353.    Deny the allegations of paragraph 353 of the Complaint, except admit that between February 21, 2012 and February 27, 2015, Mylan Inc. common stock was listed on the NASDAQ, and further admit that between March 2, 2015 and January 29, 2017, Mylan N.V. ordinary shares were listed on the NASDAQ, and further state that Plaintiffs' First Claim against Defendants was dismissed in part by the Court in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 353 of the Complaint that were dismissed.  [Dkt. #69.]

354.    Deny the allegations of paragraph 354 of the Complaint, and further state that Plaintiffs' First Claim against Defendants was dismissed in part by the Court in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 354 of the Complaint that were dismissed. [Dkt. #69.]

355.    Deny the allegations of paragraph 355 and paragraphs 355(a) through 355(c) of the Complaint, and further state that Plaintiffs' First Claim against Defendants was dismissed in part by the Court in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving

claims", and thus no response is required with respect to the allegations of paragraph 355 and paragraphs 355(a) through 355(c) of the Complaint that were dismissed.  [Dkt. #69.]

356.    Deny the allegations of paragraph 356 of the Complaint, and further state that Plaintiffs' First Claim against Defendants was dismissed in part by the Court in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 356 of the Complaint that were dismissed. [Dkt. #69.]

357.    Deny the allegations of paragraph 357 of the Complaint, and further state that Plaintiffs' First Claim against Defendants was dismissed in part by the Court in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 357 of the Complaint that were dismissed. [Dkt. #69.]

358.    Repeat and reallege Defendants' answers to the allegations of paragraphs 1 through 357 as if fully set forth herein, and further state that Plaintiffs' Second Claim against Defendants was dismissed in part by the Court in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 358 of the Complaint that were dismissed.  [Dkt. #69.]

359.    Deny the allegations of paragraph 359 of the Complaint, except admit that between February 21, 2012 and February 27, 2015, Mylan Inc. common stock was listed on the NASDAQ, and further admit that between March 2, 2015 and January 29, 2017, Mylan N.V.

ordinary shares were listed on the NASDAQ, and further state that Plaintiffs' Second Claim

against Defendants was dismissed in part by the Court in its Opinion and Order entered on the

docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file

an answer to the surviving claims", and thus no response is required with respect to the

allegations of paragraph 359 of the Complaint that were dismissed.  [Dkt. #69.]

360.    Deny the allegations of paragraph 360 of the Complaint, and further state

that Plaintiffs' Second Claim against Defendants was dismissed in part by the Court in its

Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and

Order instructed Defendants to "file an answer to the surviving claims", and thus no response is

required with respect to the allegations of paragraph 360 of the Complaint that were dismissed.

[Dkt. #69.]

361.    Deny the allegations of paragraph 361 of the Complaint, and further state

that Plaintiffs' Second Claim against Defendants was dismissed in part by the Court in its

Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and

Order instructed Defendants to "file an answer to the surviving claims", and thus no response is

required with respect to the allegations of paragraph 361 of the Complaint that were dismissed.

[Dkt. #69.]

362.    Deny the allegations of paragraph 362 of the Complaint, and further state

that Plaintiffs' Second Claim against Defendants was dismissed in part by the Court in its

Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and

Order instructed Defendants to "file an answer to the surviving claims", and thus no response is

required with respect to the allegations of paragraph 362 of the Complaint that were dismissed.

[Dkt. #69.]

363.    Repeat and reallege Defendants' answers to the allegations of paragraphs 1 through 362 of this Answer as if fully set forth herein, and further state that Plaintiffs' Third Claim was dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 363 of the Complaint.  [Dkt. #69.]

364.    State that Plaintiffs' Third Claim was dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 364 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 364 of the Complaint, except admit that between February 21, 2012 and February 27, 2015, Mylan Inc. common stock was listed on the NASDAQ, and further admit that between March 2, 2015 and January 29, 2017, Mylan N.V. ordinary shares were listed on the NASDAQ, and further admit that Mylan N.V. ordinary shares were traded on the TASE from November 4, 2015 through February 12, 2018.

365.    State that Plaintiffs' Third Claim was dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 365 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 365 of the Complaint.

366.     State that Plaintiffs' Third Claim was dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 366 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 366 of the Complaint, and further state that the allegations of paragraph 366 of the Complaint state characterizations and/or conclusions of law that do not require a response.

