**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Mylan N.V. Securities Litigation | No. 16-cv-07926 (JPO) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' PARTIAL MOTION TO DISMISS**

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendants*

August 6, 2018

# TABLE OF CONTENTS

Page

TABLE OF ABBREVIATIONS ................................................................................................. ii

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 3

ARGUMENT ............................................................................................................................. 5

I.    PLAINTIFFS' NEW ALLEGATIONS FAIL TO STATE A CLAIM FOR
      VIOLATION OF SECTION 10(b). .............................................................................. 5

      A.    Plaintiffs Fail To Plead Underlying Misconduct That Mylan Was Required
            To Disclose. ....................................................................................................... 5

      B.    Certain of Plaintiffs' New Alleged Misstatements Are Not Actionable as a
            Matter of Law. .................................................................................................. 11

      C.    Certain of Plaintiffs' New Loss Causation Allegations Are Deficient as a
            Matter of Law. .................................................................................................. 12

II.   THE ALLEGATIONS AGAINST RAJIV MALIK FAIL AS A MATTER OF
      LAW. ......................................................................................................................... 16

      A.    The Earnings-Call Statements About Mylan's Historical Financial Results
            and Possible Future Performance Are Not Actionable as a Matter of Law. ......... 16

      B.    The Complaint Does Not Allege a Strong Inference of Scienter Against
            Malik as to His Statements Concerning Mylan's Generics Segment. .................. 17

      C.    The Complaint Fails To Allege Control-Person Liability Against Mr.
            Malik. ............................................................................................................... 23

      D.    Claims Based on Statements before July 7, 2013 Are Time-Barred. ................... 24

CONCLUSION ....................................................................................................................... 25

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| 2015 8-K | Mylan N.V.'s Current Report on Form 8-K filed on December 4, 2015. |
| 2016 10-Q | Mylan N.V.'s Quarterly Report on Form 10-K filed on November 9, 2016. |
| Complaint | Plaintiffs' Second Amended Complaint, dated July 6, 2018. |
| CW | Plaintiffs' purported "Confidential Witness" (*see* Compl. ¶¶ 121-22, 403-04) |
| Company | Mylan N.V. and/or Mylan Inc. |
| CTAG | The Connecticut Attorney General |
| Defendants | Mylan N.V., Mylan Inc., Heather Bresch, Robert J. Coury, Paul B. Campbell, Rajiv Malik, Kenneth S. Parks and John D. Sheehan. |
| DOJ | U.S. Department of Justice |
| Doxy DR | Doxycycline hyclate delayed release |
| Doxy Mono | Doxycycline monohydrate |
| EpiPen | EpiPen Auto-Injector® products |
| Ex. _ | Exhibit _ to the Accompanying Declaration of Kevin J. Orsini, dated August 6, 2018. |
| Glip-Met | Glipizide-Metformin |
| Individual Defendants | Heather Bresch, Robert J. Coury, Paul B. Campbell, Rajiv Malik, Kenneth S. Parks and John D. Sheehan. |
| MDRP | Medicaid Drug Rebate Program |
| Mylan | Mylan N.V. and/or Mylan Inc. |
| Plaintiffs | Menorah Mivtachim Insurance Ltd., Menorah Mivtachim Pensions and Gemel Ltd., Phoenix Insurance Company Ltd., Meitav DS Provident Funds and Pension Ltd., and Dan Kleinerman |
| PSLRA | Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 |
| Sanofi | Sanofi-Aventis S.A. |
| Section 10(b) | Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5 |
| Section 20(a) | Securities Exchange Act, 15 U.S.C. § 78t(a) |
| Teva | Teva Pharmaceutical Industries Ltd. |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2006 Calandra Irrevocable Tr. v. Signature Bank Corp.*,
No. 09-cv-08526, 2010 WL 5174331 (S.D.N.Y. Dec. 13, 2010) ...........................................11

*Acito v. IMCERA Grp., Inc.*,
47 F.3d 47 (2d Cir. 1995).......................................................................................................19

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
692 F.3d 34 (2d Cir. 2012).....................................................................................................14

*In re Am. Express Co. Sec. Litig.*,
No. 02 CIV. 5533, 2008 WL 4501928 (S.D.N.Y. Sept. 26, 2008)........................................21

*In re AOL Time Warner, Inc. Secs. and ERISA Litig.*,
381 F. Supp. 2d 192 (S.D.N.Y. 2004)...................................................................................14

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).....................................................................................................23

*In re Axis Capital Holdings, Ltd. Sec. Litig.*,
456 F. Supp. 2d 576 (S.D.N.Y. 2006)..................................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007)...........................................................................................................9, 10

*Cal. Pub. Emps. Ret. Sys. v. ANZ Secs., Inc.*,
137 S. Ct. 2042 (2017)...........................................................................................................24

*City of Brockton Ret. Sys. v. Avon Prod., Inc.*,
No. 11 CIV. 4665, 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014)........................................21

*Connecticut v. Aurobindo Pharma. USA, Inc.*,
No. 3:16-cv-02056 (D. Conn. Dec. 14, 2016) .......................................................................15

*In re CRM Holdings, Ltd Sec. Litig.*,
No. 10-cv-975, 2012 WL 1646888 (S.D.N.Y. May 10, 2012) ...........................................7, 21

*Dexia SAINV v. Deutsche Bank AG*,
No. 11-cv-5672, 2013 WL 98063 (S.D.N.Y. Jan. 4, 2013) ...................................................22

*E & L Consulting, Ltd. v. Doman Indus. Ltd.*,
472 F.3d 23 (2d Cir. 2006)......................................................................................................8

*Eisai Inc. v. Sanofi Aventis U.S. LLC*,
821 F.3d 394 (3d Cir. 2016).....................................................................................................7

*Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prod., Inc.*,
  129 F.3d 240 (2d Cir. 1997)..................................................................................7

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*,
  2:17-md-02785 (D. Kan. Oct. 17, 2017).................................................................7

*Fishbaum v. Liz Claiborne, Inc.*,
  189 F.3d 460 (2d Cir. 1999).................................................................................20

*Foley v. Transocean Ltd.*,
  861 F. Supp. 2d 197 (S.D.N.Y. 2012)..................................................................19

*Footbridge Ltd. v. Countrywide Home Loans, Inc.*,
  No. 09 CIV. 4050, 2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010).......................22

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  74 F. Supp. 3d 581 (S.D.N.Y. 2015)....................................................................10

*Friedman v. JP Morgan Chase & Co.*,
  No. 15-cv-5899, 2016 WL 2903273 (S.D.N.Y. May 8, 2016) .............................24

*Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*,
  386 F.3d 485 (2d Cir. 2004)...................................................................................7

*George Haug Co. v. Rolls Royce Motor Cars Inc.*,
  148 F.3d 136 (2d Cir. 1998)...................................................................................8

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011)..................................................................20

*In re Health Mgmt. Sys., Inc. Sec. Litig.*,
  No. 97 CIV. 1865, 1998 WL 283286 (S.D.N.Y. June 1, 1998)............................20

*In re Insulin Pricing Litig.*,
  No. 17-699 (D.N.J. Mar. 9, 2018), Dkt. No. 109..................................................7

*Int'l Union Op. Engineers v. Lannett Co. Inc.*,
  2:16-cv-00990 (E.D. Pa Mar. 2, 2016), Dkt. No. 1 .............................................15

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
  No. 15 CIV. 6369, 2018 WL 1449206 (S.D.N.Y. Mar. 23, 2018) ........................24

*Janbay v. Canadian Solar, Inc.*,
  No. 10 CIV. 4430, 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ...................22, 23

