

September 2, 2020

**VIA ECF**

Hon. J. Paul Oetken, U.S.D.J.
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 706
New York, NY 10007

      Re:   *In re Mylan N.V. Securities Litigation,* 16-cv-07926 (JPO)

Dear Judge Oetken:

      We are Class Counsel for the Class Representatives ("Class Plaintiffs") in the above-referenced action (the "Action"). We write pursuant to Rule 4C of Your Honor's Individual Practices to request a conference with the Court to attempt to resolve discovery disputes concerning the search protocol to be used by Defendants to search for documents responsive to the Class's current discovery requests. The Parties have met and conferred by phone concerning these disputes on six separate occasions: April 21, 2020, May 12, 2020, June 12, 2020, July 10, 2020, August 11, 2020 and August 26, 2020. The Parties also have exchanged multiple drafts of search protocols and numerous emails concerning these disputes. In spite of over five months of negotiations, the Parties have been unable to resolve these disputes, so the Court's assistance in resolving them has become necessary.

**I.    Legal Standard**

      Parties are entitled to obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Even "[u]nder the amended rules, '[r]elevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.'" *Peddy v. L'Oreal USA, Inc.*, No. 18-CV-7499, 2019 WL 3926984, at *1 (S.D.N.Y. Aug. 20, 2019). After relevance has been demonstrated, "it is up to the responding party to justify curtailing discovery." *Johnson v. J. Walter Thompson U.S.A., LLC*, No. 16 Civ. 1805 (JPO)(JCF), 2017 WL 3055098, at *2 (S.D.N.Y. July 18, 2017). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15 Civ. 2106, 2018 WL 2958361, at *8 (S.D.N.Y. June 13, 2018); *see Am. Airlines, Inc. v. Tavelport Ltd.*, No. 11-cv-244, 2012 WL 12884821, at *2 (N.D. Tex. May 29, 2012) (granting motion to compel even where defendants had already produced 1.2 million documents).

**II.    The Search Protocol in the Generics MDL Should Be Produced**

      Class Representatives' Third Set of Requests for Production ("Third RFP") No. 4 requests "[d]ocuments sufficient to show the negotiated scope of the documents" Mylan agreed to produce and the search terms and custodians the Company agreed to use for searches, in

**POMERANTZ**LLP

connection with, among other matters, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 16-md-02724-CMR (E.D. Pa.) (the "Generics MDL"). *See* Declaration of Austin P. Van ("Van Decl."), Ex. 1, at 6-7. This historically large multidistrict litigation concerns the same allegations at issue in this Action concerning Defendants' price-fixing of, and allocation of the markets for, certain generic drugs.

The search protocol agreed to in the Generics MDL is relevant here because it details the individuals Mylan has agreed may be searched for relevant documents, and terms Mylan agrees may lead to the discovery of relevant documents. Defendants should produce it.

### III. Crucial Documents from the Investigation by the State Attorneys General in the Generics MDL Should Be Produced

Early in discovery in the Generics MDL, the court ordered the production of "millions of pages of documents obtained through the use of investigative subpoenas under Connecticut law, including evidence of communications, corporate structure, market reports, transaction data, and phone records obtained from telephone carriers through investigative subpoenas" ("AG Investigation Documents"). Van Decl., Ex. 2 at 3, ¶ 6; Ex. 3 at 11-12, ¶ 2(c). The AG Investigation Documents have been collected, marked for confidentiality, and produced to all parties in the Generics MDL, including Mylan. *Id.* The Class requests that Defendants produce these documents in this Action. Such a production requires minimal burden—copying a hard drive. The relevance of these documents cannot be overstated. The AG Investigation Documents contain perhaps the most important documents to be discovered in this litigation—documents evidencing, for example, specific telephone conversations and exchanges in which the agreements to conspire that are central to this litigation were made. While this set of documents does concern certain drugs beyond those at issue in this litigation (in addition to those at issue), even documents evidencing contemporaneous conspiracies involving drugs other than the drugs at issue here are highly relevant to proof of industry-wide conspiracy ("playing nice in the sandbox") and scienter. Dkt. No. 114 (Third Amended Complaint ("TAC")) at ¶¶ 25, 578-595.

