

**Jeremy A. Lieberman**
Managing Partner

August 23, 2021

<u>**VIA ECF**</u>
The Honorable J. Paul Oetken, District Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 706
New York, N.Y. 10007

      Re:    *In re Mylan N.V. Securities Litigation,* 16-cv-07926 (JPO)

Dear Judge Oetken:

We are Class Counsel in the above-referenced action. We write pursuant to Rule 4(B) of the Court's Individual Rules & Practices in Civil Cases to request an informal conference to address a dispute that has arisen between the parties: Defendants are refusing to produce documents containing legal advice concerning Mylan's classification of the EpiPen under the Medicaid Drug Rebate Program (the "MDRP"), even though in an email dated August 10, 2021, Defendants expressly waived privilege with respect to a selective part of that legal advice in order to use that advice as a defense in this case. The law is clear that Defendants are not entitled to waive privilege selectively to gain an unfair advantage—because Defendants have expressly waived privilege over legal advice on a subject in order to rely on that advice as a defense, Defendants must produce all such legal advice on that subject, including legal advice that may defeat their defense.

## I.      Background

Throughout fact discovery, Defendants routinely withheld as privileged discovery containing legal advice concerning whether Mylan misclassified the EpiPen for purposes of the MDRP. For example, in response to Class Representatives' discovery requests seeking documents "concerning the Company's classification of the EpiPen for purposes of the MDRP," Mylan repeatedly refused to produce responsive documents "protected by the attorney-client privilege and the work-product doctrine," and agreed to produce only "non-privileged documents." *See, e.g.*, Decl. of Terrence W. Scudieri, Jr. dated Aug. 23, 2021, at Ex. A at 12–13, No. 6 (the "Scudieri Decl."). In response to an interrogatory seeking the identification "by date and attendees of all meetings at which the classification of EpiPen for the purposes of the [MDRP] was discussed," Mylan pointed chiefly to three documents that were heavily redacted for privilege. *Id.*, *e.g.*, Ex. B at 16, No. 8. And during the deposition of James Abrams, Mylan's Director of Government Pricing and Reporting during the Relevant Time Period, opposing counsel instructed the witness not to answer any questions about Mylan's classification of the EpiPen under the MDRP, to the extent they would "reveal communications with counsel." *Id.*, Ex. C at 227:21–25.

600 Third Avenue, New York, New York 10016   tel: 212.661.1100   www.pomerantzlaw.com

NEW YORK     CHICAGO     LOS ANGELES     PARIS

POMERANTZLLP

On April 12, 2021, Defendants produced a privilege log that purports to identify 34,914 documents withheld under an unspecified, general claim of "privilege." *See id.*, Ex. D. The privilege log is severely deficient, so it is not possible to ascertain the nature of all of the withheld documents.[1] Nevertheless, several of the logged documents are communications that appear to concern Mylan's EpiPen classification under the MDRP. *Id.*, Ex. E. In a show of good-faith, Class Representatives initially accepted opposing counsel's characterization that the logged documents were properly withheld as privileged.

However, on June 30, 2021, Defendants served eleven "rebuttal" expert reports to Class Representatives' four experts, and two of Defendants' reports—both from attorneys—opine that Defendants' reliance upon the advice of counsel with respect to the classification of EpiPen for MDRP rebate purposes was "reasonable" under the circumstances. Defendants' "rebuttal" reports cite frequently to selectively-chosen attorney-client communications that contain legal advice to Mylan concerning the classification of EpiPen under the MDRP. Likewise, during the deposition of Dr. Kevin Gorospe on July 28, 2021, outside counsel for Mylan David Marriott specifically mentioned Mylan's receipt of advice of counsel concerning EpiPen's classification. *See* Scudieri Decl., Ex. F at 113:19-114:16.

In light of these statements by Mylan's outside counsel and experts, on August 3, 2021, Class Counsel came to believe that Mylan intended to waive the privilege it had repeatedly asserted over legal advice concerning the classification of EpiPen, and so requested that opposing counsel produce to Class Representatives "all documents containing legal advice regarding the EpiPen's classification that were held back on the grounds of privilege." *Id.*, Ex. G. One week later, in an email dated August 10, 2021, opposing counsel asserted for the first time that Defendants "intend[] to rely on a limited scope of legal advice received regarding the classification of EpiPen" and so "have waived the attorney client privilege" with respect to that legal advice. *Id.* (the "August 10, 2021 email"). However, Defendants claimed that the scope of the waiver was "limited" and covered only "legal advice concerning the effect of the enactment of the PPACA on the MDRP classification of EpiPen," and not all legal advice concerning the proper classification of EpiPen under the MDRP. *Id.* To date, Defendants have refused to agree to produce all legal advice concerning the proper classification of EpiPen under the MDRP

## II.   Defendants May Not Selectively Withhold Documents Containing Unfavorable Legal Advice While Relying on Documents Containing Favorable Legal Advice on the Same Subject Matter

"The party withholding a document on the basis of attorney-client privilege or the work product doctrine bears the burden of establishing facts to demonstrate applicability of the protective rule." *Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 648 (S.D.N.Y. 2019).

