UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────

*In re* Mylan N.V. Securities Litigation

16-CV-7926 (JPO)

MEMORANDUM
AND ORDER

─────────────────────────────

J. PAUL OETKEN, District Judge:

Defendants, having prevailed in this class action concerning alleged securities fraud, now seek costs pursuant to 28 U.S.C. § 1920 and Local Rule 54.1. (ECF No. 469 ("Corrected Bill of Costs").) Plaintiffs filed timely objections to the Corrected Bill of Costs. (ECF No. 470 ("Obj.").) In response to the objections, Defendants withdrew several items from their request, resulting in a current request for $430,165.61 in deposition-related, demonstrative, and document conversion and production costs. (*See* ECF No. 474 ("Reply") at 5.)[1] For the reasons that follow, Plaintiffs' objections to Defendants' Corrected Bill of Costs are sustained in part and overruled in part.

**I.    Discussion**

"Federal Rule of Civil Procedure 54(d)(1) provides that 'unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party.'" *Phx. Light SF DAC v. U.S. Bank Nat'l Ass'n*, No. 14-CV-10116, 2023 WL 5498928, at *1 (S.D.N.Y. Aug. 25, 2023) (quoting Fed. R. Civ. P. 54(d)(1)). The term "costs," as used in Rule 54(d), "includes only the specific items enumerated in 28 U.S.C.

───────────────

[1] Plaintiffs filed a motion for leave to file a surreply on July 19, 2024. (*See* ECF No. 478.) Because the proposed surreply aids the Court in assessing the credibility of apparently contradictory declarations submitted by Defendants, the motion to file a surreply is granted.

§ 1920." *Whitfield v. Scully*, 241 F.3d 264, 269 (2d Cir. 2001), *abrogated on other grounds*, *Bruce v. Samuels*, 577 U.S. 82 (2016), (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987)). In this Court, the award of costs to the prevailing party—"the normal rule . . . in civil litigation," *id.* at 270—is governed by Local Rule 54.1. In particular, bills of costs "must include an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred." Loc. R. 54.1(a). Consistent with Section 1920, Local Rule 54.1(c) enumerates several categories of taxable costs, including "depositions," "exemplification and copies of papers," and "maps, charts, models, photographs and summaries." Local Rule 54.1(c)(2), (5) & (6) (capitalization omitted). "In exercising its discretion [to award costs], a district court is free to consider a variety of equitable factors," though the reasons for denying an award "must be articulated." *Karmel v. City of New York*, No. 00-CV-9063, 2008 WL 216929, at *2 (S.D.N.Y. Jan. 9, 2008). The Court addresses each of Plaintiffs' objections to the Corrected Bill of Costs in turn.

    A.    **Affidavit Requirement**

Plaintiffs first object on the ground that Defendants did not submit with the Corrected Bill of Costs "an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred." (Obj. at 2 (citing Loc. R. 54.1).) A prevailing party requesting costs is required by both 28 U.S.C. § 1924 and Local Rule 54.1 to include with the request an affidavit that the costs were necessarily incurred. *See S. Indus. of Clover, Ltd. v. Zenev Textiles S.A.*, No. 02-CV-8022, 2004 WL 1444856, at *5 (S.D.N.Y. June 25, 2004). In particular, Plaintiffs argue that the Corrected Bill of Costs does not state which deposition transcripts, demonstrative exhibits, and document conversion costs were "necessarily incurred." (*See* Obj.at 5-7.) Defendants contend in response that "[t]he declaration" included with the Corrected Bill of Costs "mirrors the statutory language of Section 1924 and satisfies the purpose of requiring those

seeking costs to provide a sworn written statement regarding the necessity of the costs incurred." (Reply at 3 (quoting *Mickealson v. Cummins, Inc.*, No. 16-CV-75, 2018 WL 6046470, at *2 (D. Mont. Nov. 19, 2018).)