367.     State that Plaintiffs' Third Claim was dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 367 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 367 of the Complaint.

368.     State that Plaintiffs' Third Claim was dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraph 368 of the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraph 368 of the Complaint.

369.     State that Plaintiffs' Third Claim was dismissed by the Court in its Opinion and Order entered on the docket on March 28, 2018, and the Court in its Opinion and Order instructed Defendants to "file an answer to the surviving claims", and thus no response is required with respect to the allegations of paragraphs 369 and paragraphs 369(a) through (f) of

the Complaint.  [Dkt. #69.]  To the extent a response is required, Defendants deny the allegations of paragraphs 369(a) through (f) of the Complaint.

GENERAL DENIALS

370.     Except as otherwise expressly admitted in paragraphs 1 through 369, above, Defendants deny each and every allegation contained in paragraphs 1 through 369 of the Complaint, including, without limitations, the introductory matter preceding paragraph 1 of the Complaint, and the footnotes, headings and subheadings, tables and figures contained in the Complaint, and deny liability to Plaintiffs, or that Plaintiffs have suffered any legally cognizable damages for which Defendants are responsible.  Pursuant to Rule 8(b)(6) of the Federal Rules of Civil Procedure, allegations contained in the Complaint to which no responsive pleading is required shall be deemed denied.  Defendants expressly reserve the right to amend and/or supplement their answer.

371.     With respect to all paragraphs in the Complaint in which Plaintiffs pray for damages or other relief, Defendants deny that Plaintiffs are entitled to that relief under the law.

AFFIRMATIVE AND OTHER DEFENSES

Defendants assert the following affirmative and other defenses.  Except where expressly noted, each defense is asserted by each of the Defendants.  In asserting these defenses, Defendants do not assume the burden of establishing any fact or proposition where that burden properly is imposed on Plaintiffs.  Defendants expressly reserve the right to supplement, amend

92

or delete any or all of the following defenses, as warranted by discovery or other investigation, or as justice may require.

First Defense

372.    The Complaint, and each and every claim stated therein, fails to state a claim upon which relief can be granted.

Second Defense

373.    The Complaint fails to plead adequately any of the alleged underlying conduct which Plaintiffs claim gives rise to liability under the securities laws.

Third Defense

374.    The Complaint fails to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(1), and otherwise fails properly to identify the alleged false or misleading statements of which Plaintiffs complain.

Fourth Defense

375.    Defendants are not liable because they did not make a false or misleading statement of material fact or omission of material fact.

Fifth Defense

376.    Defendants are not liable because certain alleged misstatements by them, or any one of them, were forward-looking and satisfied the safe harbor provisions of the federal securities laws and/or the "bespeaks caution" doctrine.

Sixth Defense

377.    Defendants are not liable because Plaintiffs' claims are barred, in whole or in part, because, assuming there was any untruth or omission as alleged in the Complaint (and

93

Defendants deny there was any), Plaintiffs knew or should have known of such untruth or omission.

Seventh Defense

378.    Defendants are not liable because Plaintiffs' claims are barred, in whole or in part, because Plaintiffs voluntarily assumed the risk of the losses alleged in the Complaint.

Eighth Defense

379.    Defendants are not liable because they acted in good faith and in reasonable reliance upon the work, opinions, information, representations and advice of others upon whom Defendants were entitled to rely.

Ninth Defense

380.    Defendants are not liable because they did not act knowingly or recklessly as to any alleged material misstatement or omission.

Tenth Defense

381.    Defendants are not liable because they, at all times, and with respect to all matters contained herein, acted in good faith, exercised reasonable care, and did not know, and in the exercise of reasonable care could not have known, of the purported untruths, misstatements and/or omissions alleged in the Complaint.

Eleventh Defense

382.    This action may not properly be maintained as a class action.

Twelfth Defense

383.    Defendants are not liable because Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations and/or repose, and/or the doctrines of estoppel, laches and waiver.

### Thirteenth Defense

384.     To the extent Plaintiffs' claims, issues and alleged underlying misconduct raised by Plaintiffs' claims have been previously litigated, Plaintiffs' claims are barred, in whole or in part, from any recovery under the doctrines of res judicata and/or collateral estoppel.