*Janus Capital Grp, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)..............................................................................................16

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)..................................................................................18

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)..............................................................................12, 13

*Lipow v. Net1 UEPS Techs., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015)..................................................................19

*In re London Silver Fixing, Ltd. Antitrust Litig.*,
  14-md-2573, 2018 WL 3585277 (S.D.N.Y. July 25, 2018) ....................................11

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
  213 F. Supp. 3d 530 (S.D.N.Y. 2016)..................................................................10

*Low v. Robb*,
  No. 11-cv-2321, 2012 WL 173472 (S.D.N.Y. Jan. 20, 2012) ................................22

*In re Manulife Fin. Corp. Sec. Litig.*,
  No. 09 CIV. 6185, 2012 WL 4108104 (S.D.N.Y. Sept. 19, 2012)...........................15

*Mayor & City Council of Balt., Md. v. Citigroup, Inc.*,
  709 F.3d 129 (2d Cir. 2013)...................................................................................9

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*,
  164 F. Supp. 3d 568 (S.D.N.Y. 2016)....................................................................5

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  218 F.R.D 76 (S.D.N.Y. 2003) .............................................................................22

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
  455 F. App'x. 10 (2d Cir. 2011) ...........................................................................19

*Norwood Venture Corp. v. Converse Inc.*,
  959 F. Supp. 205 (S.D.N.Y. 1997) .......................................................................13

*Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  135 S. Ct. 1318 (2015)..........................................................................................17

*In re Omnicon Crp. Inc. Litig.*,
  597 F.3d 501 (2d Cir. 2010)..................................................................................14

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Ind. Ltd.*,
  3:17-cv-01314 (D. Conn. Apr. 4, 2018)................................................................22

*Pollio v. MF Glob., Ltd.*,
  608 F. Supp. 2d 564 (S.D.N.Y. 2009)...................................................................17

*In re Prestige Brands Holding, Inc.*,
  No. 05 CIV. 06924, 2006 WL 2147719 (S.D.N.Y. July 10, 2006) .......................................19

*In re Publ'n Paper Antitrust Litig.*,
  690 F.3d 51 (2d Cir. 2012)..................................................................................................9

*Ret. Sys. v. Mechel OAO*,
  811 F. Supp. 2d 853 (S.D.N.Y. 2011)...............................................................................19

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)..............................................................................................17

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000).................................................................................................25

*RSM Production Corp. v. Fridman*,
  643 F. Supp. 2d 382 (S.D.N.Y. 2009)................................................................................22

*S.E.C. v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*,
  296 F.R.D. 241 (S.D.N.Y. 2013) .......................................................................................14

*In re Sanofi Sec. Litig.*,
  155 F. Supp. 3d 386 (S.D.N.Y. 2016).................................................................................6

*Sanofi-Aventis U.S. LLC v. Mylan Inc.*,
  No. 2:17-cv-02452 (D.N.J. Apr. 24, 2017) ........................................................................8

*SRM Glob. Fund L.P. v. Countrywide Fin. Corp.*,
  No. 09 CIV. 5064, 2010 WL 2473595 (S.D.N.Y. June 17, 2010)....................................17

*SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*,
  829 F.3d 173 (2d Cir. 2016)..............................................................................................24

*Suez Equity Investors, L.P. v. Toronto–Dominion Bank*,
  250 F.3d 87 (2d Cir. 2001).................................................................................................12

*Tarsavage v. CITIC Trust Co.*,
  3 F. Supp. 3d 137 (S.D.N.Y. 2014) ...................................................................................24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...........................................................................................................18

*Woodward v. Raymond James Fin., Inc.*,
  732 F. Supp. 2d 425 (S.D.N.Y. 2010)................................................................................17

*Xerion Partners, I LLC v. Resurgence Asset Mgmt., LLC*,
  474 F. Supp. 2d 505 (S.D.N.Y. 2007)................................................................................18

**Statutes & Rules**

15 U.S.C. § 78u-4(b)(1) ...................................................................................................11

15 U.S.C. § 78u-4(b)(2) .....................................................................................................5

15 U.S.C. § 78u-4(b)(2)(A)..............................................................................................18

28 U.S.C. § 1658(b)(2) .....................................................................................................25

Fed. R. Civ. P. 9(b) ......................................................................................................5, 24

Fed. R. Civ. P. 12(f).........................................................................................................22

**Other Authorities**

Areeda & H. Hovenkamp, Antitrust Law ¶ 1425 (2d ed. 2003).......................................9

## PRELIMINARY STATEMENT

In the Complaint, Plaintiffs rely on allegations cut and pasted from complaints in other, non-securities actions brought in different courts by different plaintiffs who have not proven a single one of those allegations. Plaintiffs even acknowledge that they have taken their new allegations "in whole, or in part" from one complaint and incorporate by reference a second. Neither of those two complaints even purports to relate to Mylan's disclosures. In short, Plaintiffs have cobbled together a kitchen sink securities complaint alleging various unrelated forms of alleged anticompetitive activity and regulatory investigation.

In ruling on Defendants' prior motion to dismiss, the Court already rejected similar attempts. In that ruling, the Court found that Plaintiffs could not sustain their securities claims with respect to allegations of anticompetitive conduct involving EpiPen in exclusive dealing and so-called "pay-for-delay" agreements or with respect to allegations of market allocation involving the generic drug Doxy DR—all of which had also been copied wholesale from unrelated complaints. The Court also found that Mylan's statements of historical income were not actionable and Mylan had no duty to disclose the future risk of regulatory action in statements explaining income. Plaintiffs' new allegations fare no better.[1]

*First*, Plaintiffs try to fill the hole created by their dismissed exclusive dealing claims by alleging another exclusive dealing claim. Previously, it was the unsubstantiated

---

[1] Defendants respectfully maintain that Plaintiffs have failed to plead any securities violations in their Complaint; however, without waiving any of their arguments and defenses, in this Motion, Defendants do not re-raise issues that the Court previously addressed in its March 28, 2018 opinion. Defendants also reserve all rights concerning the Court's decision to permit Plaintiffs to amend, including because many of the new allegations were known, or could have been known to Plaintiffs had they conducted even a cursory investigation, prior to their filing of their first two complaints. Allegations concerning Doxy DR have been public for nearly three years; alleged price-fixing for nearly two.

allegation that Mylan had entered into exclusive dealing arrangements with schools concerning EpiPen products.  Now, Plaintiffs copy allegations from other cases claiming that Mylan entered into EpiPen product exclusive dealing agreements with a different set of third parties.  But like Plaintiffs' prior dismissed allegations, Plaintiffs' conclusory allegations fail to plausibly plead any illegal misconduct that Mylan would have had a duty to disclose and should be dismissed on this basis alone.  Similarly, Plaintiffs' attempt to inject three additional generic drugs into their case fails because of the lack of any factual allegations to support the assertion that Mylan engaged in price-fixing with respect to those drugs.  Plaintiffs fail to allege any parallel conduct and resort to unspecified and wholly conclusory claims that some employees of Mylan spoke with some employees of other companies, without any effort to identify who spoke to whom, what they spoke about or what they allegedly agreed to do.  (Section I.A.)

*Second*, the Court's prior decision expressly held that "Mylan's statements explaining past income do not obligate Mylan to disclose *future risk*".  *See* MTD Op. at 12. Ignoring the Court's decision, Plaintiffs have merely switched the deficient language of a failure to disclose an "acute risk" of regulatory fines with likewise deficient language alleging a failure to disclose the "highly likely" risk of "regulatory scrutiny".  This is simply a distinction without a difference, and, consequently, Plaintiffs' new and modified statements fail in light of this Court's decision.  (Section I.B.)