While the central relevance of these documents is undeniable, Defendants have refused even to conduct a targeted search of the AG Investigation Documents. Third RFP No. 8 specifically seeks all documents concerning enumerated paragraphs of the Third Amended Complaint ("TAC") that reference specific allegations of conspiracy drawn from the investigation by the State Attorneys General in the Generics MDL. Van Decl., Ex. 1 at 8. At a minimum, Defendants must perform a targeted search for documents responsive to this request—Defendants must "go get" these documents—including by conducting a targeted search of the AG Investigation Documents. The Class requests targeted searches of emails, transcripts, call logs or other phone records, voicemails and any other AG Investigation Documents, using the dates referenced in these paragraphs, any specific language quoted or referenced in these paragraphs, the names of individuals and/or drugs referenced in these paragraphs, telephone numbers of individuals referenced in these paragraphs, and any other specific information referenced in these paragraphs that could form the basis of a reasonably targeted search.

As explained below, while the Class also requests that Defendants run their general search terms against the AG Investigation Documents, general search terms are unlikely to capture each of the documents evidencing the specific telephone conversations and exchanges referenced

**POMERANTZ**LLP

in the paragraphs listed in Third RFP No. 8. These documents may not reference any generic drugs by name, or may otherwise be difficult to capture reliably using general terms. Accordingly, full production of the AG Investigation Documents, or at a minimum, targeted searches of those documents, are necessary.

### IV. The Class's Requested Search Protocol for Adequate Searches with Terms Should Be Adopted

For searches of documents from individual document custodians using search terms, the Court should require Defendants to use the search protocol (including the search terms, custodians, and date ranges) that the Class understands, following five months of negotiations, to be minimally sufficient. *See* Van Decl., Ex. 4, at Attach. 1. The search protocol in the Generics MDL, according to public documents, requires at a minimum that the parties produce, without responsiveness review, all documents containing either the names of the generic drugs or the names of the defendants. *See* Van Decl., Ex. 5, ¶¶ 3-4; Van Decl., Ex. 6, ¶ 1.5. By comparison to this broad search protocol in the Generics MDL, the Class's search protocol is modest.

#### A. Search Terms

##### 1. Search Terms for Documents Concerning Generic Drug Price-Fixing Allegations

*First*, the Class requests that Defendants run searches for variations of the names of the drugs at issue without limiters, including without "NOT" limiters. The use of "NOT" limiters to limit these searches will exclude numerous documents that contain the names of multiple forms of a drug, in addition to the forms of the drug at issue, and so will exclude numerous relevant documents from review.

*Second*, the Class requests that Defendants run a list of "buzz" words—specific words or phrases that describe central misconduct at issue, such as "sandbox," "fair play," "walk away"— without any limiters. These searches are very unlikely to return an inordinate number of documents, and any documents containing these buzz words should be reviewed for responsiveness. Likewise, search terms targeting documents concerning "women in the industry" dinners are likely to return a low number of documents, nearly all of which are likely to be responsive to the Class's requests.

*Third*, the Class also requests as search terms the names of Mylan's alleged co-conspirator companies, without any limiters. Searches only for documents containing the domain names of these competitors will fail to capture internal Mylan documents that reveal the nature of its relationships with these alleged co-conspirators. Search term limiters on internal documents referencing these companies are also inappropriate, as all documents concerning Mylan's relationship with the limited set of alleged co-conspirators are potentially highly relevant to showing that the nature of these relationships was conspiratorial.

*Finally*, the Class requests that Defendants run the last names of the Individual Defendants in this Action and to produce those documents that are responsive. The Court in the Generics MDL has required Defendants to produce all documents containing the names of the individual defendants in that matter without responsiveness review. *See* Van Decl., Ex. 5, ¶¶ 3-

**POMERANTZ**LLP

4; Van Decl., Ex. 6, ¶ 1.5. The Class's request, which permits responsiveness review, is far more modest. *See Montesa v. Schwartz*, No. 12 Civ. 6057, 2015 WL 13173164, at *2 (S.D.N.Y. Feb. 20, 2015) (holding that defendants must include as search terms the names of relevant people).

### 2. Search Terms for Documents Concerning EpiPen Misclassification Allegations

The Class requests that the terms 23.1* OR 13*, together with appropriate limiters, be run in searching for documents concerning the amount by which Mylan rebated EpiPen under the Medicaid Drug Rebate Program ("MDRP"). The Class alleges that under the MDRP, Mylan misrepresented that it rebated all drugs approved pursuant to an NDA at 23.1%, rather than 13%, so documents addressing these percentages (with limiters) should be reviewed for relevance. TAC ¶ 65. Additionally, the Class requests searches for the names of individuals in CMS's 1997 letter to Dey Pharmaceuticals that Defendants have cited in their briefing. *See* Dkt. No. 46 at 3. Finally, the Class requests search terms that capture documents that reference both the EpiPen and Medicaid rebates. All documents referencing both EpiPen and Medicaid rebates should be reviewed for responsiveness. Defendants' search terms fail to capture all documents referencing both EpiPen and the Medicaid rebates, and so would fail to capture highly relevant (hypothetical) documents containing statements such as, "We all know the required rebate for EpiPen under the Medicaid Drug Rebate Program is not what we say it is."