---

[1] Defendants' privilege log does not comport with Local Rule 26.2(a), as for each logged entry, Defendants fail to "identify the nature of the privilege." Similarly, each entry in Defendants' privilege log wholly fails to "'provid[e] sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure.'" *United States v. Constr. Prods. Res., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993)). In particular, none of the entries identifies "the relationship of the author, addressees, and recipients to each other," Local Civ. R. 26.2(a), nor have Defendants supplied an affidavit or any other supporting information to enable Class Representatives to ascertain the propriety of Defendants' claims of privilege. *Constr. Prods. Res., Inc.*, 73 F.3d at 473.

POMERANTZLLP

It is well-established that Defendants cannot use the attorney-client privilege as both a sword and a shield by selectively waiving the attorney-client privilege with respect to documents that they deem favorable to their defense, while also withholding all other privileged documents concerning the same legal advice that may help to prove Class Representatives' claims against them.  The Second Circuit has long held that a party cannot "selectively disclose confidential materials in order to achieve other beneficial purposes" without forfeiting privilege over the subject matter of the confidential material.  *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) (citing *In re John Doe Co.*, 675 F.2d 482, 489 (2d Cir. 1987)).  "Forfeiture of this type is premised on the unfairness to the adversary of having to defend against the privilege holder's claim without access to pertinent privileged materials that might refute the claim." *John Doe Co. v. United States*, 350 F.3d 299, 304 (2d Cir. 2003).  The scope of the waiver must extend at least so far as to eliminate the potential prejudice to the party challenging the privilege.  *See In re von Bulow*, 828 F.2d 94, 101–02 (2d Cir. 1987) ("Testimony as to part of a privileged communication, in fairness, requires production of the remainder."); *Brock Equities v. Josephthal, Lyon & Ross*, No. 92 Civ. 8588 (JSM), 1993 WL 350026, at *1 (S.D.N.Y. Sept. 9, 1993) ("A party can only waive the attorney-client privilege as to certain subjects as a whole, and may not select only certain testimony or documents to produce while leaving other evidence shrouded in privilege.").

In particular, where a party asserts that it "thought [its] actions were legal," it puts its own "knowledge of the law and the basis for . . . [its] understanding of what the law required in issue," including "conversations with counsel," and waives privilege over those communications.  *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).  In *Bilzerian*, a defendant sought to use good faith as a defense to securities fraud charges, while also claiming that his conversations with counsel were privileged.  *Id.*  The Second Circuit held that the privilege normally protecting attorney-client communications regarding the relevant issue "may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." *Id.*

Likewise, in *Brown v. Barnes & Noble, Inc.*, the defendant-company asserted as a defense that it had acted in good faith in deciding whether certain employees should be classified as exempt" under the Fair Labor Standards Act ("FLSA"), yet withheld as privileged documents containing advice of counsel concerning those classification decisions.  474 F. Supp. 3d at 649.  The court rejected this strategy and held that plaintiffs were "entitled to explore whether the defendant acted contrary to legal advice when classifying a position under the FLSA" because "[s]uch evidence would undermine the defense of good faith."  *Id.*  Thus, the court held that "[defendant] has waived privilege, to the extent the communications at issue pertain to the [classification of the certain employees]."  *Id.* at 653.

Here, Defendants are attempting to get away with precisely the ploy the Second Circuit has long forbidden—they have selectively waived privilege over documents that contain legal advice that they find favorable concerning the proper classification of the EpiPen under the MDRP, yet refuse to produce other documents containing legal advice that likewise concern the proper classification of the EpiPen under the MDRP that they presumably do not find favorable.  *See, e.g.*, *In re Steinhardt Partners, L.P.*, 9 F.3d at 235.  Such selective waiver of privilege is exactly the "unfairness" the Second Circuit condemns. *John Doe Co*, 350 F.3d at 304; *see Bilzerian*, 926 F.2d at 1292.

Defendant's attempt to limit the scope of the legal advice on which they intend to rely to "legal advice concerning the effect of the PPACA on the MDRP classification of EpiPen," while apparently excluding other legal advice concerning the propriety of Mylan's classification of the

POMERANTZ LLP

EpiPen under the MDRP, is disingenuous and forbidden under established Second Circuit caselaw. Defendants transparently want to argue in their defense that they could not knowingly have misclassified EpiPen because they received legal advice that suggested the EpiPen was properly classified. Defendants assert that they received a letter from an attorney advising them that Mylan's classification of the EpiPen under the MDRP was proper, and that the PPACA did not affect that classification. Scudieri Decl., Ex. H. Defendants apparently want to point to this letter for the proposition that "Mylan received explicit guidance from its counsel that the continued classification of EpiPen as a non-innovator for the purposes of the MDRP was appropriate." *Id.*, Ex. I at 26:25–30:8. But of course, if Mylan received legal advice that "the continued classification of EpiPen" "was appropriate," Mylan thereby received legal advice that the classification was appropriate. Accordingly, Class Representatives are entitled to see what other legal advice Mylan received concerning whether the classification of EpiPen was appropriate.[2] Class Representatives are entitled to all "pertinent privileged materials that might refute the claim" that Mylan believed the EpiPen was properly classified. *John Doe Co*, 350 F.3d at 304. Without access to such materials, Class Representatives will clearly suffer prejudice in being unable to access potential legal guidance suggesting that EpiPen was not appropriately classified. *See In re von Bulow*, 828 F.2d at 101 ("the 'fairness doctrine' [. . .] aim[s] to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information.").