Plaintiffs rely primarily on a report and recommendation issued by Magistrate Judge Wang in *Olaf Sööt Design, LLC v. Daktronics, Inc.*, which recommended denying costs because the defendants had "not met their burden to show that they [were] entitled to costs for deposition transcripts." No. 15-CV-5024, 2022 WL 2530358, at *5 (S.D.N.Y. Mar. 31, 2022) (Wang, Mag. J.), *report and recommendation adopted*, 2022 WL 3448693 (S.D.N.Y. Aug. 17, 2022). But neither the report and recommendation nor the final opinion in *Olaf Sööt Design* concerned the affidavit requirement; instead, that case concerned whether the defendants' requests for particular costs satisfied the substantive requirements under Section 1920 and Local Rule 54.1. *See* 2022 WL 3448693, at *2 (awarding some of defendants' requested costs after additional submissions following the report and recommendation). Despite Plaintiffs' characterization, *Olaf Sööt Design* does not purport to apply any detailed affidavit requirement on prevailing parties seeking costs. The Court is content that Defendants' sworn declaration—submitted with the Corrected Bill of Costs in the form prescribed by the Administrative Office—satisfies the threshold affidavit requirement of Section 1924 and Local Rule 54.1. *See Farberware Licensing Co. LLC v. Meyer Mktg.Co., Ltd.*, No. 09-CV-2570, 2009 WL 5173787, at *4 (S.D.N.Y. 2009) ("Meyer's failure to strictly adhere to the requirements of Local Rule 54.1 will not preclude them from recovering reasonable costs."). That is not to say that every item in Defendants' Corrected Bill of Costs is necessarily taxable, but only that it should not "be denied in its entirety" (*cf.* Obj. at 5) by virtue of the affidavit requirement.

3

### B. Equitable Considerations

Plaintiffs argue next that the Court should reject the Corrected Bill of Costs "as a matter of equity." (*Id.* at 7.) Courts, in exercising their discretion to decide whether to award costs, consider a number of factors, including "misconduct by the prevailing party, the public importance of the case, the difficulty of the issues, or the losing party's limited financial resources." *Whitfield*, 241 F.3d at 270. Importantly, however, awarding costs is "the general rule," a departure from which requires a district court "articulate its reasons." *Id.*; *see also Endo Pharms. Inc. v. Amneal Pharms., LLC*, 331 F.R.D. 575, 578 (S.D.N.Y. 2019). Indeed, cases in which any court in any district has categorically refused to award costs because of equitable considerations are few and far between. *See also Morales v. Smith*, No. 94-CV-4865, 1998 WL 352595, at *1 (S.D.N.Y. June 26, 1998) (rejecting the argument "that taxation of all costs should be denied on equitable or policy grounds").

Plaintiffs contend that their good faith and initial success in prosecuting this action, coupled with the public importance of enforcing the securities laws, demonstrate that equity militates against an award of costs. (*See* Obj. at 7.) That the case "was based on multiple investigations by the SEC and DOJ that settled for hundreds of millions of dollars as well as extensive antitrust investigations by 46 state attorneys general" along with "plea agreements admitting criminal liability and multiple Fifth Amendment pleas from deponents" (*id.* at 7), to Plaintiffs, should remove this case from the ordinary category in which prevailing parties are entitled to costs. Moreover, Plaintiffs argue that it would be "particularly inequitable" to award costs against class representatives, which "would discourage future plaintiffs from taking on the role of class representative in future meritorious class action suits of importance to the public." (*Id.* at 8.)

4

Plaintiffs' arguments for an extraordinary departure from ordinary practice are insufficient. As for success against early dispositive motions, that Section 1920 and Local Rule 54.1 explicitly contemplate the award of costs for expenses incurred at trial undercuts Plaintiffs' contention that proceeding past dispositive motions constitutes a sufficient basis for denying the award of costs. And as to the importance of the legal issues in this case, Plaintiffs identify not one case denying costs to prevailing defendants in a case concerning the securities laws. Even if they could, as Judge Rakoff observed in a similar context, the "ongoing flood of such actions casts doubt on such alleged 'chilling effect' of Rule 54." *Morales*, 1998 WL 352595, at *1. And though in this case costs may ultimately be borne by class representatives, that does not change the analysis, for "costs are frequently awarded even against parties who are proceeding in forma pauperis." *Id.* (collecting cases). Counsel for Plaintiffs do not argue that their clients are indigent or even that their clients, as opposed to counsel themselves, will be required by the terms of their engagement to pay any award of costs.