### Fourteenth Defense

385.     Defendants are not liable because some or all of the matters now claimed by the Complaint to be the subject of misrepresentations or omissions publicly were disclosed or were in the public domain and, as such, were available to Plaintiffs and were at all times reflected in the market price of Mylan N.V. or Mylan Inc. securities.

### Fifteenth Defense

386.     Defendants are not liable because any allegedly untrue statement of material fact, omissions of material fact, misleading statements, or other actions allegedly taken by the Defendants were not material to the investment decisions of Plaintiffs.

### Sixteenth Defense

387.     Defendants are not liable because the alleged misrepresentations and omissions on which Plaintiffs base their claims were not material, but instead are immaterial puffery.

### Seventeenth Defense

388.     Defendants are not liable because certain alleged misstatements about which Plaintiffs complain concern nonactionable matters of opinion or soft information, rather than matters of material fact.

<u>Eighteenth Defense</u>

389.    Defendants are not liable because Plaintiffs' claims are barred, in whole or in part, because the purported misrepresentations and omissions alleged in the Complaint did not affect the market price of Mylan N.V. and/or Mylan Inc. securities.

<u>Nineteenth Defense</u>

390.    Defendants are not liable because Plaintiffs have not pleaded the required connection between the challenged statements and the alleged loss, and any losses suffered by Plaintiffs were not causally related to the misstatements alleged by Plaintiffs.

<u>Twentieth Defense</u>

391.    Plaintiffs' claims are barred because Plaintiffs did not reasonably rely on any of the statements or omissions alleged in the Complaint in deciding to purchase Mylan N.V. and/or Mylan Inc. securities.

<u>Twenty-First Defense</u>

392.    Plaintiffs cannot recover against the Defendants, in whole or in part, because the "fraud on the market" theory of reliance is unavailable, and they will be otherwise unable to establish that they relied upon the purported misstatements and omissions alleged in the Complaint.

<u>Twenty-Second Defense</u>

393.    Plaintiffs cannot recover against Defendants because Plaintiffs will be unable to establish that the purported misstatements and omissions alleged in the Complaint were the cause of Plaintiffs' decisions to purchase Mylan Inc. or Mylan N.V. securities on the terms of their investments.

Twenty-Third Defense

394.    Plaintiffs cannot recover against Defendants because Defendants were under no duty to disclose the alleged underlying conduct.

Twenty-Fourth Defense

395.    Some or all of Plaintiffs' claims are barred because Plaintiffs cannot establish a sufficient connection between existing statements and any alleged underlying wrongdoing sufficient to create a duty to disclose.

Twenty-Fifth Defense

396.    Plaintiffs cannot recover against Defendants because the losses, if any, sustained by Plaintiffs were not actually or proximately caused by, and resulted from causes other than, the acts and occurrences alleged in the Complaint.

Twenty-Sixth Defense

397.    Plaintiffs' claims are barred because the injuries and underlying wrongdoing alleged by Plaintiffs, to the extent any exist, were caused, in whole or in part, by intervening and/or superseding causes unrelated to the alleged conduct of Defendants, by the conduct of third parties for whom Defendants were not responsible, through forces in the marketplace over which Defendants have no control, or through acts or omissions by one or more of the Plaintiffs.

Twenty-Seventh Defense

398.    Defendants deny that there ever was any underlying conspiracy, and further deny that Plaintiffs have adequately pleaded that any underlying misconduct ever

occurred, but in the alternative, and without admitting that any violation of law occurred, Defendants contend that they withdrew from any alleged conspiracy.

## Twenty-Eighth Defense

399.    Defendants are not liable because to the extent that Plaintiffs have been damaged, if at all, their failure to mitigate their damages bars recovery.

## Twenty-Ninth Defense

400.    Defendants are not liable because Plaintiffs' losses, if any, should be reduced, diminished, and/or eliminated under the proportionate liability provisions of the Securities Exchange Act of 1934 to reflect only Defendants' percentage of responsibility, if any.

## Thirtieth Defense

401.    To the extent Plaintiffs suffered damages, if at all, such damages must be offset by Plaintiffs' gains.

## Thirty-First Defense

402.    Plaintiffs cannot recover against Defendants, in whole or in part, because Defendants are entitled to proper offsets for any settlements Plaintiffs enter into, or any amounts Plaintiffs otherwise receive from any source, in connection with Plaintiffs' alleged losses.