*Third*, to plead loss causation, Plaintiffs must allege a "causal link between the alleged misconduct and the economic harm ultimately suffered".  MTD Op. at 35.  But Plaintiffs' attempt to plead economic loss for statements made between February 2012 and March 2013, when Mylan's stock price was lower than even after Plaintiffs' alleged corrective disclosures, fails to establish the possibility of an economic loss.  And Plaintiffs' attempt to plead losses

attributable to the filing of a motion for leave to amend a complaint in an action that had already been disclosed to the public nearly a year earlier fails as a matter of law.  (*See* Section I.C.)

*Finally*, Plaintiffs add a new defendant, Rajiv Malik, presumably in an effort to address the Court's dismissal of the Doxy DR claims.  In their effort, however, Plaintiffs return to their standard playbook of simply cutting and pasting unproven allegations from another Doxy DR case.  But doing so neither saves those claims nor provides a basis for Mr. Malik to be a defendant in this action.  Mr. Malik is alleged to have made only six statements, none of which is actionable as a matter of law.  Most involve factual statements of financial performance, which this Court found were not actionable, or opinions about future performance, which are not actionable as a matter of law here.  The remaining statements address the reasons for past financial results specific to generic drug performance.  But as to that last set of allegations, Plaintiffs fail to plead scienter.  In particular, Plaintiffs' allegations concerning Doxy DR are simply cut and pasted from unproven allegations in another case and not only fail to support the Doxy DR claims against Mr. Malik, but also fail to revive those claims as to any other defendant. Moreover, any claims against Mr. Malik for statements dated prior to July 7, 2013 are barred by the statute of repose.  (*See* Section II.)

## STATEMENT OF FACTS[2]

In its March 28, 2018 decision, this Court dismissed Plaintiffs' securities claims that the Defendants failed to disclose alleged anticompetitive conduct related to (i) an alleged "pay-for-delay" agreement with Teva; (ii) alleged exclusive dealing agreements with schools involving EpiPen products; and (iii) an alleged agreement to allocate the market for Doxy DR.

---

[2] Mylan incorporates by reference the Statement of Facts in its Memorandum of Law in Support of Defendants' Motion to Dismiss, dated May 30, 2017.

3

MTD Op. at 29-30.  The Court also dismissed Plaintiffs' claims related to alleged violations of Israeli securities laws (*id.* at 36-40), and found that certain statements were not actionable, including "quantitative" statements of income in Mylan's Forms 10-K and 10-Q (*id*. at 11), statements failing to disclose an "acute risk" of fines in Mylan's Forms 8-K (*id.* at 12), statements concerning the overall complexity of the MDRP regime (*id.* at 17), and statements in Mylan's Code of Conduct and Business Ethics (*id.* at 20).  The only claims that survived were claims alleging that Mylan (i) made misleading statements concerning the alleged misclassification of EpiPen products, and (ii) failed to disclose alleged price-fixing of five generic drugs.

Plaintiffs' Complaint now adds allegations that Mylan should have disclosed unproven allegations that it was committing antitrust violations by way of (1) Mylan's rebates to third-party payors for EpiPen products (Compl. ¶¶ 98-114); (2) alleged market-allocation of Doxy DR (*id.* ¶¶ 134-145);[3] and (3) alleged price-fixing with respect to three additional generic drugs (*id.* ¶¶ 187-200).  The Complaint adds 26 additional allegedly misleading statements (*id.* ¶¶ 289, 307, 309, 314, 319, 321, 324, 327, 336, 339, 342, 345, 347-49, 351, 353-55, 357, 359-61, 363-65), including statements of historical income that the Court previously found were not actionable and statements that were allegedly misleading for failing to disclose future regulatory risk, which the Court found Mylan had no duty to disclose.  Moreover, the Complaint extends the class period by nine months to October 30, 2017, based on the filing of a motion for leave to amend in an antitrust action (*id.* ¶¶ 1, 22-23), the substantive allegations of which had already long been disclosed to the market in public complaints filed over a year before.  Plaintiffs also

---

[3] The Court previously dismissed Plaintiffs' allegations based on alleged market allocation of Doxy DR based on Plaintiffs' failure to allege scienter.  MTD Op. at 34.

4

add Rajiv Malik, Mylan's President, as an individual defendant, based entirely on allegations taken in whole or in part from an unadjudicated complaint in another action, and alleges statements that are not actionable or for which Mr. Malik could not be responsible because of the statute of repose and the lack of sufficient allegations to find scienter against him.

## ARGUMENT

## I.   PLAINTIFFS' NEW ALLEGATIONS FAIL TO STATE A CLAIM FOR VIOLATION OF SECTION 10(b).

Federal securities claims are subject to the heightened pleading requirements of Federal Rule of Procedure 9(b) and of the PSLRA, requiring Plaintiffs to plead each element of a securities fraud claim with particularity.  *See Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 576 (S.D.N.Y. 2016).  "[A] plaintiff must show (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Id.*  Because Plaintiffs' argument rests on an alleged failure to disclose uncharged illegal conduct, "the complaint must state a plausible claim that the underlying conduct occurred" and that Mylan had a "duty to disclose" the alleged conduct.  *Id.* at 578; *see In re Axis Capital Holdings, Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 585 (S.D.N.Y. 2006).  For each allegedly misleading statement, Plaintiffs must further "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind".  15 U.S.C. § 78u-4(b)(2).  Plaintiffs' new allegations fail to plead a violation of Section 10(b).

### A.   Plaintiffs Fail To Plead Underlying Misconduct That Mylan Was Required To Disclose.

In ruling on the prior motion to dismiss, the Court correctly held that "corporations are under no general duty 'to disclose corporate mismanagement or uncharged

5

criminal conduct.'"  MTD Op. at 9 (*citing In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 403 (S.D.N.Y. 2016)).  The Court also correctly noted that "throughout the class period, Mylan was never—and, as of today, never has been—found liable for the misconduct alleged by Plaintiffs", *see* MTD Op. at 4, only making Plaintiffs' continued reliance on these copycat allegations even more egregious.

As a result, in order to support securities fraud claims based on allegations of wrongdoing that have never been proven, Plaintiffs must, among other things, "adequately plead that the misconduct did, in fact, occur".  *Id.* at 9; *see also Axis Capital*, 456 F. Supp. 2d at 585.[4] Plaintiffs previously failed to satisfy that burden with respect to their dismissed allegations of exclusive dealing agreements with schools involving EpiPen products and an alleged "pay-for-delay" settlement to purportedly delay entry of a competing epinephrine auto-injector.  Their new allegations that Mylan entered into allegedly unlawful exclusive dealing arrangements regarding EpiPen products and conspired to fix the prices of three additional generic drugs fare no better.

### Alleged Exclusive Dealing Regarding EpiPen Products with Third-Party Payors

(Compl. ¶¶ 98-114).  Plaintiffs allege that Defendants failed to disclose purportedly anticompetitive "exclusive dealing agreements with commercial insurance companies and pharmaceutical benefit managers" regarding EpiPen products (*id.* ¶ 4).  As an initial matter, these allegations appear to be inappropriately drawn from a complaint in *In re EpiPen (Epinephrine*

---

[4] Plaintiffs also "must plead with particularity the affirmative statements that were made misleading by the defendant's failure to disclose the alleged wrongdoing".  MTD Op. at 9.  The Court has already held that Plaintiffs adequately alleged that Mylan's "statements explaining income" and "statements explaining the market" were misleading in the absence of a disclosure of the alleged anticompetitive conduct. *See id.* at 10-15.  Although Defendants respectfully disagree, without waiver, we do not re-raise such arguments here.

*Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2:17-md-02785 (D. Kan. Oct. 17,

2017), Dkt No. 60.  *See In re CRM Holdings, Ltd Sec. Litig.*, No. 10-cv-975, 2012 WL 1646888,

at *26 (S.D.N.Y. May 10, 2012) ("'[U]nproven allegations' made in [unadjudicated] complaints

do not constitute factual allegations.").  But in any event, this Court already rejected Plaintiffs'

allegations concerning exclusive dealing agreements with schools, *see* MTD Op. at 28-30, noting

that "exclusive-dealing agreements are 'presumptively legal'", MTD Op. at 29 (*quoting Elecs.*

*Commc'ns Corp. v. Toshiba Am. Consumer Prod., Inc*., 129 F.3d 240, 245 (2d Cir. 1997)), and

"may . . . have pro-competitive purposes and effects, such as assuring steady supply, affording

protection against price fluctuations, reducing selling expenses, and promoting stable, long-term

business relationships", *id.* at 28 (*quoting Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386

F.3d 485, 508 & n.4 (2d Cir. 2004)).  Those same findings apply with equal force to the new

exclusive dealing allegations.

   If Plaintiffs had engaged in any investigation of these claims rather than cutting

and pasting allegations, Plaintiffs would have known that Sanofi, the company complaining that

it was affected by Mylan's alleged rebates, *itself uses similar rebates* wherein a third-party payor

receives a rebate based on its sale of Sanofi products above a certain threshold of volume or

market share.  *See Eisai Inc. v. Sanofi Aventis U.S. LLC*, 821 F.3d 394, 399 (3d Cir. 2016)

(affirming decision that Sanofi's rebates and de facto exclusive dealing arrangements were not

an antitrust violation).  And it is no surprise that Sanofi—again, the company that was allegedly

excluded from the market by Mylan's unproven alleged exclusive dealing—has staked out a very

strong position that exactly this type of conduct is *procompetitive.  Id*. at 408-09.[5]  The bare

---

[5] *See also* Defs. Mot. to Dismiss at 2,4, *In re Insulin Pricing Litig.*, No. 17-699 (D.N.J.
Mar. 9, 2018), Dkt. No. 109 (Sanofi argues that it is "entirely rational and lawful for

allegation that Mylan entered into exclusive dealing arrangements involving rebates cannot, even if true, support Plaintiffs' securities fraud claims any more than its now-dismissed bare allegations of exclusive dealing arrangements with schools.

As with their prior complaint, Plaintiffs also fail to plead facts alleging that any "anticompetitive effects outweigh [their] procompetitive effects", MTD Op. at 29 (*quoting E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 29 (2d Cir. 2006)), or that "Mylan's exclusive-dealing agreements had 'an actual adverse effect on competition as a whole in the relevant market'", MTD Op. at 29 (*quoting George Haug Co. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 139 (2d Cir. 1998)).  Plaintiffs merely state in conclusory fashion that there were no procompetitive benefits because rebates allegedly did not result in a lower overall price, ignoring the possibility of non-price-related procompetitive benefits to exclusive dealing agreements, and for "other reasons", which Plaintiffs made no effort to identify.  (*See* Compl. ¶ 105.)  Plaintiffs also ignore that in the Sanofi complaint on which Plaintiffs rely, Sanofi admits that it pulled the Auvi-Q from the market not because of Mylan's alleged conduct *but as part of a voluntary recall*.[6]

The Court has already rejected Plaintiffs' first attempt to conjure up a securities law claim based on unproven allegations that Mylan engaged in exclusive dealing arrangements in violation of the antitrust laws.  Their second attempt is even weaker than their first, as the very arrangements they challenge have been defended by the purported victim of the conduct as procompetitive.  Plaintiffs also fail to allege Defendants acted with scienter with respect to these

---

manufacturers to discount their products (through the payment of rebates)" and that rebates are "how the entire branded pharmaceutical industry functions").

[6] *See* Compl. at ¶ 110, *Sanofi-Aventis U.S. LLC v. Mylan Inc.*, No. 2:17-cv-02452 (D.N.J. Apr. 24, 2017), Dkt. No. 1, as incorporated by reference in Plaintiffs' Complaint.  (Compl. ¶ 113 n.37.)

claims, which provides an additional, independent reason to dismiss Plaintiffs' claims that Mylan allegedly failed to disclose the EpiPen rebates.

      ***Alleged Price-Fixing Regarding Other Generic Drugs*** (Compl. ¶¶ 187-200).  To allege an unlawful price fixing agreement under federal antitrust law, Plaintiffs must allege either (1) "direct evidence" of an unlawful agreement, or (2) sufficient parallel conduct and "circumstantial facts supporting the *inference* that a conspiracy existed" —often referred to as "plus factors".  *Mayor & City Council of Balt., Md. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013).  As the Court previously explained, to the extent Plaintiffs are relying on parallelism, they must allege "parallel behavior that would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties."  MTD Op. at 32 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 n.4 (2007) (*quoting* 6 P. Areeda & H. Hovenkamp, Antitrust Law ¶ 1425, at 167–185 (2d ed. 2003))).

      The Court previously found that Plaintiffs had sufficiently pleaded allegations related to Mylan's purported engagement in price-fixing of five generic drugs based on allegations of both parallel pricing activity and "plus factors" that the Court found sufficient to survive Defendants' motion to dismiss.  MTD Op. at 34.  *See In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 62 (2d Cir. 2012) (recognizing parallel pricing where defendants' price increases "mirrored each other in amount and occurred in close succession").  By contrast, Plaintiffs do not even try to allege parallel price conduct for any of the three new generic products that they are attempting to inject into this case through their second amended complaint.  For each of these drugs, Plaintiffs merely allege that a pharmaceutical company—never alleged to be Mylan— raised prices for certain customers and *never* allege that Mylan or any other companies followed

suit.  (*See, e.g.*, Compl. ¶ 189 ("Lannett raised the price of Doxy Mono"); *id.* ¶ 194 ("Heritage

increased the price nationwide on Glip-Met for at least 27 customers . . . neither Mylan nor Teva

significantly challenged Heritage on *its* price increases" (emphasis added)); *id.* ¶  200 ("Heritage

raised the price for Verapamil for at least one customer").)  By failing to even plead parallel

pricing activity, Plaintiffs have failed to allege circumstantial evidence of price fixing of the type

that the Court relied upon in denying Mylan's motion to dismiss as to the original five generic

drugs.

   Presumably because they cannot establish sufficient allegations of parallel

conduct, Plaintiffs attempt to allege an "express agreement" with respect to the three new generic

drugs.  (*Id.* ¶ 405.)  But Plaintiffs' conclusory allegations fall well short of pleading illegal price-

fixing.  In fact, Plaintiffs fail to plead *any* direct evidence of an unlawful agreement.  Plaintiffs

do not allege the "specific time, place, or person[s] involved in the alleged conspiracies".