### B. Custodians of Documents for Searches with Terms

#### 1. Individual Defendants as Custodians for All Term Searches

All searches should be run against the documents of each of the Individual Defendants, including their personal documents. The Individual Defendants' knowledge or reckless disregard of the underlying alleged misconduct is central to this securities fraud litigation, and their documents are central to this inquiry.

Each Individual Defendant is a defendant for each claim at issue, with the sole exception of Rajiv Malik ("Malik"), Mylan's President. With respect to Malik, the Court upheld the Class's claim based on his participation in the market allocation of Doxy DR, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The legal standard for inclusion as a document custodian is far more lenient than the legal standard for inclusion as a defendant in fraud claims. *See, e.g., Ft. Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 106 (S.D.N.Y. 2013) (in securities fraud case, inclusion of names appearing on "working group lists," as custodians "in ESI searches is reasonably calculated to lead to relevant evidence that might not be captured if they were excluded"). ▮▮▮▮▮▮▮▮▮
Malik's inclusion as a document custodian for all searches would be appropriate even if he were not named as a defendant in this Action at all, as is true of most of the custodians Defendants have agreed to search. (Note that the Class does not request that searches be run of the Individual Defendants' documents from periods when they were not affiliated with Mylan.)

**POMERANTZ**LLP

### 2. Custodians for Documents Concerning Generic Drug Price-Fixing Allegations

With respect to custodians for documents concerning the generic drug antitrust allegations, the Parties are in agreement as to 23 custodians. In addition to requesting that the Individual Defendants be included as custodians, the Class requests an additional 13 custodians. Detailed justifications for adding each of these individuals as custodians, based on relevance and possession of non-duplicative and non-cumulative information, are attached. *See* Van Decl., Ex. 4, at Attach. 2. Class Plaintiffs also requests that Defendants include any shared drives for the Pricing Committee for Mylan Inc. and Mylan Pharmaceuticals Inc. as custodians for documents concerning the generic drug price fixing allegations and search the documents contained in these shared drives for responsive documents.

Importantly, Class Plaintiffs also requests that their search terms for documents concerning the generic drug price fixing allegations be run against the documents that Mylan has produced and will produce in connection with the Generics MDL. Mylan already has been re-producing to Class Plaintiffs documents produced in the Generics MDL that concern the drugs at issue in this Action. Mylan should continue, and should do so using the Class's requested search terms. In addition, as stated above, if for any reason the AG Investigation Documents are not produced in full (they should be), the Class's search terms must be run against those documents as well (in addition to targeted searches). These productions in the Generics MDL are rich sets of relevant documents that already have been collected and processed; the Class's search terms should be run against them.

### 3. Custodians for Documents Concerning EpiPen Misclassification Allegations

In addition to requesting that the Individual Defendants be included as custodians, Class Plaintiffs request that an additional three custodians be added for searches of documents concerning the EpiPen misclassification allegations. Detailed justifications for adding each of these individuals as custodians are attached. *See* Van Decl., Ex. 4, at Attach. 3.

### C. Proposed Date Ranges for Searches with Terms

The Class requests that Defendants run the Class's search terms against documents in three separate date ranges, one for each of the three categories of underlying misconduct at issue in this Action. With respect to the date range for searches concerning the EpiPen antitrust allegations, the Class requests a date range of January 1, 2012 to November 30, 2016. Defendants' proposed date range ending August 23, 2016 fails to cover documents covering a critical period for purposes of loss causation, alleged in the TAC. *See* TAC ¶¶ 555–77. With respect to the date range for searches concerning the generic drugs allegations, the Class requests a date range of January 1, 2011 to July 1, 2019 because the TAC alleges fraud beginning in 2011 and continuing to the present, and because documents after 2016 concerning the revelations of the fraud at issue are highly relevant. Finally, with respect to the date range for searches concerning the EpiPen misclassification allegations, the Class requests a date range of October 2, 2006 to July 1, 2019 to capture documents from just prior to Mylan's acquisition of the EpiPen and documents that concern the misclassification in light of the Right Rebate Act of 2019.

# POMERANTZ LLP

\*\*\*

We respectfully request that the Court hold a conference to assist in resolving these disputes.

Respectfully Submitted,

By: */s/ Austin P. Van*
Jeremy Lieberman
Austin P. Van
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
avan@pomlaw.com

*Class Counsel*

cc:   All counsel of record (via ECF)