Indeed, Defendants' focus on the PPACA is arbitrary and inexplicable—legal advice concerning the effect of the enactment of the PPACA on the MDRP classification of EpiPen has no relevance to this case except to the extent it constitutes legal advice concerning the proper MDPR classification of EpiPen.

## II.   Defendants First Waived Privilege on August 10, 2021, So This Motion Is Timely

Defendants first waived the attorney-client privilege over legal advice concerning the proper classification of the EpiPen in their email to Class Representatives dated August 10, 2021. Scudieri Decl., Ex. G. Class Representatives bring this motion less than two weeks after that waiver. Accordingly, this motion is timely—indeed, it is prompt.

In meeting and conferring on this issue, Defendants have argued that this motion is untimely given that Defendants produced certain materials containing legal advice concerning the classification of EpiPen during document discovery, and certain fact deponents (including Mylan's 30(b)(6) deponent, made reference to such legal advice in their depositions. Yet case law is clear that a party only waives privilege when it "use[s] protected information to influence a decision maker." *Mitre Sports Int'l, Ltd. v. HBO, Inc*., 304 F.R.D. 369, 373 (S.D.N.Y. 2015) (citing *Swift Spindrift, Ltd. v. Alvada Ins., Inc*., No. 09 Civ. 9342 (AJN)(FM), 2013 WL 3815970 at *5-*6 (S.D.N.Y. July 24, 2013)). "[D]isclosure of privileged material in discovery, without more, does not constitute a subject-matter waiver." *Id*. In particular, "[a] party's deposition testimony, whether from an individual witness or a 30(b)(6) witness, does not constitute such a use" to influence a decision maker. *Id*. As Defendants have yet to use privileged material to influence

---

[2] Indeed, it appears that Defendants have refused even to produce all documents that fall within the scope of the selective privilege waiver they have acknowledged. Defendants' privilege log contains at least 105 entries from 2011 that appear to relate to legal advice Mylan received concerning the MDRP classification of EpiPen around the time of the PPACA's enactment. *See* Scudieri Decl., Ex. D.

POMERANTZLLP

the judge or jury, Defendants have not waived privilege through disclosure. Accordingly, the first time that Defendants selectively waived privilege was by expressly stating as much in their August 10, 2021, and that is the first date on which this dispute became ripe for the involvement of the Court. *See, e.g.*, *G-I Holdings, Inc. v. Baron & Budd*, No. 01 Civ. 216 (RWS), 2005 WL 1653623, at *1 (S.D.N.Y. July 13, 2005) (discovery dispute that implicates the attorney-client privilege is not suitable for review until a party affirmatively waives the privilege).

Defendants also have accused Class Representatives of somehow acting strategically in bringing this motion now, rather than earlier, before Defendants had even waived privilege. Not so. Class Representatives were acting properly, not strategically, in not bringing a premature motion seeking an advisory opinion concerning the scope of waiver in the event that Defendants actually waived privilege. Moreover, even if such a motion for an advisory opinion were proper (it is not), strategy would favor Class Representatives' having sought access to the communications within the scope of the waiver *earlier* rather than later so that the communications could have been used to develop fact and expert discovery—the strategy Defendants (wrongly) accuse Class Representatives of following is nonsensical.

### III.    Defendants Bear the Burden of Identifying and Producing All Documents Over Which They Have Waived Privilege

Defendants tacitly admitted in their August 10, 2021 letter that they have withheld documents under the attorney-client privilege containing legal advice concerning the classification of EpiPen under the MDRP. Moreover, during the parties' August 16, 2020 meet and confer, in response to direct questioning, Defendants refused to represent that they have not withheld such documents. Defendants must produce any such documents immediately. While the identification of such documents is Defendants' duty, *Brown*, 474 F. Supp. 3d at 648, Class Representatives attach as an exhibit a list of examples of documents withheld for privilege that appear likely to contain legal advice concerning the classification of EpiPen under the MDRP. *See* Scudieri Decl., Ex. E. Class Representatives reserve the right to ask the Court to review *in camera* a random sample of these documents for privilege should Defendants' supplemental production raise further questions about their privilege calls. *See, e.g.*, *Brown*, 474 F. Supp. 3d at 650-51.

### IV.    Conclusion

For all these reasons, Class Representatives respectfully request an informal conference to seek an order compelling Defendants to produce to Class Representatives all communications withheld under the attorney-client privilege that contain legal advice concerning the classification of the EpiPen for purposes of the MDRP.



Respectfully Submitted,

By: */s/ Jeremy Lieberman*
Jeremy Lieberman
Austin P. Van
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
avan@pomlaw.com

*Class Counsel*

cc:      All counsel of record (via ECF)