"The Court must be mindful in exercising its discretion that all litigants should be required to assess the relative merits and risks of litigation before they proceed." *Goldstein v. Robert Half Int'l*, No. 04-CV-10201, 2010 WL 11651400, at *1 (S.D.N.Y. Sept. 10, 2010). One merit of serving as a class representative is the prospect of an incentive award. *See Moses v. N.Y. Times Co.*, 79 F.4th 235, 245 (2d Cir. 2013) (parenthetically quoting 5 Newberg and Rubenstein on Class Actions §§ 17:3-4 for the proposition that incentive awards help offset the "particular risks" faced by class representatives). And one risk, borne out in this case, is the prospect of paying costs to a prevailing defendant.

In sum, this case does not involve an indigent losing party or misconduct by the prevailing party. And though the issues involved are important and at times difficult, they are

not so difficult or complex as to depart from the ordinary practice of awarding costs to prevailing parties.

### C.     Objections to Particular Costs

#### 1.     Deposition Costs

Local Rule 54.1(c)(2) permits the Clerk to tax "the original transcript of a deposition, plus one copy" "if the deposition was used or received in evidence at trial." Loc. R. 54.1(c)(2). Other "[c]osts for depositions are also taxable if they were used by the court in ruling on a motion for summary judgment or other dispositive substantive motion." *Id.* But "[c]osts for depositions taken solely for discovery are not taxable." *Id.* "[C]ourts in this District have repeatedly construed the local rules as authorizing a court to tax the costs of a deposition transcript if, at the time the deposition was taken, the deponent's testimony appeared to be reasonably necessary to the litigation." *Endo Pharms. Inc.*, 331 F.R.D. at 582 (quotation marks omitted) (collecting cases). Plaintiffs argue that, should deposition transcripts and copies be taxable in this case, they total $34,774.25. (*See* Obj. at 11; ECF No. 471-3.)

Plaintiffs do not dispute that the depositions themselves at issue are covered by Rule 56.1. Instead, they argue that Defendants seek more than mere transcripts and copies, but "[a]dditional expenses" that are "unnecessary and duplicative, and are therefore not taxable." (Obj. at 10.) Defendants contend that other categories of deposition costs, such as those contested here, are taxable when they are "necessary, as opposed to merely convenient or helpful, to the prosecution of their case." (Reply at 6 (quoting *AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC*, No. 01-CV-11448, 2011 WL 102715, at *2 (S.D.N.Y. Jan. 6, 2011)).) After filing the original Corrected Bill of Costs, Defendants, "in the spirit of compromise," withdrew their request "for some of the less necessary costs." (Reply at 6.) Those remaining are summarized in a chart in Defendants' Reply and include costs for certified transcripts and related

6

court reporter fees, expenses related to virtual attendance at depositions, expenses related to the handling of exhibits at the depositions, expedited delivery, shipping and handling of transcripts, and the costs of preparing video testimony in preparation for use of trial. (*See id.* at 7-8.) That puts Defendants' total requested deposition costs at $119,387.47. (*Id.* at 8.)