## Thirty-Second Defense

403.    Plaintiffs' claims are barred, in whole or in part, because the allegedly withheld information was known to the market.

## Thirty-Third Defense

404.    Allegations of complaints filed by private litigants, or allegations of complaints filed by, or investigations initiated by, the SEC, the DOJ or attorneys general, or settlements entered into with the DOJ, have no preclusive effect or evidentiary weight.

### Thirty-Fourth Defense

405.    The individual Defendants are not liable because they acted at all times in good faith and did not directly or indirectly induce the alleged wrongful act or acts, nor were they culpable participants in any of the alleged wrongdoing.

### Thirty-Fifth Defense

406.    Plaintiffs' claims are barred because each Defendant alleged to be a control person under Section 20(a) of the Securities and Exchange Act of 1934 acted in good faith and did not directly or indirectly induce the act or acts constituting the alleged violations and causes of action.

### Thirty-Sixth Defense

407.    Defendants are not liable for alleged injuries caused by government action.

### Thirty-Seventh Defense

408.    Defendants assert the *Noerr-Pennington* doctrine as a defense to the underlying conduct alleged in the Complaint.

### Thirty-Eighth Defense

409.    Defendants are not liable for alleged injuries resulting from conduct for which they have been released through settlement in any prior litigation or other proceeding.

### Thirty-Ninth Defense

410.    Defendants are not liable because the Complaint fails to adequately allege a relevant market or relevant markets for the underlying conduct alleged in the Complaint.

### Fortieth Defense

411.    Defendants are not liable because the underlying conduct alleged in the Complaint was reasonable and is based on independent, legitimate business and economic justifications and has not unreasonably restrained trade or otherwise harmed competition.

### Forty-First Defense

412.    Defendants are not liable because Plaintiffs challenge alleged acts, conduct or statements that were specifically permitted by law.  Defendants have, at all times relevant hereto, complied with all applicable laws and regulations.

### Forty-Second Defense

413.    Defendants are not liable because the underlying conduct alleged in the Complaint has not unreasonably restrained trade or otherwise tended to destroy competition in any relevant market.

### Forty-Third Defense

414.    Plaintiffs' claims are barred, in whole or in part, because Defendants did not act in furtherance of, or otherwise conspire or agree with any person or entity including, but not limited to, any of the other drug manufacturers named in the Complaint with the intention of fixing, manipulating or artificially affecting the price of any drug.

### Forty-Fourth Defense

415.    Defendants are not liable because the underlying conduct alleged in the Complaint is the result of the competitive process and has led to actual pro-competitive results, and the pro-competitive benefits of Defendants' alleged conduct substantially outweigh any purportedly anticompetitive effects.

<u>Forty-Fifth Defense</u>

416.    Defendants are not liable because Plaintiffs do not have standing.

<u>Forty-Sixth Defense</u>

417.    Plaintiffs' claims are barred, in whole or in part, because they have incurred no legally cognizable injury or damages.

<u>Forty-Seventh Defense</u>

418.    Defendants are not liable for the conduct of any of current or former employees and/or agents to the extent that any or all of those current or former employees acted outside the scope of their authority.

<u>Forty-Eighth Defense</u>

419.    Defendants deny that Plaintiffs are entitled to recover of attorneys' fees, costs or expenses.

<u>Forty-Ninth Defense</u>

420.    Plaintiffs' claims for relief are barred, in whole or in part, because the Court cannot properly exercise personal jurisdiction over some or all of Defendants.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Defendants pray for judgment against Plaintiffs as follows:

(1)    Dismissing the entire action with prejudice;

(2)    Granting Defendants their reasonable costs, expenses and attorneys' fees; and

(3)    Awarding Defendants such other, further and different relief as the Court deems just and proper.

DATED:  April 25, 2018
New York, New York

Respectfully submitted,


CRAVATH, SWAINE & MOORE LLP,

by
 /s/  David R. Marriott
David R. Marriott
Kevin J. Orsini
Rory A. Leraris
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
dmarriot@cravath.com
korsini@cravath.com
rleraris@cravath.com

*Attorneys for Defendants*