*Twombly*, 550 U.S. at 565 n.10.[7]  They merely claim that various unnamed employees at Mylan

and certain of its competitors communicated by email and phone.  (*See* Compl. ¶¶ 187-190

(Doxy Mono); ¶ 193 (Glip-Met); ¶¶ 196–99 (Verapamil).)  There are *no* allegations identifying

the Mylan employees involved in the alleged conversations, and there are *no* allegations

whatsoever concerning the contours of the agreements allegedly reached during those

unspecified conversations.  (*See, e.g.*, Compl. ¶¶ 188, 190, 193, 196 (alleging without factual

support agreements to "raise prices" of the three drugs).)  Some of Plaintiffs' allegations merely

---

   [7] *See also In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530, 558
(S.D.N.Y. 2016) (identifying examples of direct evidence "such as a recorded phone call or
email in which competitors agreed to fix prices"); *In re Foreign Exch. Benchmark Rates
Antitrust Litig.*, 74 F. Supp. 3d 581, 591 (S.D.N.Y. 2015) ("[D]irect evidence [is] akin to the
'recorded phone call in which two competitors agreed to fix prices at a certain level'—the
Second Circuit's paradigmatic example of direct proof of a Section 1 violation." (citation
omitted)).

allege conversations took place without any allegation that pricing of the relevant drugs was even discussed, much less agreed-upon.  (*See, e.g.*, Compl. ¶¶ 189, 198.)  Given that Plaintiffs simply copied and pasted from other unrelated—and unproven—complaints, it is unsurprising that they present so few facts.  Be that as it may, such bare bones pleading cannot plausibly allege a price-fixing agreement*.  See In re London Silver Fixing, Ltd. Antitrust Litig.*, 14-md-2573, 2018 WL 3585277, at *6-9 (S.D.N.Y. July 25, 2018) (dismissing allegations of a price-fixing conspiracy where plaintiffs identified multiple communications between defendants concerning price, but none of the messages referenced an agreement to fix prices).

**B.    Certain of Plaintiffs' New Alleged Misstatements Are Not Actionable as a Matter of Law.**

The PSLRA requires that the Complaint "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading".  15 U.S.C. § 78u-4(b)(1).  Plaintiffs continue to rely on the same types of general statements about revenues (*e.g.*, Compl. ¶ 349), and use the same explanation of failing to disclose future risk (*e.g.*, *id.* ¶ 350), that the Court previously held were not actionable (this time Plaintiffs allege relating to their new allegations of underlying misconduct).  Their second attempt to create a securities claim based upon these types of statements fares no better than their first.

***Statements of Historical Income.***  In its Opinion on Defendants' prior Motion to Dismiss, this Court held that "[t]he quantitative statements of earnings contained in Mylan's Forms 10-K and 10-Q are not actionable".  MTD Op. at 11.  The Complaint continues to include the alleged misstatements the Court dismissed from Plaintiffs' prior complaint[8]—improper in its own right, *see 2006 Calandra Irrevocable Tr. v. Signature Bank Corp.*, No. 09-cv-08526, 2010

---

[8] *See* Compl. ¶¶ 249, 254, 259, 262, 271, 274, 277, 281, 290, 293, 296, 299, 310, 315, 322, 328, 337, 343.

WL 5174331 at *1 n. 2 (S.D.N.Y. Dec. 13, 2010) (refusing to consider a previously dismissed claim that plaintiffs failed to remove in the amended complaint)—and adds new statements of earnings in Mylan's Forms 10-K and 10-Q akin to those the Court already dismissed.  (Compl. ¶¶ 349, 355, 357, 361, 365.)  Because Plaintiffs still do not allege that Mylan's earnings reports were false, these alleged misstatements from 10-K or 10-Q reports that merely state Mylan's financial performance must be—consistent with the law of this case—dismissed.

> ***Statements Failing To Disclose "Future Regulatory Scrutiny".***  The Court has also already determined that "Mylan's statements explaining past income do not obligate Mylan to disclose *future risk*" of regulatory action.  MTD Op. at 12 ("Mylan is not . . . liable for failing to disclose an 'acute risk' of fines in its Forms 8-K.").  Plaintiffs ignore that ruling and have alleged that certain newly identified statements explaining income are misleading because Mylan failed to disclose that it had "competed in ways highly likely to raise regulatory scrutiny".  (*See, e.g.*, Compl. ¶ 320.)  Plaintiffs have done nothing more than substituted the words "acute risk" with "raise regulatory scrutiny".  That changes nothing; both refer to the "future risk" of regulatory action, which the Court has already held Mylan was not obligated to disclose.

### C.   Certain of Plaintiffs' New Loss Causation Allegations Are Deficient as a Matter of Law.

As the Court previously explained, "to establish loss causation, 'a plaintiff must allege . . . that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered,' *i.e.*, that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security."  MTD Op. at 35 (*citing Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (second alteration in original) (internal citations omitted) (*quoting Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001))).  Plaintiffs must plead "that the loss [was] foreseeable *and* that the loss [was]

caused by the materialization of the concealed risk". *Id.* (*citing Lentell*, 396 F.3d at 173).  Here, Plaintiffs have challenged a number of statements that could not possibly have caused any loss because those statements were made during a time period when Mylan's stock price was lower than after any of the alleged corrective disclosures.  In other words, even if someone purchased stock based on those alleged misstatements, they could not have suffered a loss because the price they paid was lower than the price of Mylan stock after the alleged corrective disclosures.  Plaintiffs have also failed to plead a sufficient link between alleged misstatements and alleged harm with respect to a new alleged corrective disclosure.

       ***Statements Made Between February 2012 and March 2013.***  Plaintiffs allege that Mylan began making allegedly misleading statements in its February 21, 2012 10-K report as well as subsequent public fillings and press releases.  (*See* Compl. ¶¶ 241-43.)  Even assuming that Mylan's statements could be considered misleading (they cannot be), any statements made between February 2012 and March 2013, including the alleged misleading statements from Mylan's February 21, 2012 10-K report through alleged statements made in Mylan's February 28, 2013 10-K report (*id.* ¶¶ 241-69), could not give rise to a claim for securities fraud because Plaintiffs who purchased Mylan stock during this time period could not have suffered any economic loss, let alone a loss attributable to Mylan's alleged misstatements.  *See Norwood Venture Corp. v. Converse Inc.,* 959 F. Supp. 205, 210 (S.D.N.Y. 1997) (dismissing securities claim where plaintiffs' allegations "fall[] short of showing actual loss suffered").  That is because between February 2012 and March 2013, Mylan's stock price never rose above $30.10—a price lower than Mylan's stock price at any other point during the class period—

including after the alleged corrective disclosures.  (*See* Ex. 3.)[9]  Any Plaintiff who purchased

Mylan stock in reliance on statements made during this time period simply could have no

economic losses.  *See Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 39 (2d

Cir. 2012) ("[I]f the mean trading price of a security during the 90-day period following the

correction is greater than the price at which the plaintiff purchased his stock then that plaintiff

would recover nothing under the PSLRA's limitation on damages." (citation omitted)); *In re*

*AOL Time Warner, Inc. Secs. and ERISA Litig.*, 381 F. Supp. 2d 192, 245-46 (S.D.N.Y. 2004)

(dismissing allegations by plaintiffs who sold securities at a higher price than their purchase

price and thus could not establish an "injury in fact" to give rise to Article III standing).

      ***October 31, 2017 Alleged Corrective Disclosure.***  Plaintiffs' alleged losses based

on the October 31, 2017 announcement of the filing of a motion to amend a complaint previously

filed (and previously amended) by the CTAG (Compl. ¶¶ 394-95) must be dismissed because

they concern the disclosure of "bad news" that was already public.  *See In re Omnicon Crp. Inc.*

*Litig.*, 597 F.3d 501, 512 (2d Cir. 2010) (negative characterization of already-public information

cannot constitute a corrective disclosure).  The CTAG filed a complaint against numerous

generic pharmaceutical companies, including Mylan, alleging that the companies had engaged in

various forms of anticompetitive conduct, including market-allocation and generic price-fixing,

on December 14, 2016.[10]  Plaintiffs allege that this initial complaint "t[old] the story, with great

detail . . . of how Mylan agreed to allocate the market for Doxy DR with its competitors".