In surreply, Plaintiffs appear to agree that—if costs are to be taxed for depositions—they may be so only for the "Certified Transcript" ($37,081.25) and "Exhibits – Linked" ($2,525.35), bringing the total to $39,606.60. (*See* Reply at 7, lines 1, 9; ECF No. 478-1 ("Surreply") at 5.) That leaves ten categories of disputed costs: "Surcharge," "Production/Processing," "Litigation Package," "Attendance," "Veritext Virtual Participants," "Veritext Exhibit Package," "Exhibit Share," "Expedited Delivery," "Electronic Delivery and Handling," and "Deposition video costs." (*See* Reply at 7, lines 2-8, 10-12.) Plaintiffs maintain that those costs—in essence, anything beyond a transcript, a copy, and linked exhibits—"are not taxable." (Surreply at 5.) In their original Objection, Plaintiffs identify by name only four categories of deposition costs they oppose: "(i) expedited delivery; (ii) charges for scanned and hyperlinked exhibits; (iii) interactive 'real-time' transcript delivery; and (iv) rough ASCII transcripts." (Obj. at 11.) After Plaintiffs filed their Reply, Defendants removed from their Corrected Bill of Costs three of those categories of costs, maintaining only their request for costs for expedited delivery. (*See* Reply at 7.) In Surreply, Plaintiffs raised additional arguments opposing other categories of requested costs, including video costs, attendance, electronic delivery, and "Exhibit Share." (Surreply at 5-6.) The Court takes each of the disputed categories of deposition-related costs in turn.

First, Defendants' requested costs related to the surcharge paid to court reporters with expertise was necessary to the preparation of the deposition transcripts and is thus taxable. Though Plaintiffs argue the designation "surcharge" is "too vaguely described for the Court to

7

assess whether they were necessary to obtaining the original transcript" (Surreply at 6), Defendants' representation that the disputed costs include "a fee for when expertise is needed by the reporter" (Reply at 6) is sufficient to establish the surcharge's necessity. Though the briefing does not explain directly that the surcharge covered expertise, the original records submitted with the Corrected Bill of Costs make that clear. (*See, e.g.*, Corrected Bill of Costs at 25 (including the line item "Surcharge-Expert/Medical/Technical"), 36 (same), 77 (same), 102 (same).) The only non-expertise-based reference to a surcharge in the records submitted with the Corrected Bill of Costs includes fees paid to a court reporter for "Extended Hours" (*id.* at 44) which, though not an expert fee, was necessary to the production of the transcript from the entire length of the deposition.

Second, Defendants' requested costs related to "Production/Processing" of the deposition transcripts were necessary to "generating and distributing the transcript in one electronic file" (Reply at 6) and are thus taxable. Plaintiffs argue, again, that that category is too vague, but Defendants adequately explain that the requested costs stemmed from the creation of the deposition transcripts.

Third, Defendants' request for costs associated with the "Litigation Package" is too vague to sustain an award of costs, as neither the briefing nor the supplied records explain what the "Litigation Package" is or why it was necessary to a deposition that was used or to the production of a deposition transcript and copy. Here, "Defendants make no separate argument as to why [the Litigation Package] should be taxed." *Cf. Olaf Sööt Design*, 2022 WL 2530358, at *5.

Fourth, Defendants' requested costs for "Attendance," explained by the supplied billing records as the court reporters' fee charged for attending depositions (*see, e.g.*, Corrected Bill of

8

Costs at 25, 36, 77), are not taxable, as "courts in this District have determined that court reporter appearance fees . . . are not taxable." *In re Omeprazole Patent Litig.*, No. 00-CV-6749, 2012 WL 5427849, at *4 (S.D.N.Y. Nov. 7, 2012) (collecting cases). Though Defendants make arguments in their Reply about the taxability of most of the costs included in their billing records, they make no such specific argument about court reporter "Attendance." The Court concludes that those costs are not taxable.

Fifth, Defendants' requested costs for "Veritext Virtual Participants" and "Veritext Exhibit Package," which Plaintiffs call "vague" (Surreply at 5), are not taxable. Defendants explain that the costs arose from "fees to conduct depositions remotely, which the parties agreed to." (Reply at 6 (citing ECF No. 199).) But that does not explain why the fees paid to conduct remote depositions were necessary to the creation of a transcript or copy, or, if Defendants contend the depositions were used by the Court, that any virtual deposition was so used. And the parties' agreement, which does stipulate to the permissibility and procedure of remote depositions in the case, does not clarify the applicability of Section 1920 or Local Rule 54.1. Because the Court cannot discern whether the "Veritext Virtual Participants" and "Veritext Exhibit Package" line items covered taxable activities or something else (e.g., virtual court reporter appearance fees, which would not be taxable, *see supra*), the costs are not taxable based on the records submitted.