---

[9] Courts may take judicial notice of public stock prices referenced in a motion to dismiss without converting the motion into one for summary judgment.  *See S.E.C. v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*, 296 F.R.D. 241, 252 (S.D.N.Y. 2013).

[10] Defendants dispute the allegations in the CTAG's Complaint and Amended Complaint and dispute that they had any duty to disclose the conduct alleged in either complaint prior to December 14, 2016.

(Compl. ¶ 16.)  The CTAG's initial complaint, which named Mylan as a defendant, included allegations concerning market allocation for Doxy DR and the CTAG announced that it was continuing to investigate a wide-ranging generic drug price-fixing conspiracy.

The CTAG's amended complaint did not disclose any new material information relevant to Plaintiffs' claims here.  Although the amended complaint added Malik as a defendant and revealed the names of 13 drugs allegedly affected by the price-fixing allegations, the allegations relevant to Plaintiffs' Complaint are those concerning Doxy DR and alleged price-fixing of certain generic drugs.[11]  Not only were these allegations included in the CTAG's original complaint, allegations concerning doxycycline had been disclosed in public complaints filed in March 2016,[12] and an investigation about Mylan's pricing of (i) doxycycline had been disclosed in December 2015 (*see* 2015 8-K, Ex. 1 at 2); and (ii) Glip-Met and Verapamil had been disclosed in November 2016.  *See* 2016 10-Q, Ex. 2 at 58 (disclosing Mylan's receipt of a DOJ subpoena seeking information about the "pricing and sale of . . . Glipizide-metformin . . . and Verapamil products and any communications with competitors about such products").  Any reasonable investor would already have known that the CTAG had alleged Mylan's involvement in fixing the prices of multiple generic drugs, and that the DOJ was seeking information concerning these specific generic drugs, well before October 2017.  Any new detail from the investigation revealed in the amended complaint would not have been material.  *See In re*

---

[11] *See* Compl. at ¶¶ 8-9, *Connecticut v. Aurobindo Pharma. USA, Inc.*, No. 3:16-CV-02056 (D. Conn. Dec. 14, 2016), Dkt. No. 1 (alleging "a wide-ranging series of conspiracy implicating numerous different drugs and competitors" including "schemes to fix and maintain prices"), incorporated by reference in Plaintiffs' Complaint.  (Compl. ¶ 16 n.1.)

[12] *See, e.g., Int'l Union Op. Engineers v. Lannett Co. Inc*., 2:16-cv-00990 (E.D. Pa Mar. 2, 2016), Dkt. No. 1.

*Manulife Fin. Corp. Sec. Litig.*, No. 09 CIV. 6185, 2012 WL 4108104, at *5-7 (S.D.N.Y.

Sept. 19, 2012).

## II.     THE ALLEGATIONS AGAINST RAJIV MALIK FAIL AS A MATTER OF LAW.

Plaintiffs' Complaint adds a new defendant—Mr. Malik—on the theory that he

was involved in the alleged market-allocation agreement for Doxy DR.  Plaintiffs' allegations

cannot survive a motion to dismiss because Mr. Malik is not alleged to have made any

statements except in six earnings calls, and those statements are not actionable as a matter of law.

But, even if they were, Plaintiffs have not pled a strong inference of scienter as to Mr. Malik,

because (i) his sale of only 3% of his holdings of Mylan stock late in the putative class period

cannot support any inference of scienter, (ii) Plaintiffs' CW did not provide any information as to

Mr. Malik's alleged involvement in or knowledge of price-fixing or market allocation and

(iii) Plaintiffs cannot use unproven allegations from a complaint in another case to allege any

inference of scienter, let alone a strong one, as to market allocation.  Nor does the Complaint

sufficiently plead allegations of control-person liability as to Mr. Malik.  And, in no event could

Mr. Malik be held liable for any alleged misstatements made before July 7, 2013, because the

Exchange Act's five-year statute of repose would bar any such claims.

### A.     The Earnings-Call Statements About Mylan's Historical Financial Results and Possible Future Performance Are Not Actionable as a Matter of Law.

In *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142

(2011), the Supreme Court held that liability under Section 10(b) and Rule 10b-5 for making a

false or misleading statement extends only to "the *maker* of a statement", meaning "the person or

entity with ultimate authority over the statement, including its content and whether and how to

communicate it" (emphasis added).  The Complaint alleges that Mr. Malik made only six

statements during the entire putative class period.  (Compl. ¶¶ 307, 319, 324, 339, 345, 351.)

16

The six statements addressed only three topics: (i) Mylan's historical financial results during the relevant period; (ii) generalized, optimistic characterizations of financial results and opinions about future performance (*e.g.*, "solid" results, "outstanding performance", "impressive growth", anticipation of "another year of strong financial performance"); and (iii) the performance of the Generics segment. None of these statements provides a basis for relief.

As discussed above, this Court has already held that statements of historical financial information alone do not give rise to a duty to disclose, *see* MTD Op. at 11, and Plaintiffs do not contend that any of the financial metrics that Mr. Malik reported were inaccurate. *See supra* Section I.B. Similarly, non-specific optimistic characterizations of financial performance—such as "strong" performance, "outstanding" results, etc.—are inactionable puffery. *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) ("[E]xpressions of puffery and corporate optimism do not give rise to securities violations"); *see, e.g.*, *Woodward v. Raymond James Fin., Inc.*, 732 F. Supp. 2d 425, 434-35 (S.D.N.Y. 2010) ("solid operating results" is puffery); *SRM Glob. Fund L.P. v. Countrywide Fin. Corp.*, No. 09 CIV. 5064, 2010 WL 2473595, at *11 (S.D.N.Y. June 17, 2010) (same); *Pollio v. MF Glob., Ltd.*, 608 F. Supp. 2d 564, 571 (S.D.N.Y. 2009) (same). Moreover, expressions of opinion about *future* performance are not actionable unless the speaker did not believe his expressed opinion or withheld information that would make the opinion misleading. *Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318 (2015). The Complaint does not allege either of those things. Thus, the first two categories of statements attributable to Mr. Malik are not actionable, leaving only the statements relating to the performance of the Generics segment.

**B.      The Complaint Does Not Allege a Strong Inference of Scienter Against Malik as to His Statements Concerning Mylan's Generics Segment.**

The only portions of Mr. Malik's comments about the Generics segment that did

not consist of either accurate statements of historical performance or puffing about "strong" growth addressed the *reasons* for the segment's performance.  (*See, e.g.*, Compl. ¶ 307 ("[R]evenue growth was a result of new product introductions"); *id.* ¶ 345 (same).)  Even if statements about the *reasons* for the financial performance could be actionable, Plaintiffs fail to sufficiently plead Mr. Malik's scienter as to those statements.