Sixth, Defendants' requested costs for "Exhibit Share," referred to only by Defendants as "exhibit fees" in their Reply, are not taxable as the Court cannot ascertain the services included in that category of costs or whether they were necessary to the case. Plaintiffs explain that "Exhibit Share," "a software program for conveniently sharing exhibits with attorneys" is, "like other real-time services for the convenience of attorneys such as LiveNote and Real

9

Time, . . . once again not taxable" because it is not necessary to the creation of a transcript.[2] (Surreply at 6.) As with the costs requested for Veritext services, "Defendant[s] [have] not provided any information about what services are encompassed by the 'Exhibit Share' cost or why it was necessary." *Alfaro v. Bank of Am., N.A.*, No. 19-CV-22762, 2021 WL 5920830, at *7 (S.D. Fla. Aug. 3, 2021), *report and recommendation adopted*, 2021 WL 5919022 (S.D. Fla. Dec. 15, 2021) (recommending denying requests costs for Exhibit Share because the Court could not "determine whether the fees were for the convenience of counsel"). Many other courts have concluded that electronic exhibit sharing software used in depositions is not taxable. *See, e.g.*, *Pable v. Chi. Transit Auth.*, No. 19-CV-7868, 2024 WL 5145577, at *4 (N.D. Ill. Dec. 17, 2024) (rejecting a request for costs under Section 1920 for "exhibit share fees" because "marking and sharing exhibits in real time is not a transcript cost allowed under the statute and Local Rule 54.1, and they were not vital to conducting remote depositions"); *Whyte Monkee Prods., LLC v. Netflix, Inc.*, No. 20-CV-933, 2022 WL 16936038, at *3 (W.D. Okla. Nov. 14, 2022), *reversed on other grounds sub nom*, *Sepi v. Netflix*, No. 22-6177, 2024 WL 1327788 (10th Cir. Mar. 28, 2024) ("[T]he Court is not persuaded on this record that the cost to utilize exhibit sharing software qualifies as either a fee to obtain a deposition transcript or a fee for exemplification or copying. . . . [A] transcript can be created without the use of an exhibit sharing platform. Further, exhibit sharing software appears to go beyond merely generating electronic copies of documents. Accordingly, this cost will not be taxed."); *see also Synchrony Bank v. Cabinets To Go, LLC*, No. 21-CV-21828, 2024 WL 4120722, at *5 (S.D. Fla. Aug. 5, 2024) ("The exhibit technician costs were a convenience, not a necessity. As such, Plaintiff is not entitled under

---

[2] Though Plaintiffs make this argument most thoroughly in their Surreply, Defendants were on notice of Plaintiffs' general objection to the deposition-related requested costs—i.e., that they were not necessary to obtaining a transcript or a copy. (*See* Obj. at 10-11.)

10

§ 1920 to recover the $3,450.00 in 'exhibit tech' fees."). Because the Court cannot ascertain the services encompassed by "Exhibit Share" or whether those services were necessary, as opposed to convenient, the Court denies this aspect of Defendants' request for costs.

Seventh, Defendants' requested costs for expedited delivery, which they argue were "needed to urgently respond to Plaintiffs' class certification motion" (Reply at 6), are taxable. Fees for expedited delivery "are not necessary generally" and thus are usually not taxable. *Farberware Licensing*, 2009 WL 5173787, at *5. However, "[a]n exception to this rule has been found where the deadlines of the case and/or timing of the depositions illustrated that expedited service was reasonably necessary." *Id.* at *5 n.2 (citing *Forest Lab'ys, Inc. v. Abbot Lab'ys,* 96-CV-1595, 2006 WL 7077571, at *2 (W.D.N.Y. May 17, 2006)). Plaintiffs do not challenge Defendants' representation that the fees for expedited delivery were justified by the timing of class certification briefing. Accordingly, the Court determines the fees were reasonably necessary and thus taxable.