To survive a motion to dismiss, Plaintiffs must plead "with particularity", and "with respect to each act or omission alleged to violate" the securities laws, "facts giving rise to a strong inference" of scienter, 15 U.S.C. § 78u-4(b)(2)(A)—*i.e.*, a strong inference that Mr. Malik acted with an "intent to deceive, manipulate or defraud" investors, or that he acted recklessly, in "an extreme departure from the standards of ordinary care", *Kalnit v. Eichler*, 264 F.3d 131, 138, 142 (2d Cir. 2001) (internal quotations omitted).  The inference of scienter "must be more than merely 'reasonable' or 'permissible'— it must be . . . cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

The requisite scienter can be established by alleging facts showing the defendant's "motive and opportunity to commit fraud" or "constituting strong circumstantial evidence of conscious misbehavior or recklessness".  *Kalnit*, 264 F.3d at 138-39 (internal quotations omitted).  "Where motive is not apparent", allegations of conscious misbehavior "must be correspondingly greater".  *Id.* at 142 (internal quotations omitted).  The Complaint does not plead scienter as to Mr. Malik under either standard.[13]

---

[13] We do not address Plaintiffs' scienter allegations concerning the EpiPen because they do not apply to Mr. Malik.  The six earnings-call statements addressed the performance of only the Generics segment, which Plaintiffs do not allege includes the EpiPen.  But in any event, any such allegations against Mr. Malik would fail because the Complaint does not plead that he had any involvement with EpiPen products.  *Xerion Partners, I LLC v. Resurgence Asset Mgmt.*, LLC,

1.      *Malik's Stock Sales Are Immaterial and Insufficient as a Matter of Law.*

Plaintiffs attempt to demonstrate "motive and opportunity" by asserting that Mr. Malik "sold 25,000 shares of Mylan stock on June 9, 2017 (about 3% of his Mylan holdings) for proceeds of $1,000,000". (Compl. ¶ 409.) But the mere fact that a corporate insider sells company stock does not indicate scienter. Stock sales during the class period cannot form a basis for inferring scienter unless they were suspicious or "unusual". *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995). Courts in the Second Circuit have repeatedly held that insiders' sales of small percentages of their holdings were neither suspicious nor unusual as a matter of law—even where those percentages far exceeded the 3% that Mr. Malik allegedly sold. *See, e.g., Acito*, 47 F.3d at 54 (sales of 11% not unusual and did not create strong inference of scienter); *In re Prestige Brands Holding, Inc.*, No. 05 CIV. 06924, 2006 WL 2147719, at *5 (S.D.N.Y. July 10, 2006) ("[W]here each Defendant retained over 80% of the stock that he owned, Plaintiffs failed to demonstrate that the stock sales were suspicious and unusual within the meaning of the statute.").

Further, any inference of scienter is undermined where insiders did not sell shares

---

474 F. Supp. 2d 505, 517 (S.D.N.Y. 2007) ("[T]o survive a motion to dismiss, plaintiff 'needs to specify the internal reports, who prepared them and when, how firm the numbers were or which company officers reviewed them.'" (citation omitted)), *aff'd sub nom. Bay Harbour Mgmt. LLC v. Carothers*, 282 F. App'x 71 (2d Cir. 2008) (summary order). Though Plaintiffs allege that EpiPen products are part of Mylan's "core business" (Compl. ¶ 328), that allegation alone is insufficient to support a strong inference of scienter. *See Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015) ("[T]he 'core operations' theory at most constitutes 'supplemental support' for alleging scienter but does not independently establish scienter.") (*citing New Orleans Emps. Ret. Sys. v. Celestica, Inc.,* 455 F. App'x. 10, 14 n.3 (2d Cir. 2011) (summary order)). Similarly, Plaintiffs cannot create a strong inference of scienter "by virtue of [Mr. Malik's] responsibilities as President" as to *any* claims. (Compl. ¶ 397.) *See Foley v. Transocean Ltd.*, 861 F. Supp. 2d 197, 212 (S.D.N.Y. 2012) (scienter not inferable from "defendants' board membership or executive managerial position") (internal quotations omitted); *accord, e.g., Bd. of Trustees of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 873 (S.D.N.Y. 2011) (same), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012).

until *after* the price had already declined and *after* the disclosure of the bulk of Plaintiffs'

allegations.  *See In re Health Mgmt. Sys., Inc. Sec. Litig.*, No. 97 CIV. 1865, 1998 WL 283286,

at *6 (S.D.N.Y. June 1, 1998) (no scienter where defendants did not sell until stock price had

fallen).  Here, Mr. Malik is not alleged to have sold any shares until June 9, 2017

(Compl. ¶ 409), by which time the stock price had already declined to $40.09 from its class-

period high of $76.06 and its pre-corrective-disclosure price of $49.32 on August 18, 2016,

thereby undercutting any inference that Mr. Malik was trying to maximize gains from the alleged

misrepresentations (*see* Ex. 3).  *See, e.g., Fishbaum v. Liz Claiborne, Inc.*, 189 F.3d 460 (2d Cir.

1999) (finding that sales that do not appear to be "calculated to maximize personal benefit from

undisclosed inside information" do not evidence scienter).  Mr. Malik's alleged sale of a *de

minimis* amount of shares late in the class period thus does not create any inference—much less a

strong one—of scienter.

2.      *The Complaint Fails To Allege a Strong Inference of Scienter Against
        Mr. Malik as to the Purported Price-Fixing.*

Plaintiffs rely on a confidential witness for their scienter allegations as to price-

fixing, but the witness said nothing about Mr. Malik.  Moreover, Plaintiffs do not plead any facts

suggesting that Mr. Malik was involved in Mylan's pricing decisions about generics or that he

participated in the alleged price-fixing.  To the contrary, Plaintiffs allege that the CW

"confirmed" only that four defendants—none of whom was Mr. Malik—"knew of and approved

all material drug pricing decisions" and had the "last word on pricing decisions for Mylan's

drugs".  (Compl. ¶¶ 121, 122, 403, 404.)  The Complaint alleges that those four defendants—but

not Mr. Malik—"were privy to, and participated in, Mylan's fraudulent conduct described in this

Complaint".  (*Id.* ¶ 120.)  In fact, the Complaint does not allege that the CW had *any* contact

with Mr. Malik at all.  (*Id.* ¶¶ 121, 403.)  *See, e.g., Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573,

594-95 (S.D.N.Y. 2011) (discounting confidential sources' allegations of scienter because no indication sources had any contact with individual defendant).

Equally unavailing is the CW's statement that, on one occasion, "'[w]hen we were looking at [an anthrax antibiotic] we were making for the government, . . . everyone, all the way up to the president and CEO, discussed what price to sell it at.'"  (Compl. 122, 404.) Plaintiffs' price-fixing allegations focus on pricing generics in the general marketplace, not government contracts.  Moreover, Plaintiffs give no indication of when this event allegedly occurred, what the substance of the conversations involving the "president" was, what basis the CW supposedly had for knowing any of this alleged information, or even whether the "president" was Mr. Malik, whose name the CW never mentions.  *See, e.g.*, *City of Brockton Ret. Sys. v. Avon Prod., Inc.*, No. 11 CIV. 4665, 2014 WL 4832321, at *20 (S.D.N.Y. Sept. 29, 2014) (allegations that meetings were obtained through bribes were insufficient "absent further detail or explanation regarding how these meetings were arranged and where and when they took place"); *In re Am. Express Co. Sec. Litig.*, No. 02 CIV. 5533, 2008 WL 4501928, at *8 (S.D.N.Y. Sept. 26, 2008) (same).

> 3.      *The Complaint Fails To Allege a Strong Inference of Scienter Against Mr. Malik as to the Alleged Market Allocation.*

Plaintiffs' allegations about market allocation also do not create an inference of scienter against Mr. Malik because the Doxy DR allegations are based on the unadjudicated complaint filed by the CTAG.  (Compl. ¶ 124 n.40.)  Plaintiffs took entire paragraphs from that complaint, made slight modifications to the language, and rebranded them as factual allegations in this action.  Those allegations, however, "do not constitute factual allegations" and cannot be considered as a basis for alleging scienter against Mr. Malik.  *See In re CRM Holdings, Ltd Sec. Litig.*, 2012 WL 1646888, at *26.