Eighth, Defendants' requested costs labeled "Electronic Handling and Delivery," which Defendants contend were expended on "shipping/handling fees to obtain the transcripts" (Reply at 6-7), are not taxable. On this score, Defendants' authority appears to conflict. In one of Defendants' earlier cited cases, *Farberware Licensing*, Judge Baer of this Court made clear that though fees for expedited service may be taxable where necessary, "delivery costs" are unnecessary and thus not taxable under Section 1920. 2009 WL 5173787, at *5. Defendants also cite *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, in which Judge Hamilton of the Northern District of California held that "the charge for 'shipping and handling' can reasonably be viewed as part of 'the cost of an original and one copy of any deposition.'" No. 09-CV-5939, 2012 WL 1610979, at *2 (N.D. Cal. May 8, 2012). The balance of authority in this District

11

supports the *Farberware* approach. *See, e.g.*, *India.com, Inc. v. Dalal*, No. 02-CV-111, 2010 WL 2758567, at *3 (S.D.N.Y. July 13, 2010) ("[T]he Clerk of Court should not have taxed the additional costs for delivery fees . . . ."); *see also Mobasher v. Bronx Cmty. Coll. of City Univ. of N.Y.*, No. 01-CV-8636, 2008 WL 11492729, at *3 (S.D.N.Y. July 28, 2008) (refusing to tax costs for deposition transcript fees); *Sim v. N.Y. Mailers' Union No. 6*, No. 97-CV-2929, 1999 WL 674447, at *2 (S.D.N.Y. Aug. 30, 1999) (same); *Yin v. Japan Soc., Inc.*, No. 99-CV-4806, 2000 WL 827671, at *2 (S.D.N.Y. June 27, 2000) (refusing to tax costs for transcript delivery but considering whether costs sought for expedited delivery were "necessary"). Accordingly, the Court determines the costs requested for "Electronic Delivery and Handling" are not taxable.

Finally, Defendants' requested costs for costs arising from the videotaping of depositions for "testimony to be presented at trial" (Reply at 6) are not taxable. Plaintiffs contend that those costs are not taxable because "Defendants 'have made no effort to establish with any specificity that the parties reasonably believed that video testimony would be used at trial for the depositions for which they charge video fees.'" (Surreply at 5-6 (quoting *Omeprazole*, 2012 WL 5427849, at *4).)[3] "[C]ourts in this district have found that video fees have been deemed taxable where there was an expectation among the parties that the video of the testimony might be presented at trial." *Phx. Light*, 2023 WL 5498928, at *5 (cleaned up) (collecting cases). Importantly, "[t]he party seeking costs must *specifically explain* why it expected to present testimony by video." *Id.* (citing *Settlement Funding, LLC v. AXA Equitable Life Ins. Co.*, No. 09-CV-8685, 2011 WL 2848644, at *4 (S.D.N.Y. July 18, 2011) (emphasis added). In *Phoenix Light*, Judge Broderick determined that a declaration stating that the defendant "ordered each

---

[3] Again, though Plaintiffs make this argument most forcefully in their Surreply, they maintained an objection to the taxing of costs for the videotaping of depositions in their original Objection. (*See* Obj. at 5, 11.)

12

video in order to preserve the deponent's testimony for later use, including for impeachment purposes at trial and to the extent the witness would be unavailable at trial," was "too generic to provide grounds for an award of video costs." *Id.* Here, Defendants provide even less, explaining only that the video costs were for "testimony to be presented at trial" (Reply at 6), and citing *Omeprazole*, a case in which Judge Jones *rejected* a request for the costs of videotaping depositions where the requesting party "made no effort to establish with any specificity that the parties reasonably believed that video testimony would be used at trial." 2012 WL 5427791, at *4. Because Defendants do not offer any specific justification for their request for deposition video costs—i.e., that the parties reasonably expected the use of deposition video testimony at trial—the Court determines that those costs are not taxable.