21

Courts in the Second Circuit have repeatedly held that allegations drawn from unadjudicated complaints are insufficient to survive a motion to dismiss and "cannot establish the particularized facts necessary to support this securities fraud claim". *Janbay v. Canadian Solar, Inc.*, No. 10 CIV. 4430, 2012 WL 1080306, at *5 (S.D.N.Y. Mar. 30, 2012) (rejecting plaintiffs' attempt to rely on allegations in complaint in unrelated case); *Dexia SAINV v. Deutsche Bank AG*, Nos. 11-cv-5672, 2013 WL 98063, at *1 n.l (S.D.N.Y. Jan. 4, 2013) (dismissing complaint without prejudice, but stating that, "in any repleaded complaint, the Court would strike . . . any paragraphs based on unproven allegations in unresolved cases"). Indeed, another court in this Circuit recently expressed skepticism about plaintiffs' reliance on an unadjudicated complaint in a case involving price-fixing allegations nearly identical to those pled here. *See Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Ind. Ltd.*, 3:17-cv-01314 (D. Conn. Apr. 4, 2018) (Tr. 25:8-17) ("[J]ust because somebody else alleged [price-fixing] in their case and you allege that they alleged it, doesn't mean I assume it's true in this case . . . you have to have done the investigation", and dismissing the complaint in its entirety).[14]

Plaintiffs' reliance on an unadjudicated complaint further demonstrates Plaintiffs' failure to conduct an independent investigation of their allegations prior to filing this action. Plaintiffs assert that an unnamed attorney in the CTAG's office confirmed to Plaintiffs' counsel that the office "has evidentiary support for its allegations against Mylan and Defendant Malik".

---

[14] Allegations "that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)" and should be struck from the complaint. *Low v. Robb*, No. 11-CV-2321, 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012) (*citing RSM Production Corp. v. Fridman,* 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) (striking paragraphs based on "complaints filed in actions that were never resolved on the merits and, thus, did not result in any findings of law or fact")); *see also Footbridge Ltd. v. Countrywide Home Loans, Inc.,* No. 09 Civ. 4050, 2010 WL 3790810, at *5 (S.D.N.Y. Sept. 28, 2010) (same); *In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.,* 218 F.R.D. 76, 78-79 (S.D.N.Y. 2003) (same).

(Compl. ¶ 16 n.1.)  Putting aside the wholly inappropriate nature of any such communication about a nonpublic investigation, this allegation is insufficient because Plaintiffs do not allege that they have or are privy to any of the supposed documents on which the CTAG's complaint relied; nor do they allege any additional confidential sources purporting to support these allegations. Plaintiffs thus have not satisfied either their counsel's obligation to conduct an independent factual investigation into the matters alleged or their duty to plead with particularity facts showing a strong inference of scienter against Mr. Malik.  *See Janbay*, 2012 WL 1080306, at *11 (explaining that plaintiff's failure to identify any information about the sources of their information "frustrates the [*Tellabs*] requirement . . . that a court weigh competing inferences to determine whether a complaint gives rise to" a strong inference of scienter).

Indeed, these failings are not limited to Mr. Malik.  Because Plaintiffs rely entirely on the unproven allegations copied from the CTAG's complaint to supplement their previously dismissed allegations of scienter as to Doxy DR, their Doxy DR claims against all Defendants fail in light of this Court's prior ruling.  MTD Op. at 34.

**C.    The Complaint Fails To Allege Control-Person Liability Against Mr. Malik.**

Because Plaintiffs fail to establish a primary violation against Mr. Malik, Plaintiffs' control-person claims must also fail.  *See* MTD Op. at 7 (stating that Section 10(b) and Section 20(a) claims "rise and fall together"); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) ("To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud.").  For this reason alone Plaintiffs' claim fails, but Plaintiffs have also failed to meet the other two criteria.

23

*First*, Plaintiffs have not shown that Mr. Malik had "actual control over the transactions in question", *i.e.* the allegedly misleading statements. *Friedman v. JP Morgan Chase & Co.*, No. 15-cv-5899, 2016 WL 2903273, at *11 (S.D.N.Y. May 8, 2016). Nowhere does the Complaint allege that Mr. Malik had actual control over any statements except the six statements that he himself made during the earnings calls (which are not actionable for the reasons discussed above).

*Second*, the Complaint does not sufficiently allege that Mr. Malik was a culpable participant in other defendant's purported violations. "[C]ulpable participation is a scienter requirement for which a plaintiff must allege some level of culpable participation at least approximating recklessness in the section 10(b) context in order to survive a motion to dismiss." *In re Inv. Tech. Grp., Inc. Sec. Litig.*, No. 15 CIV. 6369, 2018 WL 1449206 (S.D.N.Y. Mar. 23, 2018); *accord, e.g., JP Morgan Chase*, 2016 WL 2903273, at *12; *Tarsavage v. CITIC Trust Co.*, 3 F. Supp. 3d 137, 150 (S.D.N.Y. 2014). These allegations must satisfy the heightened pleading standards of Rule 9(b) and the PSLRA. *JP Morgan Chase*, 2016 WL 2903273, at *10. Here, Plaintiffs do not allege, except in conclusory form, that Mr. Malik had any involvement in the making of statements other than those attributed to him on the six conference calls. Nor does the Complaint sufficiently allege scienter against Mr. Malik.

### D.     Claims Based on Statements before July 7, 2013 Are Time-Barred.

Claims under the Exchange Act are subject to a five-year statute of repose, 28 U.S.C. § 1658(b)(2), which cannot be tolled. *See, e.g., SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173, 174 (2d Cir. 2016) ("[A]s a statute of repose, § 1658(b)(2) is not subject to equitable tolling"); *Cal. Pub. Emps. Ret. Sys. v. ANZ Secs., Inc.*, 137 S. Ct. 2042,

24

2052 (2017).  Plaintiffs did not name Mr. Malik as a defendant until July 6, 2018, so any claims

based on statements before July 7, 2013 are barred by the statute of repose.[15]

## CONCLUSION

Defendants respectfully request that the Court dismiss (1) allegations of

anticompetitive activity involving EpiPen products (Compl. ¶¶ 98-114); (2) allegations of price

fixing involving Doxy Mono, Glip-Met and Verapamil (*id.* ¶¶ 187-200); (3) alleged

misstatements that are not actionable, including statements of historical income (*id.* ¶¶ 349, 355,

357, 361, 365) and statements made between February 21, 2012 and March 1, 2013 (*id.* ¶¶ 241-

269); (4) Rajiv Malik as a defendant; and (5) all allegations concerning Doxy DR.  (*Id.* ¶¶ 123-

152.)  Defendants further request that the Court dismiss any allegations premised on statements

being misleading due to an alleged failure to disclose future regulatory risk.  (*See id.* ¶¶ 263, 272,

275, 278, 282, 286, 291, 294, 297, 300, 304, 308, 311, 316, 320, 323, 325, 329, 331, 338, 340,

344, 346, 350, 352, 356, 358, 362, 366.)

---

[15] "When a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced" for purposes of statutes of repose and limitations. *Rothman v. Gregor*, 220 F.3d 81, 96 (2d Cir. 2000) (internal quotations omitted).  Although Plaintiffs sought leave to amend their complaint by letter to the Court on May 17, 2018, they did not say they intended to add Mr. Malik as a defendant; nor did they attach the proposed amendment to that letter.  Thus, July 6, 2018, rather than May 17, 2018, is the relevant date for the first assertion of claims against Mr. Malik.

August 6, 2018

Respectfully submitted,


CRAVATH, SWAINE & MOORE LLP,

by

David R. Marriott
Kevin J. Orsini
Rory A. Leraris
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
dmarriott@cravath.com
korsini@cravath.com
rleraris@cravath.com

*Attorneys for Defendants*

26