To summarize, Defendants are entitled to deposition-related costs from the following categories: "Certified Transcript," "Surcharge," "Production/Processing," "Exhibits – Linked," and "Expedited Delivery." The remaining categories of deposition-related costs are not taxable. As further illustrated by the chart below, the Clerk of Court should tax $42,062.05 in deposition costs.

| | Summary of Defendants' Requested Deposition-Related Costs | | |
|---|---|---|---|
| 1. | Certified Transcript | $37,081.25 | Taxable |
| 2. | Surcharge | $1,385.95 | Taxable |
| 3. | Production/Processing | $192.00 | Taxable |
| 4. | Litigation Package | $230.00 | Not Taxable |
| 5. | Attendance | $1,190.00 | Not Taxable |
| 6. | Veritext Virtual Participants | $8,385.00 | Not Taxable |
| 7. | Veritext Exhibit Package | $1,938.00 | Not Taxable |
| 8. | Exhibit Share | $14,835.00 | Not Taxable |
| 9. | Exhibits – Linked | $2,525.35 | Taxable |
| 10. | Expedited Delivery | $877.50 | Taxable |
| 11. | Electronic Delivery and Handling | $1,400.00 | Not Taxable |
| 12. | Deposition Video Costs | $49,347.42 | Not Taxable |
| **Total Taxable Deposition Costs:** | | **$42,062.05** | |

### 2. Exemplification Costs

Next, Defendants seek $15,418.75 in costs for demonstrative exhibits for use at the summary judgment hearing. (*See* Reply at 7.) Courts in this District "have consistently awarded costs for audio-visual aids in light of [Local Rule 54.1], which provides that the '[c]osts of maps, charts, and models, including computer generated models,' are taxable to the losing party at the discretion of the court." *Chain v. N.E. Freightways, Inc.*, No. 16-CV-3371, 2021 WL 1611953, at *2 (S.D.N.Y. Apr. 26, 2021); *see also DiBella v. Hopkins*, 407 F. Supp. 2d 537, 539-40 (S.D.N.Y. 2005). In neither their original Objection nor their Surreply do Plaintiffs object to taxing costs for exemplification of demonstrative exhibits made in preparation for and use at the summary judgment hearing. Accordingly, those costs may be taxed.

### 3. Document Production Costs

Finally, Plaintiffs object to Defendants' proposed costs for file conversion and production services. (Obj. at 8-10, Surreply at 2-4.) Defendants request $295,358.79 in such costs (Reply at 10), based on a rate of $0.03 per page, multiplied by 9.84 million pages of produced documents, as calculated by Paul Ramsey, the Senior Director of Strategic Client Solutions with Consilio LLC ("Consilio"), Mylan's e-discovery vendor (Corrected Bill of Costs at 125). Plaintiffs' objections comprise two criticisms of Defendants' proposed amount: first, that the rate of $0.03 per page is purely hypothetical (and too high), since Mylan paid a "bundled" rate for a variety of e-discovery services, only some of which are taxable; and second, that the number of pages is inflated, since many documents were converted to TIFF format in other litigation. (Surreply at 2-4.) Plaintiffs contend that, as a result of those two issues, the Clerk cannot be certain of the true rate Mylan paid for the taxable services Consilio performed or the number of pages by which that rate should be multiplied. (*See id.* at 3.) Defendants rely on two declarations from Ramsey attesting that the rate is correct even though the true amount Mylan paid was a bundled

fee; and that the page number is correct because even for documents that were converted to TIFF for other litigation, Consilio still provided several costly services in this case, and that in any event, the amount requested is an underestimation. (Corrected Bill of Costs at 7-9.) Plaintiffs are correct that the file conversion and production costs are, in the amounts requested by Defendants, too speculative to be taxed.

Begin with the rate Defendants argue should apply: $0.03 per page. That number comes not from any bill Mylan paid nor a survey of the industry standard. Instead, it is a hypothetical rate that Ramsey declares is the one Consilio would have charged for "converting produced files to TIFF." (*Id.* at 125-26.) Plaintiffs argue that that number is far too high, citing a declaration from Jared Harary, Chief Revenue Officer at vdiscovery, another e-discovery provider, which says: "In keeping with the industry standard . . . [f]or a project requiring the conversion of approximately 10 million pages, vdiscovery would have discounted the conversion services referenced in the Ramsey Declaration to $0.005 or less, in order to bid competitively on this project in the electronic discovery services market." (ECF No. 479 at 3.) Plaintiffs point out also that Ramsey offers a different version of Mylan's hypothetical rate across two declarations. In the first, Ramsey explains the services Consilio provided to Mylan as including "the collecting and ingesting of electronic information, conversion of that information into required formats (for example, TIFFs for production), associated storage and hosting services, and production of documents," and then specifies that the $0.03 rate would be for "converting produced files to TIFF, had this service been unbundled and billed separately." (Corrected Bill of Costs at 125.) But in Ramsey's second declaration, following Plaintiffs' objection that many of the documents produced had already been converted to TIFF for other litigation, Ramsey states that, in addition to TIFF conversion, the $0.03 rate includes "encryption of the production, copying production to

15

media, updating production log documentation, and performing quality control measures to validate the production." (ECF No. 475 at 2.) Plaintiffs are correct that Ramsey's two declarations contradict, or at least differ in a way that pivots away from one of Plaintiffs' key objections, only after that objection was made. As a result, the Court does not find Ramsey's proposed hypothetical rate credible and will rely instead on Plaintiffs' proffered $0.005 per page rate. The additional benefit of using Plaintiffs' rate is that it is supported by a declaration describing in detail the industry practice of volume discounts, rather than a hypothetical derived without apparent consideration of any potential discounts.

There is an additional problem, however: It is unclear from Defendants' materials which of the 9.84 million pages were converted for this litigation, and which were converted for others. Defendants' only response is that the hypothetical rate encompasses other services besides TIFF conversion, and that in any event, because Defendants have excluded costs elsewhere, this potential overestimation is still "modest in scope compared to the number of services they needed to obtain from Consilio to respond to Plaintiffs' requests." (Reply at 9-10.) But the Court may award costs for TIFF conversion only for documents actually produced in litigation. *See Balance Point Divorce Funding, LLC v. Scranton*, 305 F.R.D. 67, 74 (S.D.N.Y. 2015) ("If [a party] elects to convert all documents to a TIFF format for its own convenience, it may not recover as a taxable cost the cost of converting to TIFF those documents which were not actually produced.") Defendants' contention that they are entitled to costs for TIFF conversion of documents in other litigation because any overcharge is likely offset by other expenditures—not presently sought and of an unknown amount—is too speculative.

Where bulk costs have been expended by a prevailing party for both litigation-related and non-litigation-related purposes, and "there is no way to reasonably evaluate the purpose of [bulk]

16

costs for copying and scanning," it is appropriate to reduce the requested bulk amount to approximate the amount actually spent on documents converted and produced in this litigation. *Grano v. Martin*, No. 19-CV-6970, 2021 WL 3500164, at *7 (S.D.N.Y. Aug. 9, 2021) ("[B]ecause some fraction was undoubtedly for exhibits or providing documents to the Court or opposing counsel, I will reduce these costs by 90% rather than 100%."). Plaintiffs contend that "[e]stimated conservatively, such costs for TIFF conversions should be reduced by at least half." (Obj. at 10; Surreply at 5.) The Court finds that a 50% reduction in the total count of documents is sensible, and as already discussed, that Plaintiffs' proposed rate of $0.005 per page is the best estimation of the costs associated with TIFF conversion for this litigation. Applying the $0.005 rate to 4.92 million taxable pages (half of 9.84 million pages (*see* Reply at 8)), Defendants are entitled to $24,600 in costs for converting and producing documents in this case.

### D.     Final Total

Defendants are entitled to $42,062.05 in deposition-related costs, $15,418.75 in exemplification costs, and $24,600 in document conversion and production costs, for a total of $82,080.80.

## II.    Conclusion

For the foregoing reasons, Plaintiffs' objections to the Corrected Bill of Costs are SUSTAINED in part and OVERRULED in part.

The Clerk of Court is directed to tax costs in the amount of $82,080.80, and to close the motion at ECF No. 478.

SO ORDERED.

Dated: January 28, 2025
       New York, New York

_____
J. PAUL OETKEN
United States District Judge